Gregory G. Little
glittle@hunton.com
Stephen R. Blacklocks
sblacklocks@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York  10166
(212) 309-1000

Bonnie K. Arthur (pro hac vice motion pending)
barthur@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street NW
Washington, D.C.  20006
(202) 419-2063

Attorneys for Defendant Joseph A. Ripp

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— :
                                                             :
SECURITIES AND EXCHANGE COMMISSION, :
                                                             :
                            Plaintiff,         :
                                                             :
                  v.                             :    08 Civ. 4612 (SWK)
                                                             :    ECF Case
JOHN MICHAEL KELLY, STEVEN E.        :
RINDNER, JOSEPH A. RIPP, and           :
MARK WOVSANIKER,                          :
                                                             :
                            Defendants.     :
———————————————————————— :


MEMORANDUM OF LAW IN SUPPORT OF JOSEPH A. RIPP'S
MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

## <u>Table of Contents</u>

Table of Authorities ............................................................................................................ iii

Introduction ....................................................................................................................... 1

The SEC's Allegations ....................................................................................................... 3

Summary of the Argument.................................................................................................. 9

Argument ........................................................................................................................... 9

I.     WHAT THE SEC MUST PLEAD TO STATE A CLAIM UNDER § 17(a) OF
THE SECURITIES ACT AND § 10(b) AND RULE 10b-5 OF THE
EXCHANGE ACT.................................................................................................. 9

     A.     The elements of § 17(a) and § 10(b) / Rule 10b-5 ..................................... 9

     B.     The SEC must plead individualized facts. ............................................... 10

     C.     The SEC must meet a heightened pleading requirement. ........................ 10

II.     THE COMPLAINT DOES NOT STATE A CLAIM UNDER § 17(a) OR
§ 10(b) / RULE 10b-5 AGAINST JOE RIPP WITH RESPECT TO THE
VENDOR TRANSACTIONS. ............................................................................. 12

     A.     The complaint does not adequately allege that Joe Ripp had scienter or
acted unreasonably with respect to the vendor transactions. ................... 12

     B.     The complaint does not adequately allege that the vendor transactions
were material.............................................................................................. 17

     C.     The claims with respect to the vendor transactions are time-barred..................... 21

III.     THE COMPLAINT DOES NOT STATE A CLAIM UNDER § 17(a) OR
§ 10(b) / RULE 10b-5 AGAINST JOE RIPP WITH RESPECT TO THE
AMENDMENTS TO THE BERTELSMANN PUT/CALL AGREEMENTS................. 23

     A.     The complaint does not adequately allege that Joe Ripp had scienter or
acted unreasonably with respect to the Bertelsmann amendments........................ 23

     B.     The complaint does not adequately allege that the Bertelsmann
amendments were material. ....................................................................... 26

     C.     The claims with respect to the Bertelsmann amendments are time-barred. .......... 26

IV.     THE COMPLAINT DOES NOT STATE A CLAIM UNDER § 17(a) OR
§ 10(b) / RULE 10b-5 AGAINST JOE RIPP WITH RESPECT TO THE
CONTRACT DISPUTE RESOLUTIONS. ....................................................... 27

A.      The complaint does not adequately allege that Joe Ripp had scienter or acted unreasonably with respect to the contract dispute resolutions. ....................27

B.      The complaint does not adequately allege that the contract dispute resolutions were material. ......................................................................................29

C.      The claims with respect to the contract dispute resolutions are time-barred. ............................................................................................................29

V.      THE COMPLAINT DOES NOT STATE A CLAIM AGAINST JOE RIPP FOR AIDING AND ABETTING AOL TIME WARNER'S § 10(b) / RULE 10b-5 VIOLATIONS. ....................................................................................................30

VI.     THE COMPLAINT DOES NOT STATE A CLAIM AGAINST JOE RIPP FOR RECORD KEEPING OR REPORTING VIOLATIONS ...................................30

A.      The complaint's Fourth Claim -- for violation of Exchange Act Rule 13b2-1 -- should be dismissed against Ripp. .........................................30

B.      The complaint does not adequately plead a claim against Ripp for aiding and abetting violations of §§ 13(a) and 13(b)(2)(a) or Rules 12b-20, 13a-1, 13a-11, 13a-13 and 13b2-1 .............................................................31

Conclusion ............................................................................................................32

## <u>Table of Authorities</u>

<u>**Cases**</u>:

<u>Acito v. IMCERA Grp. Inc.</u>,
    47 F.3d 47 (2d Cir. 1995) ............................................................................15, 16

<u>In re AOL Time Warner, Inc. Sec & ERISA Litig.</u>,
    381 F.Supp.2d 192 (S.D.N.Y. 2004)........................................................24, 27

<u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>,
    493 F.3d 87 (2d Cir. 2007)...................................................................... 1 fn. 1

<u>Basic Inc. v. Levinson</u>,
    485 U.S. 224 (1998)................................................................................10, 17

<u>Bell Atlantic Corp. v. Twombly</u>,
    127 S.Ct. 1955 (2007)...................................................................................10

<u>In re Bristol-Myers Squibb Sec. Litig.</u>,
    312 F.Supp.2d 549 (S.D.N.Y. 2004).............................................................10

<u>California Public Employees' Retirement System v. Chubb Corp.</u>,
    394 F.3d 126 (3d Cir. 2004)..........................................................................12

<u>Chill v. General Elec. Co.</u>,
    101 F.3d 263 (2d Cir. 1996)....................................................................11, 12

<u>Dale v. Prudential-Bache Sec. Inc.</u>,
    719 F.Supp. 1164 (E.D.N.Y. 1989) ..............................................................10

<u>5-Star Management, Inc. v. Rogers</u>,
    940 F.Supp. 512 (E.D.N.Y. 1996) ......................................................... 19 fn. 7

<u>In re Duke Energy Corp. Sec. Litig.</u>,
    282 F.Supp.2d 158 (S.D.N.Y. 2003)........................................................17, 19

<u>In re Duke Energy ERISA Litig.</u>,
    281 F.Supp.2d 786 (W.D.N.C. 2003) ...........................................................20

<u>Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.</u>,
    602 F.2d 478 (2d Cir. 1979)....................................................................30, 32

<u>Frazier v. Vitalworks, Inc.</u>,
    344 F.Supp. 2d 142 (D. Conn. 2004) ...........................................................16

<u>Ganino v. Citizens Utilities Co.</u>,
    228 F.3d 154 (2d Cir. 2000)....................................................................18, 20

Garber v. Legg Mason, Inc.,
        537 F.Supp.2d 597 (S.D.N.Y. 2008).............................................................12, 19

GeoPharma, Inc. Sec. Litig.,
        399 F.Supp.2d 432 (S.D.N.Y. 2005).................................................................16

In re JP Morgan Chase Sec. Litig.,
        363 F.Supp.2d 595 (S.D.N.Y. 2005).................................................................19

Kalnit v. Eichler,
        264 F.3d 131 (2d Cir. 2001)..............................................10, 11, 12, 16, 24

Krause v. Forex Exchange Market, Inc.,
        356 F.Supp.2d 332 (S.D.N.Y. 2005)................................................. 11 fn. 4, 30

M-101, LLC v. iN Demand L.L.C.,
        2007 WL 4258191 (S.D.N.Y. Dec. 3, 2007) ................................... 22 fn. 10

Malin v. XL Capital Ltd.,
        499 F.Supp.2d 117 (D. Conn. 2007)................................................................16

In re Merrill Lynch Ltd. P'ships Litig.,
        154 F.3d 56 (2d Cir. 1998)..............................................................................23

Minzer v. Keegan,
        218 F.3d 144 (2d Cir. 2000)......................................................................11, 20

In re Nokia Oyj (Nokia Corp.) Sec. Litig.,
        423 F.Supp.2d 364 (S.D.N.Y. 2006).................................................................19

Parnes v. Gateway 2000, Inc.,
        122 F.3d 539 (8th Cir. 1997) ...........................................................................20

Rombach v. Chang,
        355 F.3d 164 (2d Cir. 2004)........................................................ 11, 11 fn. 4, 12

Scone Invest. L.P. v. Am. Third Market Corp.,
        1998 WL 205338 (S.D.N.Y. Apr. 28, 1998)...................................................10

SEC v. Cedric Kushner Promotions, Inc.,
        417 F.Supp.2d 326 (S.D.N.Y. 2006)..........................................................30, 31

SEC v. Coffman,
        2007 WL 2412808 (D.Colo. Aug. 21, 2007) ..................................................32

SEC v. Jones,
        476 F.Supp.2d 374 (S.D.N.Y. 2007)................................................................22

SEC v. Lowy,
    396 F.Supp.2d 225 (E.D.N.Y. 2003) .............................................................30

SEC v. Monarch Funding Corp.,
    192 F.3d 295 (2d Cir. 1999).........................................................................10

SEC v. Patel,
    2008 WL 781912 (D.N.H. Mar. 24, 2008) ..................................................20

SEC v. Patel,
    2008 WL 782465 (D.N.H. 2008) .................................................................31

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994)........................................................................15

Stone v. Williams,
    970 F.2d 1043 (2d Cir. 1992)......................................................................22

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    127 S.Ct. 2499 (2007).........................................................................11, 14

In re Westinghouse Sec. Litig.,
    90 F.3d 696 (3d Cir. 1996)..........................................................................20

World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,
    530 F.Supp. 2d 486 (S.D.N.Y. 2007)..........................................................23

**Statutes:**

15 U.S.C. § 77q (Section 17(a) of the Securities Act).......................................... passim

15 U.S.C. § 78j (Section 10(b) of the Exchange Act)........................................... passim

15 U.S.C. § 78m.......................................................................................................31

15 U.S.C. § 78t.........................................................................................................30

28 U.S.C. § 2462......................................................................................................21

**Regulations:**

17 C.F.R. § 240.10b-5..................................................................10, 23, 27, 30

17 C.F.R. § 240.12b-20...........................................................................................31

17 C.F.R. § 240.13a-1.............................................................................................31

17 C.F.R. § 240.13a-11...........................................................................................31

17 C.F.R. § 240.13a-13 ....................................................................................................31

17 C.F.R. § 240.13b2-1 ...................................................................................................31

**<u>Rules</u>**

Fed. R. Civ. P. 9 ..................................................................................................... passim

Fed. R. Civ. P. 12 ...............................................................................................................3

Fed. R. Evid. 201(b)(2) ................................................................................... 1 fn. 1

## Introduction

**"Joe Ripp was not part of the conspiracy at AOL. He was one of the white hats in this case that helped reveal the fraud."**

-- Statement to the court by a Department of Justice attorney in the United States District Court for Eastern District of Virginia during a related criminal proceeding.[1]

Joe Ripp joined the AOL division of AOL Time Warner in January, 2001. Within three months he became suspicious of deals AOL had made with certain third parties, and pressed for an investigation. The investigation led to criminal charges. The Department of Justice concluded that Joe Ripp "was one of the white hats" at AOL -- he came in, learned about the fraud, and demanded it be exposed. Yet the SEC now alleges that at the same time Joe Ripp was revealing fraud, he was engineering and concealing schemes to defraud investors. The SEC can't explain this contradiction at the heart of its case against Mr. Ripp, so chooses instead to ignore it. Instead of explaining Ripp's role at AOL, and why he was one of the "white hats," the SEC hopes its silence as to these crucial facts will allow its complaint to survive a motion to dismiss.

The reality is that the SEC's claims against Mr. Ripp are so fundamentally flawed that they cannot be supported by the few facts that the complaint contains. So, for example, the complaint alleges that because Joe Ripp sat through a PowerPoint presentation where one slide made reference to "advertising revenue gross-ups," he is liable for frauds with respect to

---

[1]    U.S. v. Wiegand, 05-cr-12 (E.D.Va), Dec. 7, 2005 Tr. at 41-42, attached as Exhibit A to the accompanying declaration of Gregory G. Little. On a motion to dismiss, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In addition, the court may take judicial notice of matters "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2).

transactions that took place before he joined AOL; that he had fraudulent intent because he attended meetings dubbed by the SEC as "key negotiation sessions," even though the complaint does not identify who else was there, or what was said; and that he was motivated to commit fraud in order to sell his stock at inflated prices -- but without alleging when he sold stock, how much he sold, or the price at which he sold it. And so it goes: the SEC throws out a few supposed facts, asserts that they show Ripp's fraud and scienter, and blithely casts to the wind a man's career-long reputation for honesty and integrity.[2]

The SEC's disregard for the facts doesn't stop with Ripp. The supposed frauds involve the recognition of revenue that was such a small percentage of AOL Time Warner's total revenue -- less than half a percent -- that, as a matter of law, the alleged misstatements are not material. But the SEC doesn't point this out -- again preferring silence to the facts.

And the SEC is also too late. The SEC alleges that the supposed frauds took place in 2000, 2001 and 2002, but the complaint was filed on May 19, 2008, well after the applicable five-year statute of limitations had expired. The SEC claims that agreements Ripp signed in the intervening years tolled the running of the statute of limitations, but neglects to tell the Court what those agreements in fact said -- that they only prevented the statute from expiring during the life of the agreements. And the SEC claims that the fraud was concealed until October 2002 -- but neglects to tell the Court that it opened an investigation into the transactions at issue in May of that year.

After investigating for over seven years, reviewing millions of documents, and taking hundreds of days of testimony from over two hundred witnesses, all the SEC has come up

---

[2]    Although the SEC pretends that Joe Ripp is likely to commit securities fraud in the future if not enjoined, there is absolutely no allegation whatsoever that in his 30 year career Joe Ripp ever had any issues with the SEC prior to becoming the CFO of AOL or after leaving AOL.

with against Ripp is speculation and innuendo.  The sad truth is that the SEC's zeal to bring this

case against Ripp has blinded it to the goals it is sworn to uphold -- goals such as fairness and the

use of the judicial process to achieve justice.  The Court should dismiss the complaint against

Ripp pursuant to Rule 12(b)(6), with prejudice.

### The SEC's Allegations

The SEC alleges that defendants fraudulently inflated advertising revenue at

America Online, Inc., and, following America Online, Inc.'s, January 2001 merger with Time

Warner, at the AOL Division of the merged company.  The SEC alleges that these frauds began

in May 2000 -- before Joe Ripp was employed at AOL -- and continued through 2002.

**1.      Joe Ripp**

Joe Ripp was the CFO at Time for many years, then the CFO of Time Warner,

Inc.  After the January 2001 merger of America Online, Inc., and Time Warner, Ripp moved

from New York to Virginia to become the CFO of the AOL Division of the merged company.

Compl. ¶ 16.  Before the merger, Ripp was not employed by America Online.  Ripp was the

CFO of the AOL Division for 18 months until September 2002, when he was promoted to Vice-

Chairman of that Division.  He became a Senior Vice-President at AOL Time Warner in 2004,

and left the company on good terms in November 2005.

**2.      The 2001 merger of America Online, Inc., and Time Warner**

America Online, Inc., merged with Time Warner, Inc., on January 11, 2001, to

form AOL Time Warner, Inc.  Id.  ¶ 18.  Following the merger, America Online became a

division and wholly-owned subsidiary of AOL Time Warner.  Id.  In October 2003, AOL Time

Warner changed its name to Time Warner, Inc.  Id.

The complaint obscures the corporate structure.  In the very first paragraph, the SEC defines the term "AOL" to mean the pre-merger America Online, Inc., and defines the term "Company" to refer to both the pre-merger America Online, Inc., and AOL Time Warner.  These definitions immediately lead to false statements, for Ripp is said to be "former CFO of AOL," when, in fact, he was never employed by the pre-merger America Online, Inc.  See also id. ¶ 9 (alleging Ripp aided and abetted "AOL's violations" of the Exchange Act, even though by the time Ripp was employed by AOL, it was a division of AOL Time Warner); ¶ 16 (wrongly alleging that Ripp became Vice-Chairman of AOL Time Warner, not the AOL Division, in September 2002).  In paragraph 18, the SEC introduces further confusion when it redefines "AOL" to refer to both the "pre-merger AOL [i.e. America Online, Inc.] and the post-merger AOL Time Warner" -- i.e., to mean the same as "Company."

To avoid these confusions, this memorandum will use the term "America Online, Inc." to refer to the pre-merger AOL; "Time Warner" to refer to pre-merger Time Warner; "AOL Time Warner" to refer to the post-merger company; and the "AOL Division" to refer to the post-merger AOL division of AOL Time Warner.

**3.      The allegedly fraudulent transactions**

The SEC points to transactions with eight different business partners that it alleges were designed to fraudulently inflate advertising revenue at America Online, Inc., or the AOL Division of AOL Time Warner.  Six of these transactions took place before Ripp was employed at the AOL Division.  The complaint groups the eight transactions into three categories -- transactions with vendors (id. ¶¶ 48-118), amendments to a put/call agreement with the German media corporation Bertelsmann, A.G. (id. ¶¶ 119-144), and transactions resolving contract disputes with certain business partners (id. ¶¶ 145-180).

### (a) The transactions with vendors

The SEC groups four separate transactions under the heading "Vendor Round-Trip Transactions" -- transactions with Sun Microsystems (id. ¶¶ 53-67), Veritas Software Corporation (id. ¶¶ 68-86), Hewlett-Packard (id. ¶¶ 87-97), and Telefonica DataCorp (id. ¶¶ 98-110). The SEC claims that these transactions had a common feature -- they all had America Online, Inc., agreeing to pay more for a vendor's service or product in exchange for the vendor buying advertising from America Online, Inc., in an amount equal to the overpayment. Id. ¶ 48. But these four transactions have a second thing in common -- Ripp played no role in their conception or execution. All four transactions are alleged to have been conceived and executed by America Online, Inc., in 2000. Id. ¶¶ 63, 76, 89, 107. Ripp was not employed by America Online until he joined the AOL Division of AOL Time Warner in January 2001.

But even though Mr. Ripp was not involved in conceiving or executing these alleged frauds, the SEC still wants to make him liable for them. The complaint thus alleges that Ripp learned of these frauds after the fact because on February 6, 2001 -- just weeks after being employed by the AOL Division -- he sat through a PowerPoint presentation that included a slide which mentioned "advertising revenue gross-ups" in deals with vendors. Id. ¶ 114. The complaint also alleges that Ripp saw a second PowerPoint presentation eight months later that included a slide mentioning an "advertising surcharge." Id. ¶ 117. The complaint contends that after learning of these alleged frauds, Ripp made false statements about the AOL Division's financial results in letters to Ernst & Young ("E&Y"), AOL Time Warner's outside auditor. Id. ¶ 118.

### (b) Amending the Bertelsmann put/call agreement

The SEC's second category of alleged fraud relates to AOL Time Warner's agreement with Bertelsmann, A.G. ("BAG") -- a multibillion dollar global media conglomerate

-- concerning BAG's sale of its interest in AOL Europe, a joint venture with America Online, Inc. (and, post-merger AOL Time Warner).  Under a put/call agreement entered into before Mr. Ripp was employed by the AOL Division, America Online, Inc., had the right to purchase BAG's interest in AOL Europe using either stock or cash.  In 2001, BAG asked AOL Time Warner to commit to buying BAG's AOL Europe shares using cash.  Id. ¶¶ 123-25.

AOL Time Warner and BAG negotiated amendments to the put/call agreement in which AOL Time Warner agreed to exercise its right to buy BAG's AOL Europe stock using cash and BAG agreed to purchase $400 million of advertising from AOL Time Warner.  Id. ¶¶ 130-31.  The SEC alleges that BAG's advertising purchases were a "sham" devised to inflate AOL Time Warner's advertising revenue.  Id. ¶ 144.  The complaint does not allege that AOL Time Warner did not carry the advertising that had been agreed to; does not allege that the advertising was not worth $400 million; and does not claim that BAG did not receive benefit from the advertising.

The complaint claims that Joe Ripp knew of the alleged fraud because he attended a "key negotiation session" on the BAG deal, and "provided advice on the value, structure, and accounting" of the deal.  Id. ¶ 134.  But the complaint does not plead who was at this "negotiation session," what was said or agreed on, what Ripp's alleged "advice" was, or even if it had anything to do with the alleged fraud.  The complaint alleges that Ripp "knew" that BAG "was paying for the amendments . . . and not for the advertising," but does not state any facts supporting this bare conclusion.  Id. ¶ 132.

### (c)  Resolving contract disputes with business partners

The complaint groups transactions with Ticketmaster, Wembley, and WorldCom under the heading "Business Dispute Settlements."  Id. ¶¶ 145-180.  The complaint alleges that in each transaction, America Online, Inc., and, later, AOL Time Warner, disguised excess

payments to business partners as settlements of contract disputes, when, in fact, the overpayments were to be used by the business partner to purchase online advertising.

The complaint does not attempt to tie Joe Ripp to the transactions with Ticketmaster and Wembley -- transactions made in August and September of 2000, before Mr. Ripp began work at the AOL Division.  Id. ¶ 148.

The complaint alleges that Ripp knew the WorldCom transactions were fraudulent because he "attended strategy meetings" about the deals.  Id. ¶ 163.  But the complaint does not describe what was said or done at these meetings, when they occurred, or who participated (other than unspecified "AOL negotiators").  The complaint also alleges that Ripp reviewed a document in connection with WorldCom, but claims only that the document "disclosed [AOL's] agreement to pay $39.2 million" to settle a dispute.  Id. ¶ 165.

The complaint also alleges that, in December 2001, AOL Time Warner improperly used the settlement of a second contract dispute with WorldCom to garner advertising revenue.  Id. ¶ 155.  The complaint alleges that "in contemporaneous internal AOL e-mails," Ripp and others "considered ways to convert" this settlement into advertising revenue. Id. ¶ 169.  But the complaint does not describe what was said in any e-mails that Ripp authored or received.  The complaint also alleges that Ripp "decided" to convert the dispute into advertising revenue and "helped engineer" and "ultimately approved" the settlement's final structure and accounting.  Id. ¶¶ 170, 175, 177.  But the complaint does not allege facts supporting any of these conclusory allegations.

### 4.    Joe Ripp's allegedly false statements and the statute of limitations

The complaint alleges that in the 18 months he was CFO of the AOL division, Joe Ripp "made or substantially contributed to" false statements about the revenue from these allegedly-fraudulent transactions.  The complaint first lists "various public statements to

investors that incorporated the fraudulent financial results." Id. ¶ 35. These statements -- AOL Time Warner earnings releases and earnings calls -- date from April 18, 2001 through January 7, 2002.[3] The complaint also points to Ripp's statements in "management representation letters" to E&Y and AOL Time Warner between April 11, 2001 and October 22, 2002. Id. ¶ 182.

       All of the statements attributed to Ripp were made more than five years before this action was commenced on May 19, 2008. Thus, on the face of the complaint, all the claims are time-barred. The complaint purports to plead fraudulent concealment (id. ¶¶ 184-86), but acknowledges that AOL Time Warner disclosed on October 23, 2002 that its financial statements for 2000 and 2001 could not be relied on -- still five years before this action commenced. And the complaint alleges that the SEC and Ripp agreed to toll the statute of limitations from March 22, 2006 to March 31, 2007 (id. ¶¶ 187-90), but does not attach the agreements or quote the relevant language -- which, in fact, only barred Ripp from raising limitations defenses if the SEC brought suit within the period of the agreements.

**5.    Joe Ripp's alleged profit**

       The complaint alleges that Joe Ripp "profited" by selling stock at prices allegedly "inflated" by the fraud when "he knew about the fraud, but other AOL shareholders did not," and by receiving bonuses "based on AOL's artificially inflated financial results." Id. ¶ 193. But no facts or details are stated to support these bare conclusions: the complaint does not plead when Ripp sold stock; how much he sold; the price he received; the amount by which that price was

---

      [3]    The complaint identifies only one statement to investors allegedly made by Ripp himself -- in a "January 2, 2002 AOL Time Warner Conference." Compl. ¶ 46. Defendants' counsel were unable to find any record of a January 2, 2002 AOL Time Warner conference, so asked the SEC for a transcript of that conference. The SEC responded that the January 2 date was mistaken, and that the correct date is January 7, 2002. But Ripp did not take part in the January 7, 2002 call. See Little Decl. Exh. B.

"inflated"; or any other circumstances of his sales.  Likewise, the complaint says nothing about bonuses Ripp received -- how much, or when, or how they were determined.

### Summary of the Argument

This memorandum first describes the standards against which the SEC's claims under § 17(a) of the Securities Act and § 10(b) and Rule 10b-5 of the Exchange Act are to be measured -- the need to satisfy Rule 9(b), the requirement of scienter, and the need to plead materiality.  The following sections apply these principles to the vendor transactions (Point II), the Bertelsmann put/call amendments (Point III), and the contract dispute settlements (Point IV).  In each instance, the complaint is inadequate because it neither pleads facts showing that Joe Ripp knew or should have known of the alleged frauds, nor sufficiently pleads materiality.  In addition, the complaint's allegations show that the claims are time-barred.

Point V addresses the SEC's claim that Ripp aided and abetted AOL Time Warner's violation of § 10(b) and Rule 10b-5 of the Exchange Act.  This claim should be dismissed because the complaint does not plead facts showing that Ripp knew of the alleged violations or that he substantially assisted them.  Finally, Point VI shows why the SEC's record-keeping and reporting claims should also be dismissed.

### Argument

### I.    WHAT THE SEC MUST PLEAD TO STATE A CLAIM UNDER § 17(a) OF THE SECURITIES ACT AND § 10(b) AND RULE 10b-5 OF THE EXCHANGE ACT

#### A.    The elements of § 17(a) and § 10(b) / Rule 10b-5

The fraud provisions of the Securities Act and the Exchange Act are structurally similar.  First, both require proof that the defendant acted in a certain way: "employ[ed] . . . [a] device, scheme or artifice to defraud"; made an "untrue statement of material fact," or a material

omission; or "engage[d] in . . . [a] transaction, practice, or course of business" operating as a fraud or deceit.  See 15 U.S.C. § 77q(a); 17 C.F.R. § 240.10b-5; see also 15 U.S.C. § 78j(b).  Second, both provisions reject strict liability for such acts, because both require proof of the defendant's scienter or, in the case of § 17(a)(2) and (3), negligence.  E.g., Dale v. Prudential-Bache Sec. Inc., 719 F.Supp. 1164, 1166 (E.D.N.Y. 1989).  Third, both provisions require proof that the fraud was material -- that it was of sufficient magnitude that a reasonable investor would have considered it significant in making an investment decision.  E.g., Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (materiality required for § 10(b) / Rule 10b-5 action); SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999) (materiality is element of § 17(a) claim).

### B.    The SEC must plead individualized facts.

Mere conclusions that these elements are satisfied do not suffice:  "[a] plaintiff cannot base securities fraud claims on speculation and conclusory allegations."  Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001); see also In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("In order to avoid dismissal, plaintiffs must do more than plead mere conclusory allegations or legal conclusions masquerading as factual conclusions.") (internal quotation marks and citation omitted).  Instead, the SEC, like any plaintiff, must draft a complaint that pleads facts stating a claim to relief "that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  A court must be "especially vigilant" to ensure that a plaintiff has met its burden when the complaint is made against multiple defendants.  Scone Invest. L.P. v. Am. Third Market Corp., 1998 WL 205338, *4 (S.D.N.Y. 1998).

### C.    The SEC must meet a heightened pleading requirement.

Because the SEC alleges fraud, its complaint is subject to Rule 9(b), so the SEC "must state with particularity the circumstances constituting [the] fraud."  Fed. R. Civ. P. 9(b);

see also Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996). To meet this standard, the

SEC must "specify" Ripp's allegedly-fraudulent statements and "state where and when" they

were made. Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and

citation omitted). Rule 9(b) also requires the SEC to plead materiality with particularity. E.g.,

Minzer v. Keegan, 218 F.3d 144, 151 (2d Cir. 2000).[4]

 A heightened pleading standard also applies with respect to scienter. A complaint

must plead facts "giv[ing] rise to a strong inference of fraudulent intent." Kalnit, 264 F.3d at 138

(emphasis added, internal quotation marks and citation omitted). The Supreme Court has

recently held that "in determining whether the pleaded facts give rise to a 'strong' inference of

scienter, the court must take into account plausible opposing inferences." Tellabs, Inc. v. Makor

Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007). "[A]n inference of scienter must be more

than merely plausible or reasonable -- it must be cogent and at least as compelling as any

opposing inference of nonfraudulent intent." Id. at 2504-05 (emphasis added).

 A strong inference of fraudulent intent can be established either by showing "that

defendants had both motive and opportunity to commit fraud" or "strong circumstantial evidence

of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 138. "Motives that are generally

possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a

concrete and personal benefit to the individual defendants." Id. at 139.

 Where "motive is not apparent, [plaintiffs must] plead scienter by identifying

circumstances indicating conscious behavior by the defendant, though the strength of the

---

 [4] This heightened pleading standard also applies to the SEC's claims for aiding and abetting. E.g., Krause v. Forex Exchange Market, Inc., 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005). In addition, because the SEC's claims of books and records violations sound in fraud, these too are subject to Rule 9(b). See, e.g., Rombach, 355 F.3d at 171 (holding that Rule 9(b) applies to "all averments of fraud" and "is not limited to allegations styled or denominated as fraud").

circumstantial allegations must be correspondingly greater." Kalnit, 264 F.3d at 142. See also Chill, 101 F.3d at 270 (recognizing the "significant burden" in pleading conscious misbehavior or recklessness). Conscious misbehavior is "deliberate illegal behavior." Garber v. Legg Mason, Inc., 537 F.Supp. 2d 597, 616 (S.D.N.Y. 2008). Recklessness is "highly unreasonable" conduct that represents "an extreme departure from the standards of ordinary care." Id. (emphasis added).

Even though scienter is not required to prove violation of § 17(a)(2) and (3), because the SEC's complaint "sounds in fraud," it must plead with particularity facts giving rise to an inference of negligence. Rombach, 355 F.3d at 171 (pleading of claims that "rely upon averments of fraud" is subject to Rule 9(b)); see also California Public Employees Retirement System v. Chubb Corp., 394 F.3d 126, 144 (3d Cir. 2004) (Rule 9(b) applies to negligence claims grounded in fraud rather than negligence.)

As the following sections show, the SEC's complaint against Mr. Ripp falls far short of meeting the SEC's burden of pleading violations of § 17(a) or § 10(b) / Rule 10b-5.

## II.    THE COMPLAINT DOES NOT STATE A CLAIM UNDER § 17(a) OR § 10(b) / RULE 10b-5 AGAINST JOE RIPP WITH RESPECT TO THE VENDOR TRANSACTIONS.

### A.    The complaint does not adequately allege that Joe Ripp had scienter or acted unreasonably with respect to the vendor transactions.

Fully one-quarter of the complaint (¶¶ 53-110) describes the engineering and execution of what the SEC calls the "Vendor Round-Trip Transactions." But this quarter is a black hole with respect to Joe Ripp, for these paragraphs do not contain a single mention of his name. For good reason: these transactions took place before Ripp joined the AOL Division.

Still, the SEC alleges that Ripp later learned of the vendor transaction frauds, and made false statements that related to revenues from these transactions.

-12-

But the complaint does not plead scienter.  The crucial question is whether the complaint pleads sufficient facts showing that Ripp knew the vendor transactions were fraudulent.  The SEC attempts to plead Ripp's knowledge both directly, by alleging that he was told of the fraud, and indirectly, by alluding to motive and opportunity.  But both attempts fail.

### (i)    The complaint does not plead direct evidence of Ripp's scienter.

The SEC's case that Ripp knew or should have known that the vendor transactions were fraudulent because he was told so rests <u>in its entirety</u> on two slides in two PowerPoint presentations that Ripp is alleged to have seen.

The complaint alleges that a few weeks after Ripp joined the AOL Division, he sat through a PowerPoint presentation that, after 25 pages of pie charts and graphs detailing the Network Operations group's financial performance, contained a slide that made reference to "[l]oading of other business unit costs into the Cost of Revenue," and "advertising revenue gross-ups." Compl. ¶ 114.[5]  This slide did not tell Ripp about a fraud.  The slide indicates that some AOL deals with its vendors included advertising purchases, but there was nothing inherently suspicious about that fact.  AOL Time Warner's practice of using its leverage with vendors to obtain advertising was well known.  So, for example, America Online, Inc., and Sun issued a press release in November 1998 describing the transaction that the SEC now claims was improper.  <u>See</u> Little Decl. Exh. D.  America Online, Inc. announced other deals also involving advertising purchases; the <u>Wall Street Journal</u> published an article in April 2001 (Little Decl. Exh. E) describing how "AOL parlays partnerships into revenue" by encouraging its partners to

---

[5]    The complaint quotes a portion of the text from the slide, but changes its formatting to make certain phrases more prominent than they are in the slide.  The entire PowerPoint presentation is Little Decl. Exh. C, and the slide in question is the third from the last.

buy advertising; and in the May 2001 Advertising Age (Little Decl. Exh. F), AOL Time

Warner's CEO said that the company encourages its vendors to buy advertising.

Because there is nothing per se suspicious about a transaction in which a business

partner buys advertising (the SEC does not contend otherwise), without some further, specific,

indication of fraud, the claim that the slides told Ripp of a fraud fails the Supreme Court's

Tellabs test, for it does not make that claim "more than merely plausible or reasonable." Tellabs,

127 S.Ct. at 2505. Indeed, the context and content of the slide support the "opposing inference"

-- that Ripp was not told about a fraud, so lacked scienter.

In the first place, the slide was buried deep in a PowerPoint presentation

concerning Network Operations' financial performance, as part of a series of slides about cost

savings, and focuses on the allocation of costs, not the illegitmacy of the transactions. Thus, the

very same slide also complains about "[l]oading Time Warner costs into AOL Cost of Revenue,"

and states that Network Operations shoulders the cost of "15 people now dedicated to Time

Warner projects with no cost relief." Indeed, the complaint itself acknowledges that the slide is

about cost allocation -- "Network Operations was concerned about the loading of other business

unit costs into the cost of operations." Compl. ¶ 115. Moreover, the slide says nothing about

how to account for advertising revenue from the vendor transactions, but the gravamen of the

SEC's complaint is accounting fraud -- Ripp is alleged to have been part of "a scheme to

artificially and materially inflate the Company's reported online revenue." Id. ¶ 1.

The SEC contends that this slide told Ripp that there was a multimillion dollar

fraud in the vendor transactions. But both the context and content of the slide belie that

contention. And this is so even without putting the PowerPoint presentation in its wider context

-- that, soon thereafter, Ripp was actually alerted to a fraud, and he immediately took action, informing the General Counsel and starting an internal investigation.

The second PowerPoint slide that the SEC relies upon to demonstrate that Ripp knew the vendor transactions were fraudulent is, if anything, even less indicative of fraud.  See, Little Decl. Exh. G.  The complaint says only that this second slide -- said to have been shown to Ripp in October 2001 -- "identified the '[c]ontinued leverage of network spend by Business Affairs weakening ability to reduce cost,'" and referred to an "advertising surcharge."  Id. ¶ 117.  But the "leverage" referred to was not news, and was not an indication of fraud.  Nor does the term "advertising surcharge" carry such an implication -- the term reflects the author's complaint about the allocation of costs, not the propriety of the transaction.

In short, these two PowerPoint slides did not tell Ripp that the vendor transactions were fraudulent, so do not meet the SEC's burden of pleading facts showing Ripp's scienter.

**(ii)  The complaint does not plead scienter indirectly.**

Nor does the complaint plead scienter indirectly -- by pleading facts showing that Joe Ripp had both a motive and an opportunity to commit fraud, or facts that provide "strong circumstantial evidence" of Ripp's "conscious misconduct" or lack of care.

Pleading motive and opportunity to commit fraud requires pleading "the means and likely prospect of achieving concrete benefits."  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994).  The complaint attempts to show motive and opportunity by alleging that Ripp profited from selling AOL Time Warner stock and by earning bonuses based on AOL Time Warner's financial results.  Compl. ¶ 193.  But sales of stock only create a strong inference of fraudulent intent when facts are alleged indicating that the stock sale was "unusual."  Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995).  Such facts might include the defendant's profit, the proportion of the defendant's holdings sold at an inflated price, the volume of insider

-15-

sales, and the number of corporate insiders selling stock.  Frazier v. Vitalworks, Inc., 344

F.Supp. 2d 142, 160 (D. Conn. 2004); see also Malin v. XL Capital Ltd., 499 F. Supp. 2d 117,

151 (D. Conn. 2007) ("impossible" to determine whether stock sales were unusual where

plaintiffs only alleged the number of shares sold, sale price, and gross profit).  Here, all the SEC

alleges is that Ripp sold stock "inflated by the fraud."  It does not say when he sold it; how much

he sold; what proportion of his shares he sold; the price at which he sold it; the profit he made;

who else from the company was selling, and how much; or by how much the alleged fraud

supposedly inflated the price.  Because the SEC pleads no such facts -- indeed, any facts at all

about Ripp's stock sales -- it has not alleged these sales are "unusual," so has not alleged that

they support an inference of fraudulent intent.

        The allegation that Ripp earned bonuses tied to AOL's "financial results" is also

insufficient, for courts have consistently held that a defendant's interest in increasing his

compensation by inflating corporate performance is not a sufficient motive for fraud.  E.g.,

Acito, 47 F.3d at 54 ("Incentive compensation can hardly be the basis on which an allegation of

fraud is predicated.").  The allegation that Ripp engaged in fraud to increase his bonuses thus

cannot support an inference of fraudulent intent.

        Nor does the complaint allege facts constituting strong circumstantial evidence of

conscious misconduct.  The SEC's burden is high, for when a defendant's motive for fraud is not

apparent (as is the case here), circumstantial evidence of intent must be particularly strong.

Kalnit, 264 F.3d at 142.  Conscious misconduct includes "deliberate illegal behavior, such as

securities trading by insiders privy to undisclosed and material information . . . or knowing sale

of a company's stock at an unwarranted discount."  GeoPharma, Inc. Sec. Litig., 399 F. Supp. 2d

432, 443 (S.D.N.Y. 2005) (internal quotation marks and citation omitted), aff'd 113 Fed.Appx.

427 (2004).  But the complaint does not allege facts indicating conscious misconduct -- it does not allege that Ripp engaged in insider trading (see above); nor does it allege that he was involved in devising or executing the vendor transactions, which were completed before he joined the AOL Division.  Moreover, any claim that Ripp knowingly engaged in fraud is once again belied by the fact that he started exposing fraud soon after he arrived at the AOL Division.

The complaint does not contain any facts suggesting indirect or circumstantial evidence that Ripp ever learned that the vendor transactions were fraudulent.  In the absence of facts indicating either directly or indirectly that Ripp knew of the alleged fraud, the complaint has not pleaded scienter.

### (iii) The complaint does not plead facts showing that Ripp acted negligently.

Section 17(a)(2) does not require scienter, but does require the SEC to plead negligence.[6]  But to plead negligence, the complaint must plead that Ripp should have known from the two PowerPoint slides that the vendor transactions were improper.  But the slides did not contain any indications of impropriety in those transactions, and the complaint therefore fails to plead that he was negligent in failing to investigate the transactions further.

### B.    The complaint does not adequately allege that the vendor transactions were material.

A complaint must allege with particularity that the alleged fraud was material -- that there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  In re Duke Energy Corp. Sec. Litig., 282 F.Supp 2d 158, 161 (S.D.N.Y. 2003), aff'd 113 Fed.Appx. 427 (2004), quoting Basic, Inc., 485 U.S. at 231-32.  Because materiality

---

[6]    Because the SEC's claims against Mr. Ripp with respect to the vendor transactions are founded solely on an alleged false statement or omission, the only part of § 17(a) at issue is § 17(a)(2).

must be assessed against the background of the "total mix of information," no one factor is

dispositive.  Rather, as the Second Circuit held in <u>Ganino v. Citizens Utilities Co.</u>, 228 F.3d 154,

164 (2d Cir. 2000), facts bearing on materiality must be "[t]aken in context," because their

significance is "depend[ent] on circumstances."  As the SEC put it in its brief in <u>Ganino</u>,

"materiality depends on the 'total mix' of available information or the 'surrounding

circumstances.'"  SEC Brief, amicus curiae, in <u>Ganino</u>, at 14 (1999 WL 33617752 at *14)

("Ganino Brief").

        But the SEC's complaint flunks this test, for it makes no attempt to describe the

"total mix" of information available to investors, or the "context" or "circumstances" of the false

statements attributed to Joe Ripp.  The biggest omission from the complaint is any reference to

AOL Time Warner financial metrics.  A crucial part of the "total mix" of information is the

effect a false financial statement has on the company's financial reports.  <u>See</u>, <u>e.g.</u>, SEC Staff

Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45151 n. 4 (1999) ("the 'total mix' includes the

size in numerical or percentage terms of the misstatement").  Of all the elements that go to make

up the "total mix" by which materiality is to be measured, this is probably the most important --

indeed, the SEC itself acknowledges that quantitative factors may give rise to "a preliminary

<u>assumption</u>" that a false statement is <u>not</u> material.  SEC <u>Ganino</u> Brief at 13 (emphasis added).

Yet all the SEC says about AOL Time Warner's financial metrics is that the misstatements

"described in this Complaint" had "a material impact on one or more of the important metrics the

investing public and analysts considered."  Compl. ¶ 43.  But this is a bare legal conclusion:  the

SEC says nothing more about what this "impact" might be -- no attempt is made to describe facts

showing the impact of the vendor transactions on any of these metrics.

It is hard to believe that the SEC's failure to plead quantitative materiality with particularity is an oversight. Rather, it seems more likely that this failure is an implicit acknowledgment that AOL Time Warner's financial metrics demonstrate an absence of materiality.[7] The actual facts (included in AOL Time Warner's public filings, which the Court can consider on this motion) confirm this. The complaint alleges that AOL recognized $ 54.5 million in revenue from the vendor transactions in 2000 (the complaint does not describe when the remaining $30 million was recognized). Compl. ¶¶ 63, 77, 109. But this totals just 0.15% of AOL Time Warner's pro forma revenue ($36.21 billion) for that year.[8] And even if all $ 84.5 million of the vendor transaction revenue had been recognized in 2000, that would still have constituted just 0.23% of AOL Time Warner's pro forma 2000 revenue. Thus, the question is: would it have been material to AOL Time Warner investors in January 2002 to learn that the company misstated its year 2000 revenues by 0.15% or 0.23%? Court after court has held that a percentage this small is not material. See, e.g., In re Duke Energy Corp. Securities Litig., 282 F.Supp.2d at 161 ($217 million income from alleged round trip trades, constituting 0.3% of revenues, held immaterial as a matter of law); Garber, 537 F.Supp.2d at 613-614 (misstatements amounting to 0.4% of annual revenues were immaterial as a matter of law); In re JP Morgan Chase Securities Litigation, 363 F.Supp.2d 595, 630-631 (S.D.N.Y. 2005) (misstatements concerning $2 billion worth of assets were immaterial, because the misstatements totaled 0.3% of total assets); In re Nokia Oyj (Nokia Corp.) Securities Litigation, 423 F.Supp.2d 364, 408 (S.D.N.Y. 2006) (misstatements regarding "millions of dollars" of sales were immaterial,

---

[7]    See 5-Star Management, Inc. v. Rogers, 940 F.Supp. 512, 519 (E.D.N.Y. 1996) ("An omission of ultimate fact regarding a pivotal element of a pleader's claim justifies the court to assume the non-existence of the operative fact.").

[8]    See Time Warner Inc., Annual Report (Form 10-K), at F-7 (Mar. 25, 2002) (Little Decl. Exh. H).

because company had net sales of $37 billion); <u>S.E.C. v. Patel</u>, 2008 WL 781912, *8-10 (D.N.H. 2008) (alleged misstatements amounting to less than 1% of revenue were immaterial); <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 546-47 (8th Cir. 1997) (2% asset misstatement immaterial); <u>In re Westinghouse Sec. Litig.</u>, 90 F.3d 696, 715 (3d Cir. 1996) (1.2% asset misstatement immaterial).

By ignoring these financial metrics -- save for the conclusory claim that they were materially impacted -- the complaint does not plead essential facts concerning a major part of the "total mix" of information available to investors.

In fact, all the complaint contains about materiality is reference to a couple of "qualitative" factors. Qualitative factors include such matters as whether the misstatement masks a change in earnings or other trends, or hides a failure to meet analysts' expectations. <u>Ganino</u>, 228 F.3d at 163 (quoting SEC Staff Accounting Bulletin No. 99). The SEC alleges that online advertising revenue was "a key measure by which analysts and investors evaluated" AOL Time Warner. Compl. ¶ 1. Likewise, it alleges that AOL used allegedly-inflated advertising revenue to make it appear as though it had made or exceeded revenue targets. <u>Id</u>. ¶ 25. But these passing claims -- so broad as to be incapable of proof or disproof -- are not supported by any facts, and are not pleaded with any particularity. <u>See Minzer</u>, 218 F.3d at 151 (allegations going to materiality must allege "provable facts"); <u>In re Duke Energy ERISA Litig.</u>, 281 F.Supp.2d 786, 792 (W.D.N.C. 2003) (plaintiffs must allege "specific facts" concerning qualitative factors).

Moreover, the point remains that even if the SEC had properly pleaded relevant qualitative factors, these would be only part of the "total mix" of information, so by themselves could not show materiality. As the SEC Staff has acknowledged, "materiality judgments are

made in light of surrounding circumstances and necessarily involve <u>both</u> quantitative and qualitative considerations."  Staff Accounting Bulletin No. 99, 64 Fed. Reg. at 45151 n.5 (emphasis added).

The bottom line is that the revenue from the vendor transactions was a vanishingly small part of AOL Time Warner's total revenues.  As the SEC itself has stated, when a quantitative measure of materiality results in such a small figure, there can be an "assumption" that a fraud was not material.  In some cases, such an assumption might be overcome by sufficiently weighty qualitative factors.  But not here, not on this pleading.  The Court should hold that the vendor transactions were not material.

**C.    The claims with respect to the vendor transactions are time-barred.**

The claims that Mr. Ripp is liable for false statements concerning the vendor transactions are time-barred.  SEC enforcement actions have a five-year limitations period.  28 U.S.C. § 2462.  The latest misstatement concerning the vendor transactions attributed to Ripp was on January 28, 2002.[9]  Thus, absent tolling, the SEC's claims against Ripp with respect to the vendor transactions accrued no later than January 28, 2002, so expired no later than January 28, 2007.  Yet the SEC did not commence this action until May 19, 2008.

The SEC tries to bridge this 477-day gap by appealing to tolling agreements it entered into with Ripp that, it claims, "tolled the running of any statute of limitations from March 22, 2006 through March 31, 2007."  Compl. ¶ 189.  But these agreements do not help the SEC. First, the actual text of these agreements (not quoted in the complaint) shows that they did not extend the limitations period in any way that could help the SEC here.  Rather, both agreements

---

[9]     The complaint mentions two later statements -- letters dated April 15, 2002, and October 22, 2002.  Compl. ¶ 182.  But neither concerned revenue from the vendor transactions (the complaint alleges that the letters related to financial results for the first and third quarters of 2002, respectively).

state that Ripp will not claim that the SEC's failure to commence an action "during the tolling period" gives rise to a defense under the statute of limitations,[10] so when the agreements expired on March 31, 2007 without the SEC having commenced an action against Ripp, the limitations period continued running as though there had been no hiatus at all.  But, second, even if the agreements did prevent the limitations period from running, at most they extended the period by 374 days, not the 477 days needed.  So there is still a gap.

The SEC tries to bridge this gap by claiming fraudulent concealment.  Compl. ¶¶ 184-86.  Again, this is to no avail.  Fraudulent concealment delays accrual "only up to the time when, despite the fraud," the plaintiff should have known that a claim exists.  Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992).  The SEC indicates that it discovered its claim on October 23, 2002, when AOL Time Warner issued a statement that its accounting "could no longer be relied upon."  Compl. ¶ 186.  But, as it happens, the SEC is wildly wrong about October 23, 2002, being the date that any alleged concealment ended.  As the memorandum of law in support of Mr. Kelly's motion to dismiss describes in detail, the SEC met with AOL Time Warner's counsel as early as Monday, May 13, 2002, as part of its inquiry into the company's accounting practices -- in particular, with respect to supposedly-fraudulent "round-trip" transactions.  But if the SEC investigation began as early as the first half of May 2002, the SEC's contention that the fraudulent concealment doctrine makes its complaint timely is forlorn.

Moreover, in addition to its misleading pleading as to when the alleged concealment ended, the SEC has failed to plead that its continuing ignorance (until whatever date) "was not attributable to lack of diligence on its part."  SEC v. Jones, 476 F.Supp 2d 374,

---

[10]    See April 4, 2006, and September 26, 2006 Agreements (Little Decl. Exhs. I & J) at ¶ 2.  The SEC has relied on these agreements in bringing this action, so they can be considered on a motion to dismiss.  M-101, LLC v. iN Demand L.L.C., 2007 WL 4258191, at *1 n.1 (S.D.N.Y. Dec. 3, 2007).

382 (S.D.N.Y. 2007). The SEC does not allege that it exercised reasonable diligence in seeking

to uncover the alleged fraud; thus its claim to benefit from the fraudulent concealment doctrine

must fail. In re Merrill Lynch Ltd. Partnerships Litigation, 154 F.3d 56, 60 (2d Cir. 1998)

(fraudulent concealment not properly pleaded when plaintiffs "failed to plead adequately that as

a result of Merrill Lynch's alleged concealment they could not, through reasonable diligence,

have discovered the fraud"); World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 530

F.Supp.2d at 486, 529-530 (S.D.N.Y. 2007) (fraudulent concealment not properly pleaded when

plaintiff pleaded no facts evidencing that it exercised diligence).

## III. THE COMPLAINT DOES NOT STATE A CLAIM UNDER § 17(a) OR § 10(b) / RULE 10b-5 AGAINST JOE RIPP WITH RESPECT TO THE AMENDMENTS TO THE BERTELSMANN PUT/CALL AGREEMENTS.

### A. The complaint does not adequately allege that Joe Ripp had scienter or acted unreasonably with respect to the Bertelsmann amendments.

#### (i) The complaint does not plead direct evidence of Ripp's scienter.

The SEC pleads that Joe Ripp had knowledge of the fraudulent nature of the BAG

transactions by placing him at a meeting where, it suggests, he learned that the transactions were

fraudulent. The totality of the SEC's pleading with respect to this meeting is as follows:

> Ripp attended a key negotiation session with BAG and, along with
> Wovsaniker, provided advice on the value, structure, and accounting of
> [BAG] amendment deals. [Compl. ¶ 134.]

No mention is made of: when the meeting was held; who attended (apart from

Wovsaniker); what was said by Ripp or by any other participant; what terms for a deal were

discussed; what was said to indicate that the deal was improper; whether the terms of the final

deal were agreed on at the meeting, or whether it was a preliminary meeting where initial,

provisional, ideas were thrown around.  In short, nothing is said to demonstrate that Ripp knew

that the BAG transactions were improper, or learned that (alleged) fact at this meeting.[11]

        In fact, the complaint's allegations about this BAG meeting are strikingly similar

to the allegations against Ripp held insufficient in In re AOL Time Warner, Inc. Sec. & ERISA

Litig., 381 F.Supp.2d 192, 226 (S.D.N.Y. 2004), where the plaintiffs alleged that Ripp

"participated on a telephone call where, inter alia, certain aspects of [a transaction] were

discussed," but failed to plead facts concerning what transpired on this telephone call, and so

failed to plead that Ripp had "knowledge of the nature of the allegedly fraudulent deals."  Here,

similarly, the allegation that Ripp attended a meeting that discussed certain aspects of the BAG

transaction does not give rise to an implication that Ripp had knowledge of a fraud.

        But attendance at this single meeting is all the SEC pleads.  For sure, the

complaint contains some boilerplate:  Ripp "knew" that "BAG was paying for the amendments

. . . and not for the advertising" (id. ¶ 132); Ripp "improperly approved recognition of the entire

$400 million . . . as advertising revenue (id. ¶ 135); and Ripp "knew or was reckless in not

knowing" certain facts about the transaction (id. ¶ 141).  This should be ignored.  See Kalnit, 264

F.3d at 142 (securities claims cannot be based on "speculation and conclusory allegations").

### (ii)  The complaint does not plead indirect evidence of Ripp's scienter.

        Nor has the SEC pleaded that Ripp had motive and opportunity to commit fraud:

as already discussed, the allegation that Ripp sold AOL stock cannot suffice in the absence of

---

[11]     Moreover, the BAG deal was between BAG and AOL Time Warner (an entity of
which Ripp was not an officer), as the SEC's March 2005 complaint against AOL Time Warner
(filed in the federal district court in Washington, D.C.) acknowledged:  "AOLTW ignored the
substance of the transaction and improperly recognized online advertising revenue in 2001 as a
result of the March '01 Deal."  See Complaint at ¶ 50, S.E.C. v. Time Warner Inc., 05-cv-578
(GK) (D.D.C. Mar. 21, 2005) (Little Decl. Exh. K).

-24-

facts indicating that that sale was "unusual," and the claim that he committed fraud to boost his bonuses cannot support an inference of fraudulent intent.  See pp. 15-16, supra.

Nor does the complaint plead facts providing strong circumstantial evidence that Ripp either engaged in conscious misconduct or recklessness.  All the complaint alleges to indirectly suggest that Ripp knew that the BAG transactions were fraudulent is that he "discussed internally how much BAG revenue to recognize" (Compl. ¶ 142), and that, "[t]o conceal the significance of this sham . . . Ripp . . . carefully tracked . . . recognition of BAG advertising revenue . . . to attempt to ensure that it would not account for more than 10% of the Company's consolidated revenue" (id. ¶ 143).  The first allegation shows nothing -- indeed, the complaint itself states that the BAG contract gave AOL Time Warner control over the placement and frequency of the BAG advertising.  Id. ¶ 141.  That Ripp and others are alleged to have exercised that contractual right is hardly a fact indicating knowledge of fraud.  The second allegation is unsupported by any facts -- still less facts showing that Ripp sought to "conceal" anything:  it amounts to nothing more than a further conclusory allegation of fraud, falling far short of the required strong showing of conscious misconduct.

### (iii) The complaint does not plead facts showing that Ripp acted negligently.

Claims under § 17(a)(2) and (3) require the SEC to plead that Ripp was at least negligent with respect to the BAG transactions.  But to plead negligence, the complaint must plead that Ripp should have known something was amiss with the BAG transactions.  For the reasons just described, the complaint does not allege any facts showing that Ripp knew or should have known of fraud in the BAG transactions.  The complaint therefore fails to plead that Ripp was negligent in not concluding that he should investigate these transactions further.

### B. The complaint does not adequately allege that the Bertelsmann amendments were material.

The complaint does not plead with the required particularity that the allegedly-inflated revenue from the BAG amendments was material. As with the vendor transactions, no facts are pleaded indicating quantitative materiality. The complaint alleges that, over a two year period (fiscal years 2001 and 2002), the BAG amendments inflated AOL Time Warner's total revenues by $400 million. But the complaint does not note that, during this time frame, AOL Time Warner had revenue of over $79 billion.[12] The BAG transactions inflated AOL Time Warner revenue by only 0.5% -- a percentage too small to be material. See pp. 19-20, supra.

### C. The claims with respect to the Bertelsmann amendments are time-barred.

The complaint's claims of fraud against Ripp with respect to the BAG amendments are time-barred. According to the complaint, the BAG transactions took place in March and December 2001. Compl. ¶¶ 130, 131. And the complaint dates statements by Ripp related to revenue from BAG no later than October 22, 2002. Id. ¶ 182 (Ripp's October 22, 2002 letter concerning third quarter 2002 financial information). Therefore, absent tolling, the SEC's claims relating to these transactions expired no later than October 22, 2007. But the complaint fails to allege any fraudulent concealment beyond October 23, 2002, when AOL Time Warner publicly stated that its 2000 and 2001 financial statements could not be relied on. See p. 22, supra. So even if the SEC had adequately pleaded fraudulent concealment -- which it has not (id.) -- that doctrine could not extend the SEC's time to bring suit as far as needed to make this action timely. And, as already explained, the tolling agreements with Ripp only prevented the

---

[12]    See AOL Time Warner Inc., Annual Report (Form 10-K), at F-60 (Mar. 28, 2003) (Little Decl. Exh. L); AOL Time Warner Inc., Annual Report (Form 10-K), at F-28 (Mar. 25, 2002) (Little Decl. Exh. H).

limitations period from expiring during the life of the agreements -- they did not extend the limitations period for claims brought after March 31, 2007.  Id.

## IV.    THE COMPLAINT DOES NOT STATE A CLAIM UNDER § 17(a) OR § 10(b) / RULE 10b-5 AGAINST JOE RIPP WITH RESPECT TO THE CONTRACT DISPUTE RESOLUTIONS.

### A.    The complaint does not adequately allege that Joe Ripp had scienter or acted unreasonably with respect to the contract dispute resolutions.

#### (i)    The complaint does not plead direct evidence of Ripp's scienter.

Like the vendor transactions and the BAG amendments, the complaint fails to plead any direct evidence that Ripp knew the WorldCom transactions were fraudulent (and, as noted, the complaint does not link Ripp in any way to the Ticketmaster and Wembley transactions).  The complaint alleges that Ripp was at "meetings" where the June 2001 WorldCom transaction was discussed.  Compl. ¶ 163.  But the complaint does not mention: when these meetings were held; who attended (all the complaint says is "AOL negotiators"); what was said by Ripp or any other participant; what terms for a deal were discussed; or what was said to indicate that the deal was improper.  But pleading Ripp's presence at a meeting where a transaction was discussed -- without any allegations as to what was said at that meeting -- does not suffice to show that Ripp knew the transactions were fraudulent.  See p. 24, supra; In re AOL Time Warner, Inc. Sec. & ERISA Litig., 381 F.Supp.2d at 226.

The complaint also alleges that Ripp reviewed a document that "disclosed [AOL's] agreement to pay $39.2 million" to settle the dispute.  Compl. ¶ 165.  But  the complaint itself points out that this document says nothing at all about the very aspect of the transaction that the SEC says was fraudulent (id.), so it cannot have told Ripp the deal was fraudulent.  And the allegation that "[i]n contemporaneous internal AOL e-mails," Ripp and others "considered ways to convert" the settlement into AOL advertising revenue (id. ¶ 169), is,

in itself, silent about fraud, for there is nothing inherently suspicious about seeking to resolve a business dispute by an agreement that includes an advertising purchase.

In fact, the complaint identifies only <u>one</u> e-mail that Ripp is said to have seen -- an e-mail which said that WorldCom was "loath" to spend more on AOL advertising.  <u>Id.</u> 176. But that e-mail (Little Decl. Exh. M) is a lengthy discussion of various deals in the pipeline, and, for each, presents the current state of negotiations.  All that this e-mail says about WorldCom is that it was reluctant to make an advertising purchase part of a deal with AOL Time Warner: it does not say that WorldCom will not agree to such a contract -- indeed, the same e-mail goes on to discuss various ways that a deal could be structured (none of them improper) that might persuade WorldCom to do such a deal.  Nothing in this e-mail proposed a fraudulent transaction, and nothing would have alerted Ripp to fraud.

### (ii)  The complaint does not plead indirect evidence of Ripp's scienter.

The allegations that Ripp profited from the alleged frauds by selling supposedly fraudulently-inflated AOL Time Warner stock and boosting his bonuses do not support an inference of fraudulent intent.  <u>See</u> pp. 15-16, <u>supra</u>.  The complaint also fails to allege any facts that would provide strong circumstantial evidence that Ripp either engaged in conscious misconduct or recklessness relating to the WorldCom transactions.  And the complaint's conclusory allegations that Ripp knew the WorldCom transactions were fraudulent (<u>e.g.</u>, Compl. ¶¶ 175, 178-80) should be given no weight.

### (iii)  The complaint does not plead facts showing that Ripp acted negligently.

Because the complaint fails to plead facts indicating that Ripp knew or should have known that the WorldCom transactions were fraudulent, the complaint does not plead that Ripp was negligent with respect to those transactions.  The SEC's § 17(a)(2) and (3) claims with respect to WorldCom should therefore be dismissed.

**B.  The complaint does not adequately allege that the contract dispute resolutions were material.**

The two WorldCom transactions allegedly inflated fiscal year 2001 revenue by $ 51.2 million (Compl. ¶ 155), which constituted just 0.13% of AOL Time Warner's total revenues for that year.[13]  For the reasons already discussed, the complaint does not plead any facts that indicate that the supposed frauds in the contract dispute settlements were nevertheless material.  See pp. 17-21, supra.

**C.  The claims with respect to the contract dispute resolutions are time-barred.**

The complaint's claims against Ripp concerning WorldCom are also time-barred. These transactions are alleged to have occurred between August 2000 and December 2001, and Ripp's last statement about WorldCom revenue is alleged to have been his January 28, 2002 letter to E&Y.  Compl. ¶ 182.[14]  Thus, absent tolling, the claims relating to these transactions expired in January 2007.  The complaint does not sufficiently allege fraudulent concealment. See pp. 22-23, supra.  Moreover, the complaint fails to allege concealment beyond October 23, 2002.  Compl. ¶ 186.  And the tolling agreements with Ripp did not extend the limitations period for claims brought after March 31, 2007.  See pp. 21-22, supra.

---

[13]     AOL Time Warner Inc., Annual Report (Form 10-K), at F-28 (Mar. 25, 2002) (Little Decl. Exh. H).

[14]     Paragraph 155 of the complaint alleges that the revenue from the WorldCom transactions was included in the second and fourth quarters of 2001.  Mr. Ripp's January 28, 2002 letter is alleged to have concerned "AOL's consolidated financial statements for the three years ended December 31, 2001."  Id. ¶ 182.  The only later statements by Ripp alleged to be false are an April 15, 2002 letter concerning financial information for the first quarter of 2002, and an October 22, 2002 letter concerning financial information for the third quarter of 2002.  Id. Thus, as pleaded, neither concerned revenue from the WorldCom transactions.

## V.    THE COMPLAINT DOES NOT STATE A CLAIM AGAINST JOE RIPP FOR AIDING AND ABETTING AOL TIME WARNER'S § 10(b) / RULE 10b-5 VIOLATIONS.

A claim for aiding and abetting § 10(b) / Rule 10-5 violations requires a complaint to allege (1) that there was a primary violation, (2) that the defendant knew of that primary violation, and (3) that the defendant substantially assisted in accomplishing the violation. 15 U.S.C. § 78t(e); S.E.C. v. Cedric Kusher Promotions, Inc., 417 F. Supp.2d 326, 334 (S.D.N.Y. 2006).  Aiding and abetting fraud must be pleaded with particularity.  Krause v. Forex Exchange Market, Inc., 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005).

The complaint does not adequately allege that Ripp knew of, or substantially assisted, a §10(b) / Rule 10b-5 violation by AOL Time Warner.  The SEC's burden here is high, "for the scienter requirement scales upward when activity is more remote; therefore, the assistance rendered [for aiding and abetting liability] should be both substantial and knowing." Edwards & Hanly v. Wells Fargo Securities Clearance Corp., 602 F.2d 478, 484-85 (2d Cir. 1979).  But, as described above, the complaint does not plead any facts that indicate that Ripp knew of the alleged frauds associated with these transactions.  The complaint thus fails to allege Ripp's "substantial and knowing" assistance in AOL Time Warner's primary violations.

## VI.    THE COMPLAINT DOES NOT STATE A CLAIM AGAINST JOE RIPP FOR RECORD-KEEPING OR REPORTING VIOLATIONS

### A.    The complaint's Fourth Claim -- for violation of Exchange Act Rule 13b2-1 -- should be dismissed against Ripp.

Rule 13b2-1 requires the SEC to plead that a defendant "directly or indirectly, falsified or caused to be falsified, any book, record or account that the company was required to make under the Securities Exchange Act."  S.E.C. v. Lowy, 396 F.Supp.2d 225, 240 (E.D.N.Y. 2003).  The SEC must plead that the defendant "acted unreasonably."  Id. at 250.  Because the

SEC's Rule 13b2-1 claims sound in fraud, it must satisfy Rule 9(b).  <u>S.E.C. v. Patel</u>, 2008 WL 782465, *4 (D.N.H. 2008).

The complaint does not adequately allege that Ripp falsified, or caused to be falsified, any book, record or account.  Nowhere in the complaint does the SEC identify a specific book, record or account that Ripp is alleged to have falsified or caused to be falsified.  <u>See</u> <u>Patel</u>, 2008 WL 782465, *13 (noting that the SEC must plead with specificity the books and records allegedly falsified in violation of Rule 13b2-1).  The 13b2-1 claim thus fails at the outset.  In addition, the complaint also fails to allege that Ripp acted unreasonably.  As already discussed, the complaint does not allege facts showing that Ripp knew or should have known that the various transactions identified in the complaint were fraudulent.  Finally, the complaint's allegation of a Rule 13b2-1 violation is subject to the same five-year statute of limitations as its previous claims, so is time-barred.  The 13b2-1 claim against Ripp should therefore be dismissed.

**B.     The complaint does not adequately plead a claim against Ripp for aiding and abetting violations of §§ 13(a) and 13(b)(2)(a) or Rules 12b-20, 13a-1, 13a-11, 13a-13 and 13b2-1**

A claim for aiding and abetting violations of §§ 13(a) and 13(b)(2) and the rules promulgated thereunder requires a complaint to plead the same elements as in a claim for aiding and abetting violations of § 10(b).  <u>See</u> <u>Cedric Kushner Promotions, Inc.</u>, 417 F. Supp. 2d at 336-337.  Thus, the complaint must plead:  (1) that there was a primary violation, (2) that the defendant knew of that primary violation, and (3) that the defendant substantially assisted in accomplishing the violation.  <u>Id.</u> at 334.   The SEC's claims that Ripp aided and abetted primary violations of §§ 13(a) and 13(b)(2)(a), and Rules 12b-20, 13a-1, 13a-11,13a-13 and 13b2-1, sound in fraud, so are subject to Rule 9(b).  <u>Patel</u>, 2008 WL 782465 at *4, *13-17.

With respect to the first element -- a primary violation by AOL Time Warner -- the complaint must allege, inter alia, that AOL Time Warner's periodic filings were materially inaccurate.  E.g., S.E.C. v. Coffman, 2007 WL 2412808, *11 (D.Colo. 2007).  For the reasons described above, the frauds alleged in the complaint were not significant enough to be material.  Nor does the complaint allege that Ripp knew of a violation by AOL Time Warner.  Because the SEC's complaint "sounds in fraud," its burden of alleging aiding and abetting liability "scales upward," and must show "substantial and knowing assistance."  See Edwards & Hanley, 602 F.2d at 484-85.  For the reasons already described, the complaint does not plead facts showing that Ripp knew these transactions were fraudulent or knew of any false or fraudulent accounting.

Nor does the complaint plead facts demonstrating that Ripp provided "substantial assistance" to AOL Time Warner's alleged primary violations.  The complaint's allegations of Ripp's involvement are too flimsy to support this element:  that Ripp saw obscure references in two PowerPoint slides, attended a couple of meetings (about which the complaint says nothing), and received a couple of documents that contained no indication of fraud, do not show that he made a substantial contribution to false records intended to disguise the alleged fraud.  Finally, the complaint's aiding and abetting claims are subject to the same five-year statute of limitations period, so are time-barred for the reasons already described.

## Conclusion

Joe Ripp was the person who insisted that frauds at AOL be investigated and exposed.  The SEC's claim that he was at the same time devising fraudulent schemes of his own is beyond belief.  The claims against Joe Ripp should be dismissed in their entirety and with prejudice.  The SEC has been investigating these matters for over seven years now.  It has reviewed millions of documents and taken hundreds of days of testimony -- including several

days of testimony from Mr. Ripp. The complaint is the SEC's best shot at Ripp -- and it misses

the mark. Justice would be ill-served by allowing the SEC yet more time to come up with yet

further ways to spin the facts to try to drag Ripp into supposed frauds that he had nothing to do

with. The Department of Justice got it right -- Joe Ripp was a "white hat" at AOL, exposing and

thwarting fraud. For the SEC to accuse him of fraud is a perverse decision reflecting a profound

error of judgment.

Dated:  September 5, 2008
        New York, New York

                        HUNTON & WILLIAMS LLP

        By:     /s/ Gregory G. Little_____
                Gregory G. Little
                glittle@hunton.com
                Stephen R. Blacklocks
                sblacklocks@hunton.com
                HUNTON & WILLIAMS LLP
                200 Park Avenue
                New York, New York  10166
                (212) 309-1000

                Bonnie K. Arthur (pro hac vice motion pending)
                barthur@hunton.com
                HUNTON & WILLIAMS LLP
                1900 K Street NW
                Washington, D.C.  20006
                (202) 419-2063

                Attorneys for Defendant Joseph A. Ripp

## DECLARATION OF SERVICE

Raymond E. Galbraith, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

I am a Litigation Paralegal at the law firm of Hunton & Williams LLP, attorneys for Defendant Joseph A. Ripp.

That on September 5, 2008, I served a true and correct copy of the foregoing Memorandum of Law in Support of Defendant Joseph A. Ripp's Motion to Dismiss the Complaint for Failure to State a Claim, on counsel of record via the Court's ECF System.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2008.

/s/ Raymond E. Galbraith
Raymond E. Galbraith

TO:  All Counsel of Record