Mark J. Hulkower
Jonathan C. Drimmer
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Attorneys for Defendant
Steven E. Rindner

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | No. 08 cv 4612 (SWK) |
| | : | |
| v. | : | **MEMORANDUM OF LAW** |
| | : | **IN SUPPORT OF MOTION TO** |
| | : | **DISMISS COMPLAINT OF** |
| | : | **PLAINTIFF SECURITIES &** |
| JOHN MICHAEL KELLY, STEVEN E. | : | **EXCHANGE COMMISSION** |
| RINDNER, JOSEPH A. RIPP, and | : | |
| MARK WOVSANIKER, | : | |
| | : | |
| Defendants. | : | |

---

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    THE ALLEGATIONS IN THE COMPLAINT .................................................3

    A.    The Transactions And Rindner's Minor Role.....................................3

        1.    Sun .................................................................................4

        2.    Veritas ...........................................................................5

        3.    HP ..................................................................................5

        4.    Ticketmaster/Wembley ................................................6

        5.    BAG ..............................................................................6

        6.    Telefonica ....................................................................7

        7.    WorldCom....................................................................8

    B.    Prior "Related" Proceedings..............................................................8

III.   STANDARD OF REVIEW .................................................................................9

IV.   ARGUMENT .....................................................................................................10

    A.    The SEC's Claims For Primary Liability Under Section 17(a) Of The Securities Act, Section 10(b) Of The Exchange Act, And Rule 10b-5 (Counts 1 and 2) Must Be Dismissed.................................................10

        1.    Counts 1 and 2 require the SEC to prove that Rindner actually made a material misrepresentation or omission to the investing public, and acted with scienter................................................11

        2.    The SEC has not sufficiently alleged that Rindner made a material misrepresentation or omission to the investing public.............................12

        3.    The SEC's general allegations that Rindner knowingly or recklessly took part in a scheme fail to state a claim for a primary violation of Section 10(b), Rule 10b-5, or Section 17(a)..........................14

        4.    The Complaint has not sufficiently alleged that Rindner acted with the requisite scienter. ................................................15

    B.    The SEC Has Failed To State Claims Upon Which Relief Can Be Granted In Connection Counts 3, 4, and 7........................................20

        1.    Aiding and abetting under Section 10(b) and Rule 10b-5 (Count 3), and Exchange Act Sections 13(a) and 13(b)(2)(A) and Exchange Act Rules 13a-1, 13a-11, 13a-13, 12b-20, and 13b2-1 (Count 7) ............20

        2.    Violation of Exchange Act Rule 13b2-1 (Count 4) ...................................23

    C.    The Requests For Relief Should Be Stricken. ...................................................25

1.      The Statute of Limitations Requires Exclusion of All, or Nearly
        All, of the Transactions As Bases for Relief............................................25

2.      The SEC Fails to State Its Request for Relief on Disgorgement
        With Particularity......................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*380544 Can., Inc. v. Aspen Tech., Inc.,* 544 F. Supp. 2d 199 (S.D.N.Y. 2008) .....................16, 17

*3M Co. (Minnesota Mining & Manufacturing) v. Browner,*
    17 F.3d 1453, 1460-63 (D.C. Cir. 1994)....................................................................26

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) .............................................................15

*Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006)....................................9

*Armstrong v. McAlpin,* 699 F.2d 79 (2d Cir. 1983).......................................................................22

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................................................9, 22

*Boos v. Runyon,* 201 F.3d 178 (2d Cir. 2000)..............................................................................29

*Chill v. Gen. Elec. Co.,* 101 F.3d 263 (2d Cir. 1996) ...................................................................17

*Coghlan v. NTSB,* 470 F.3d 1300 (11th Cir. 2006).......................................................................32

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990).................................................................10

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987)............................10

*Edwards & Hanley v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478 (2d Cir. 1979).............22

*FEC v. Williams,* 104 F.3d 237 (9th Cir. 1996)............................................................................26

*Garber v. Legg Mason Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008) ..............................................17

*Greene v. Hanover Direct, Inc.,*
    No. 06 Civ. 13308(NRB), 2007 WL 4224372 (S.D.N.Y. Nov.19, 2007) ....................16, 19

*Halbrecht v. Prudential-Bache Prop., Inc.,*
    No. H-90-799(JAC), 1992 WL 336757 (D. Conn. July 25, 1991) .........................................31

*Hall v. Children's Place Retail Stores, Inc.,*
    No. 07 Civ. 8252(SAS), 2008 WL 2791526 (S.D.N.Y. July 18, 2008) ................................26

*In re Ames Dep't Stores, Inc. Stock Litig.*, 991 F.2d 953 (2d Cir. 1993) ......................................26

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
    No. 1:02-md-01500-SWK (S.D.N.Y. Sept. 12, 2002) ....................................................8, 9, 28

iv

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.,*
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)........................................................................2, 4, 15, 28

*In re Barge*, No. 3-11862 (SEC Mar. 21, 2005) ...................................................................8, 28

*In re The Mediators, Inc.,*
    190 B.R. 515 (S.D.N.Y. 1995), *aff'd*, 105 F.3d 822 (2d Cir 1997) ...................................29, 30

*In re Merrill Lynch & Co. Research Reports Sec. Litig.,*
    289 F. Supp. 2d 416 (S.D.N.Y. 2003)................................................................................16

*In re Merrill Lynch Ltd. P'ships Litig.* 7 F. Supp. 2d 256 (S.D.N.Y. 1997) ...........................29-30

*In re Merrill Lynch Ltd. P'shps Litig.*, 154 F.3d 56 (2d Cir. 1998)........................................3, 29

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) ...............................................16-17

*In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008) .......................15, 16

*Johnson v. SEC*, 87 F.3d 484 (D.C. Cir. 1996)...........................................................................31

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...............................................................15, 16, 17

*King v. New York Tel. Co.*, 785 F.2d 31 (2d Cir. 1986).............................................................3, 26

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993).......................................................10

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ..........................................................................17

*Proffitt v. FDIC*, 200 F.3d 855 (D.C. Cir. 2000) .........................................................................32

*Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43 (E.D.N.Y 1998)................................................17

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ...............................................................9, 22, 33

*Ross v. Bolton*, 904 F.2d 819 (2d Cir. 1990)...................................................................2, 21, 22

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)..............................................................9

*Scone Invs., L.P. v. Am. Third Mkt. Corp.,*
    No. 97 Civ. 3802 (SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998)..................................10

*SEC v. Berry*, No. C-07-04431 RMW, 2008 WL 2002537 (N.D. Cal. May 7, 2008)..................24

*SEC v. Caserta*, 75 F. Supp. 2d 79 (E.D.N.Y. 1999)...................................................................26

*SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326 (S.D.N.Y. 2006) .................21, 24

*SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477 (S.D.N.Y. 2007).........................13, 14, 26

*SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978)..............................31, 32

*SEC v. Dauplaise*, No. 6:05CV1391, 2006 WL 449175 (M.D. Fla. Feb. 22, 2006) ....................24

*SEC v. DiBella*, 409 F. Supp. 2d 122 (D. Conn. 2006)..........................................................31

*SEC v. Drexel Burnham Lambert, Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993) ...............................32

*SEC v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007) ("*Jones II*") ....................................... passim

*SEC v. Jones*,
   No. 05 Civ. 7044 (RCC), 2006 U.S. Dist. LEXIS 22800 (S.D.N.Y. Apr. 25, 2006)
   ("*Jones I*") ...............................................................................................................21, 29

*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) ...................................2, 11, 12, 13, 21

*SEC v. Lucent Techs., Inc.*,
   No. 04-2315 (WHW), 2005 U.S. Dist. LEXIS 41713 (D.N.J. May 19, 2005).. 2, 18, 19-20, 23

*SEC v. Lyon*, 529 F. Supp. 2d 444 (S.D.N.Y. 2008).......................................................................22

*SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999) ....................................................11

*SEC v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006)..........................................................3, 24

*SEC v. Northshore Asset Mgmt.*,
   No. 05 Civ. 2192 (WHP), 2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008) ..............15

*SEC v. Parnes*,
   No. 01 Civ. 0763 (LLS)(THK), 2001 U.S. Dist. LEXIS 21722 (S.D.N.Y. Dec. 20,
   2001) ......................................................................................................................10, 15

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) .....................................................................................32

*SEC v. Patel*, Civ. No. 07-cv-39-SM, 2008 U.S. Dist. LEXIS 23553 (D.N.H. 2008) .......... passim

*SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454 (S.D.N.Y. 2004) ............ passim

*SEC v. Posner*, 16 F.3d 520(2d Cir. 1994) ...................................................................................32

*SEC v. Power*, 525 F. Supp. 2d 415 (S.D.N.Y. 2007) .........................................................9, 22, 24

*SEC v. Scrushy*,
   No. CV-03-J-615S, 2005 WL 3279894, at *2-3 (N.D. Ala. Nov. 29, 2005)..........................26

*SEC v. Softpoint, Inc.*, 958 F. Supp. 846 (S.D.N.Y. 1997) ....................................................26, 27

*SEC v. Tambone*, 417 F. Supp. 2d 127 (D. Mass. 2006) ..............................................................10

*SEC v. Thielbar*,
   No. Civ. 06-4253, 2007 U.S. Dist. LEXIS 72986 (D.S.D. Sept. 28, 2007)............................24

*SEC v. Time Warner, Inc.*, No. 1:05-cv-00578-GK (D.D.C.)....................................................8, 28

*SEC v. Treadway*, 430 F. Supp. 2d 293 (S.D.N.Y. 2006)...........................................................22

*SEC v. U.S. Envtl, Inc.*, 155 F.3d 107 (2d Cir. 1998) ...................................................................14

*Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124 (2d Cir. 1994) ......................................18, 19, 23

*Smith v. McGinnis*, 208 F.3d 13 (2d Cir. 2000) ..........................................................................29

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .......................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ...............................15, 19, 20

*Trawinski v. United Techs.*, 313 F.3d 1295, 1298 (11th Cir. 2002) .............................................26

*United States v. Ancorp Nat'l Servs., Inc.*, 516 F.2d 198 (2d Cir. 1975).....................................26

*United States v. Core Labs. Inc.*, 759 F.2d 480, 482-84 (5th Cir. 1985) .....................................26

*United States v. Maillard,* 26 F. Cas. 1140, 1143 (S.D.N.Y. 1871) .............................................26

*United States v. Witherspoon,* 211 F.2d 858, 862 (6th Cir.1954).................................................26

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486 (S.D.N.Y. 2007).............29

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998).........................................................11

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) .........................................................................9


STATUTES

15 U.S.C. § 77q(a) (2000)...................................................................................................1, 2, 14

15 U.S.C. § 78j(b) (2000) ..................................................................................................1, 2, 14

15 U.S.C. § 78m(a) (2000)......................................................................................................1, 21

15 U.S.C. § 78m(b)(2)(A)........................................................................................................1, 23

15 U.S.C. § 78t(e) (2000)............................................................................................................14

28 U.S.C. § 2462 (2000) ...................................................................................................3, 25, 30

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................................... Passim

Fed. R. Civ. P. 12(b)(6).............................................................................. Passim

Fed. R. Civ. P. 12(f) ...........................................................................................33

**REGULATIONS**

17 C.F.R. § 240.10b-5(a) (2008)..............................................................1, 2, 14

17 C.F.R. § 240.12b-20 (2008) ......................................................................1, 21

17 C.F.R. § 240.13a-1 (2008) ........................................................................1, 21

17 C.F.R. § 240.13a-11 (2008) ......................................................................1, 21

17 C.F.R. § 240.13a-13 (2008) ......................................................................1, 21

17 C.F.R. § 240.13b2-1 (2008) ...........................................................1, 2, 21, 23

## I.    INTRODUCTION

In 2000 and 2001, Defendant Steven Rindner was a 31 year-old mid-level employee in the Business Affairs unit at America Online ("AOL").  *See* Complaint ¶ 15 ("Compl.").[1]  He was not the head of Business Affairs, or even head of a sub-unit of Business Affairs.  *Cf. id.*  Nor is he alleged to have possessed any training in or general knowledge of accounting principles, to have had authority to approve AOL's advertising transaction structures or determine how revenue from those deals should be recognized, or to have made any public pronouncements about AOL's revenue.  His job responsibilities focused on tracking AOL's advertising deals, and communicating about them with AOL's accountants and finance personnel.  Compl. ¶ 36.

The Complaint filed by Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") does not allege that Rindner in any way failed to adhere to those assigned duties. Instead, the SEC has advanced five causes of action against Rindner,[2] all premised on his having carried out his Business Affairs job functions precisely as dictated to him.  The SEC contends that, by ably performing his job responsibilities, Rindner ended up playing a small part in a complicated "scheme" to improperly record and publicly report revenue in connection with a

---

[1]  Rindner adopts by reference the arguments advanced by the other Defendants, as applicable, including the argument by Defendant Ripp as to materiality of the alleged frauds.  All facts alleged in the Complaint are accepted as true for purposes of this motion.

[2]  They are: violations of the securities fraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b) (2000)), Exchange Act Rule 10b-5 (17 C.F.R. § 240.10b-5(a) (2008)), and Section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a) (2000)) (Counts 1 & 2); aiding and abetting violations of Section 10(b) and Rule 10b-5 (Count 3); record-keeping violations of Exchange Act Rule 13b2-1 (17 C.F.R. § 240.13b2-1 (2008)) (Count 4); and aiding and abetting violations of Exchange Act Section 13(a) and 13(b)(2)(A) (15 U.S.C. §§ 78m(a), 78m(b)(2)(A) (2000 & Supp. V 2005)), and Exchange Act Rule 12b-20, 13a-1, 13a-11, 13a-13, and 13b2-1 (17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, 240.13b2-1 (2008)) (Count 7).

handful of advertising transactions that AOL pursued with eight counterparties:  Sun

Microsystems, Inc. ("Sun"), Veritas Software Corporation ("Veritas"), Hewlett-Packard Co.

("HP"), Telefonica DataCorp ("Telefonica"), Ticketmaster Corporation ("Ticketmaster"),

Wembley, PLC ("Wembley"), Bertelsmann, A.G. ("BAG") and WorldCom, Inc.

"(WorldCom").[3]  The SEC's claims cannot survive Fed. R. Civ. P. 12(b)(6).

    While the deficiencies in the SEC's Complaint are legion and varied, several compel the

dismissal of its causes of action and requests for relief against Rindner.

- Counts 1 and 2:  Most obviously, the SEC fails to identify any public
  statements made by Rindner, much less false or misleading ones, as it must to
  sustain its claims against Rindner for primary liability under Section 10(b) of
  the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)),
  Exchange Act Rule 10b-5 (17 C.F.R. § 240.10b-5(a)), and Section 17(a) of the
  Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)).  *See* Fed. R.
  Civ. P. 12(b)(6); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y.
  2006).  Equally fatal to the Section 10(b) claim are the SEC's failures to
  suggest that Rindner was aware of the accounting principles at issue, that
  Rindner knew that revenue from the deals could not be properly recognized,
  or any other facts giving rise to a strong inference of fraudulent intent,
  precluding the SEC from establishing scienter.  *See In re AOL Time Warner,
  Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 217 (S.D.N.Y. 2004); *SEC
  v. Lucent Techs., Inc.*, No. 04-2315 (WHW), 2005 U.S. Dist. LEXIS 41713, at
  *14-16 (D.N.J. May 19, 2005).

- Counts 3 and 7:  For each transaction alleged in the Complaint, the SEC fails
  to assert that Rindner engaged in any affirmative wrongful conduct, knew of
  any primary violation and actively sought to further it, or both.  Such failings
  doom the SEC's claims for aiding and abetting under Exchange Act Section
  10(b) and Rule 10b-5, and Exchange Act Sections 13(a) and 13(b)(2)(A) and
  Rules 13a-1, 13a-11, 13a-13, 12b-20, and 13b2-1.  *Ross v. Bolton*, 904 F.2d
  819, 824 (2d Cir. 1990); *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F.
  Supp. 2d 454, 467-68 (S.D.N.Y. 2004).

---

[3] The Complaint does not mention Rindner in connection with Sun or Ticketmaster, and
barely mentions him in connection with HP, Veritas, Wembley, and BAG.  However, the
Complaint adopts all antecedent paragraphs in setting out the causes of action, making it
virtually impossible to discern which transactions the SEC is relying upon in seeking liability
against Rindner.  Rindner repeatedly has asked the SEC for clarification, but the SEC has not
responded, necessitating Rindner's dismissal arguments as to the transactions in which he is not
named or only named peripherally.

- Count 4: The SEC at no time identifies any particular books and records that were falsified, precluding its claim against Rindner under Exchange Act Rule 13b2-1 (17 C.F.R. § 240.13b2-1 (2008)). *See SEC v. Patel*, Civ. No. 07-cv-39-SM, 2008 U.S. Dist. LEXIS 23553, at *16-17 (D.N.H. 2008). Nor does it allege that Rindner engaged in any affirmative wrongful conduct in connection with most of the transactions, further barring liability based on those deals. *See SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1284 (D. Colo. 2006).

- The requests for relief: All, or nearly all, of the transactions alleged by the SEC are untimely. In light of the SEC's allegations regarding Rindner's tolling agreements, the five-year statute of limitations, 28 U.S.C. § 2462 (2000), precludes the SEC from bringing claims based on conduct that occurred before October 8, 2001. As AOL recognized and reported revenue for the Sun, Veritas, HP, Ticketmaster, Wembley, Telefonica, BAG, and June WorldCom transactions before that date, none can serve as bases for the SEC to seek a fine, injunctive relief, or a director and officer bar. *See King v. New York Tel. Co.*, 785 F.2d 31, 33 (2d Cir. 1986); *SEC v. Jones*, 476 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) ("*Jones II*"). Although the SEC perfunctorily alleges fraudulent concealment to toll the limitations period, it patently fails to plead facts to support such a claim. *See In re Merrill Lynch Ltd. P'shps Litig.*, 154 F.3d 56 at 60 (2d Cir. 1998); *Jones II*, 476 F. Supp. 2d at 382. In addition, the SEC's highly generalized allegations for disgorgement run afoul of Fed. R. Civ. P. 9(b).

For these reasons and others set forth below, the Complaint has failed to plead violations of the securities laws against Rindner, failed to set forth cognizable bases of relief, and should be dismissed.

## II. THE ALLEGATIONS IN THE COMPLAINT

### A. The Transactions And Rindner's Minor Role

Of the dozens of advertising transactions that AOL entered in 2000 and 2001, the SEC's allegations focus on advertising deals with eight counterparties. The SEC alleges that those transactions were part of a complex "scheme" at AOL to improperly inflate revenue in violation of Generally Accepted Accounting Principles ("GAAP"). Compl. ¶ 40. The SEC contends that each of the deals was a type of "round trip" transaction, in which AOL directly or indirectly

funded its own advertising revenue, and then improperly recognized and reported that revenue as earnings.  Compl. ¶ 2.

For most of the transactions listed in the Complaint, however, Rindner is scarcely mentioned.  For none of the transactions is Rindner -- a mid-level employee -- alleged to have made any public representations, known of the underlying accounting principles or the supposed flaws in AOL's revenue recognition decisions, or had authority to determine how revenue should be recognized or reported.  The transactions, and Rindner's minor role in them, are alleged as follows:

1.    Sun

The SEC contends that, in Summer and Fall 2000, AOL agreed to forgo discounts in purchasing network equipment from Sun in exchange for Sun's purchase of advertising from AOL in the same amount of the forgone discounts.  Compl. ¶ 60.  AOL allegedly accepted free equipment from Sun in lieu of cash for the advertising, and then violated securities laws by recognizing the exchange as advertising revenue.  *Id*.  That revenue recognition occurred in mid-2000, and AOL then included the revenue in an SEC filing later that year.  Compl. ¶¶ 32, 63.  As to this transaction, which the SEC alleges "became a model for future round-trip transactions by which AOL improperly inflated its online advertising revenues," the SEC alleges absolutely no involvement by Rindner.  *See* Compl. ¶ 66.[4]

---

[4] As the Complaint alleges no involvement by Rindner in the Sun transaction, that transaction cannot form the basis of any liability for the SEC's claims against Rindner under any of the Counts in the Complaint.  *See In re AOL Time Warner*, 381 F. Supp. 2d 192, 216 (S.D.N.Y. 2004); *SEC v. Patel*, Civ. No. 07-cv-39-SM, 2008 U.S. Dist. LEXIS 23553, at *32 (D.N.H. 2008).

2.    <u>Veritas</u>

The Complaint alleges that in Fall 2000, AOL negotiated the purchase of a license for Veritas' software products.  Compl. ¶¶ 69, 70.  The Commission asserts that AOL agreed to forgo a discount of $20 million in the purchase price, Veritas in turn agreed to purchase $20 million in advertising from AOL, and AOL improperly recognized that $20 million as revenue in late 2000 and included it in a quarterly SEC filing in March 2001.  Compl. ¶¶ 32, 73-74, 77, 85. As to Rindner's involvement, the entirety of the SEC's claim is that on January 17, 2001, after the transaction had concluded, Rindner emailed a Business Affairs employee "reprimanding the . . . employee for stating in an email to [Defendant] Wovsaniker that no advertising carriage plan was in place" at the time the deal was signed, and instructing the employee to "clean this up." Compl. ¶ 78.  The SEC does not contend that the absence of such a carriage plan was somehow improper.  Nor does the Commission allege that Rindner contributed in any way to the accounting for or recording of the transaction, communicated about the deal to the public, had contemporaneous involvement in the deal, or engaged in any affirmative wrongful conduct. Indeed, the Complaint does not even intimate that Rindner was aware of the allegedly improper nature of the transaction, or any of the accounting principles at issue.

3.    <u>HP</u>

The Complaint alleges that in November 2000, AOL and HP devised a deal with HP "to obtain $12 million of online advertising revenue in exchange for agreeing to forgo a similar amount of additional discounts that AOL had negotiated in connection with a commitment to purchase $200 million in hardware."  Compl. ¶ 89.  The SEC contends that AOL improperly recognized revenue for this transaction in late 2000, and included the revenue in an SEC filing a few months later.  Compl. ¶¶ 32, 95-96.  The sole claim as to Rindner is that roughly one year after the HP deal, Rindner received an email suggesting that the transaction lacked economic

substance.  Compl. ¶ 93.  The Complaint contains no allegation that Rindner had

contemporaneous involvement with the transaction, contributed to the accounting for or

recording of the transaction, communicated to the public about the deal, or engaged in any

affirmative wrongful conduct.  The Complaint further does not suggest that Rindner had any

knowledge of potential flaws in the deal until more than one year after it had concluded, when

the revenue for the deal already had been recognized and reported.

4.    Ticketmaster/Wembley

The Complaint alleges that, in August and September 2000, Ticketmaster and Wembley

agreed to settle longstanding legal disputes with AOL, for $12.5 million and $23.8 million,

respectively.  Compl. ¶ 148.  The SEC asserts that AOL improperly converted these settlements

into online advertising revenue; it contends that AOL recognized revenue for the transactions in

the third quarter of 2000 and included them in an SEC filing before the end of that calendar year.

Compl. ¶¶ 32, 150.  As to Rindner's participation in the transactions, he is not mentioned in

connection with Ticketmaster.  For Wembley, the Commission contends that after the

transactions had concluded and revenue had been reported, Rindner and others "were told" in

emails that sham advertising had been run.  Compl. ¶ 154.  The Complaint contains no allegation

that Rindner had contemporaneous involvement with Wembley, had contemporaneous

knowledge of flaws in the accounting or advertising, knew of the accounting principles at issue,

contributed to the accounting for or recording of the transaction, discussed the transaction with

the public, or engaged in any affirmative wrongful conduct.

5.    BAG

As part of a joint venture with AOL, BAG owned shares in AOL Europe ("AOLE").

Compl. ¶ 123.  In March 2000, AOL and BAG entered into an agreement under which BAG

could put its AOLE shares to AOL for $6.75 billion, or AOL could call BAG's shares for $8.25

billion.  Compl. ¶ 124.  In March and December 2001, AOL and BAG amended the put/call

agreement through which AOL ultimately agreed to pay the entire put/call price in cash, and

BAG agreed to buy a total of $400 million in online advertising.  Compl. ¶¶ 128-31.  The SEC

alleges that AOL improperly accounted for the $400 million as advertising revenue -- which was

first recognized in early 2001 and included in an SEC filing in mid-2001 -- rather than as a

reduction in the purchase price of AOLE.  Compl. ¶¶ 32, 135, 137, 144.  As to Rindner's role,

the Commission alleges that all four Defendants (1) "discussed internally how much BAG

advertising revenue to recognize" based upon how much advertising AOL required for revenue

needs, and (2) "tracked their recognition of BAG advertising revenue" to remain below AOL's

internal threshold for publicly disclosing individual advertisers by name.  Compl. ¶¶ 142-43.

The SEC does not allege that Rindner participated in the negotiation of the put/call amendments

or the advertising deals, was aware of the allegedly improper nature of the accounting for the

relevant agreements, *cf.* Compl. ¶¶ 132, 135, knew the accounting principles at issue, or

communicated about the transaction with the investing public.

      6.    Telefonica

     The SEC alleges that in Fall 2000, AOL overpaid for Telefonica's provision of network

services to AOL's international affiliates in exchange for Telefonica's purchase of online

advertising from AOL.  Compl. ¶¶ 101-103.  Most of the revenue from the deal was recognized

in late 2000, and included in an SEC filing in March 2001.  Compl. ¶¶ 32, 106, 109.  The

Complaint alleges that Rindner was involved in structuring and documenting the deal.  Compl.

¶¶ 100, 104.  The SEC does not allege that Rindner communicated in any way about the

transaction with the public, was aware that revenue was being improperly recorded or reported,

or knew of the accounting principles at issue.

7.    WorldCom

The SEC alleges that on two occasions, in June and December 2001, WorldCom bought advertising from AOL in amounts that AOL owed WorldCom from accrued penalties in connection with unrelated agreements.  *See, e.g.*, Compl. ¶¶ 155-57.  Advertising revenue was first recognized and reported to the SEC in connection with WorldCom in mid-2001.  Compl. ¶¶ 32, 155, 156.  The Complaint alleges that for the June transaction, Rindner knew that WorldCom did not need the advertising it purchased, and that to recognize revenue in the second quarter of 2001, Rindner ran the advertising before a contract was executed.  Compl. ¶ 166.  For the December 2001 transaction, the Complaint alleges that Rindner participated in structuring the deal.  Compl. ¶ 173.  The Complaint does not allege that for either transaction Rindner communicated in any way with the investing public, or knew any of the accounting principles at issue.

**B.    Prior "Related" Proceedings**

In July 2002, the Washington Post published multiple articles questioning AOL's accounting in connection with certain of these transactions.  Compl. ¶ 185.  That same year, numerous class actions also attacking AOL's revenue decisions were consolidated before this Court.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1:02-md-01500-SWK (S.D.N.Y. Sept. 12, 2002) (order consolidating claims).  In 2005, based on the same fraudulent accounting scheme alleged in the Complaint, the Commission filed an action against Time Warner and an administrative proceeding against three high ranking executives.  *SEC v. Time Warner, Inc.*, No. 1:05-cv-00578-GK (D.D.C.); *In re Barge*, No. 3-11862 (SEC Mar. 21, 2005) (Order Imposing Cease-and-Desist).  The SEC's suit against Time Warner, the administrative proceedings against the executives, and the consolidated shareholder proceedings all settled more than 2 years ago.  *See SEC v. Time Warner, Inc.*, No. 1:05-cv-00578-GK (D.D.C. Mar. 29, 2005)

(final judgment); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1:02-md-01500-SWK (S.D.N.Y. Apr. 6, 2006).

## III.    STANDARD OF REVIEW

On a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiffs, and take the facts asserted therein as true.  Fed. R. Civ. P. 12(b)(6).  However, any claim that is not "plausible on its face" must be dismissed.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). A complaint also must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp.*, 127 S. Ct. at 1955. A court is not bound by a plaintiff's conclusory assertions or legal conclusions.  *See, e.g.*, *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006).

Because the SEC bases all of its claims for relief on the allegation that Defendants engaged in fraudulent conduct, *see* Compl. ¶¶ 1, 25, the SEC's allegations are subjected to the heightened pleading standard of Fed. R. Civ. P. 9(b) and must be stated with particularity.  "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *see also* Fed. R. Civ. P. 9(b).  That is true for the SEC's fraud claims (Counts 1, 2 and 3), as well as its claims for record-keeping violations (Counts 4 and 7), which are premised on the same alleged fraud.  *See SEC v. Power*, 525 F. Supp. 2d 415, 423-24 (S.D.N.Y. 2007).[5]  In a case like this one, where the

---

[5] *See also Patel*, No. 07-cv-39-SM, 2008 U.S. Dist. LEXIS 23553, at *42-43 (applying Rule 9(b)'s particularity requirement to SEC claims for aiding and abetting violations of Exchange Act sections 13(a), 13(b)(2)(A), 13(b)(2)(B) and Exchange Act Rules 12b-20, 13a-1, 13a-11, 13a-13).

SEC has conducted a lengthy investigation, courts apply Rule 9(b) rigorously.  *See SEC v. Parnes*, No. 01 Civ. 0763 (LLS)(THK), 2001 U.S. Dist. LEXIS 21722, at *14 (S.D.N.Y. Dec. 21, 2001); *SEC v. Tambone*, 417 F. Supp. 2d 127, 131 (D. Mass. 2006).

Under Rule 9(b), a Complaint must (1) specify the conduct that the plaintiff contends was fraudulent, (2) identify the actor, (3) state where and when the conduct took place, and (4) explain why the conduct was fraudulent.  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("This means the who, what, when, where, and how:  the first paragraph of any newspaper story.").  Where multiple defendants are alleged to have engaged in fraudulent conduct, "the complaint should inform *each* defendant of the nature of his alleged participation in the fraud."  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (emphasis added).  "Courts are especially vigilant in applying 9(b) where a complaint is made against multiple defendants."  *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 Civ. 3802 (SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998).

## IV.    ARGUMENT

### A.    The SEC's Claims For Primary Liability Under Section 17(a) Of The Securities Act, Section 10(b) Of The Exchange Act, And Rule 10b-5 (Counts 1 and 2) Must Be Dismissed.

Counts 1 and 2 allege that each Defendant is primarily liable for securities law violations under Section 17(a) of the Securities Act and Section 10(b), and parallel Rule 10b-5, of the Securities Exchange Act.  Compl. ¶¶ 197, 200.  Because the Complaint does not -- and cannot -- allege that Rindner actually made any misrepresentations to the investing public or engaged in any fraudulent conduct outside the unitary scheme alleged by the SEC, or acted with the requisite scienter, both Counts should be dismissed in their entirety.

     1.    <u>Counts 1 and 2 require the SEC to prove that Rindner actually made a</u>
            <u>material misrepresentation or omission to the investing public, and acted</u>
            <u>with scienter.</u>

To state a cause of action for a primary violation of Exchange Act Section 10(b) and Rule 10b-5, the SEC must prove that defendants "'(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.'" *PIMCO*, 341 F. Supp. 2d at 463-64 (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)). To establish a primary violation of Securities Act Section 17(a), the SEC must prove the same elements required for Section 10(b) except that "'no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3).'" *Id.* at 469. Accordingly, for both claims, an essential element in establishing a primary violation is that the defendant made a material misrepresentation or omission, or employed a deceptive device.

In this case, the Complaint identifies no alleged "fraudulent device," but instead rests its claims under Counts 1 and 2 on alleged public misrepresentations regarding AOL's financial results. *See, e.g.*, Compl. ¶ 38; s*ee also* Compl. ¶¶ 4, 6, 31, 32, 33, 35, 36, 42. Under that theory, to state a claim for a primary violation against Rindner, the SEC must allege that Rindner *actually made* a material misrepresentation to the investing public. *See KPMG*, 412 F. Supp. 2d at 378 ("Because the core misconduct alleged is in fact a misstatement, it would be improper to impose primary liability on [the defendant] by designating the alleged fraud a 'manipulative device' rather than a 'misstatement.'"). Anything short of actually making a false or misleading statement "is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger [primary] liability." *PIMCO*, 341 F. Supp. 2d at 466 (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (citations omitted)) (alteration in the original).

To sufficiently allege that Rindner actually made a material misrepresentation or omission to the investing public, the SEC must allege that he at least caused a misrepresentation to be made and knew, or had a reason to know, that the statement would be reported to investors. *See KPMG*, 412 F. Supp. 2d at 375. That burden requires more than merely knowing about and substantially contributing to a misrepresentation. *Id*.

> 2.    <u>The SEC has not sufficiently alleged that Rindner made a material misrepresentation or omission to the investing public.</u>

In its summary of the factual allegations, the SEC makes the conclusory statement that Rindner "substantially contributed to various public statements to investors" regarding the round-trip transactions. Compl. ¶ 36. In reviewing the allegations related to each transaction, however, the SEC at no time alleges that Rindner made any misrepresentations or omissions to the public. The Complaint alleges only that Rindner had some involvement in negotiating and structuring two of the transactions, and that he had some after-the-fact knowledge about, or limited involvement with, the other transactions:

- <u>Sun</u>: Rindner is not alleged to have had any involvement with the Sun transaction. Compl. ¶¶ 53-67.

- <u>Veritas</u>: The SEC mentions Rindner in just one of the 19 relevant paragraphs, Compl. ¶¶ 68-86, alleging that Rindner sent an email "reprimanding" an employee for a statement in an internal email after the transaction had concluded. Compl. ¶ 78.

- <u>HP</u>: Rindner again is mentioned in only one paragraph, as the SEC alleges that Rindner received an email questioning the substance of the deal after revenue already had been reported. Compl. ¶¶ 32, 93, 95-96.

- <u>Ticketmaster/Wembley</u>: Rindner is not mentioned in connection with Ticketmaster. For Wembley, Rindner again is mentioned only once, as the Complaint asserts that Rindner and others received emails criticizing the advertising for the Wembley deal after it was concluded and reported. Compl. ¶¶ 32, 148, 150, 154.

- <u>BAG</u>: Rindner is mentioned in only two of the 26 relevant paragraphs, one related to Defendants' internal discussion about "how much BAG advertising

revenue to recognize," and the other related to Defendants' tracking the recognition of BAG advertising revenue to remain below AOL's threshold for disclosing individual advertisers to the public.  Compl. ¶¶ 142-43.

- Telefonica:  The SEC alleges that Rindner (1) discussed the transaction in emails and instant messages with other AOL employees, Compl. ¶¶ 100, 101, 103, 107; (2) understood the nature of the transaction and that AOL had created its own ads for Telefonica, Compl. ¶¶ 104, 106, 110; (3) participated in negotiating the deal, Compl. ¶ 103; and (4) "instructed another employee not to speak to AOL's accounting department on the matter."  Compl. ¶ 105.

- WorldCom:  The Complaint alleges only that Rindner (1) "knew or was reckless in not knowing" about the nature of the transaction; Compl. ¶¶ 166, 173, 180; (2) discussed the WorldCom transaction with other AOL employees, Compl. ¶¶ 166, 169, 173; and (3) helped to structure and negotiate the transaction.  Compl. ¶¶ 166, 172, 174.

In connection with none of the transactions does the SEC contend that Rindner actually made a misrepresentation or omission to the investing public.  For most of the transactions, Rindner is hardly mentioned, and is alleged to have engaged only in internal AOL discussions.  For Telefonica and WorldCom, the Complaint alleges that Rindner participated in negotiating and structuring those transactions; although perhaps the Commission will argue that such conduct enabled others to make misrepresentations to the investing public about the Company's advertising revenues, enabling others to make misrepresentations simply cannot trigger primary liability under Sections 17(a) and 10(b).  *See KPMG*, 412 F. Supp. 2d at 373-75; *PIMCO*, 341 F. Supp. 2d at 466.[6]  Because there is no allegation that Rindner made a public misrepresentation, Counts 1 and 2 should be dismissed.

---

[6] The SEC may try to point to a single allegation in the opening paragraph, alleging that the defendants generally were responsible for false statements.  *See* Compl. ¶ 4 ("Kelly, Rindner, Ripp, and Wovsaniker were responsible for false statements regarding the Company's revenue, income, and results of operations . . . made to investors").  That conclusory allegation obviously is insufficient to satisfy the particularity requirement of Rule 9(b).  *See SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 484 (S.D.N.Y. 2007) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.").

3.      The SEC's general allegations that Rindner knowingly or recklessly took part in a scheme fail to state a claim for a primary violation of Section 10(b), Rule 10b-5, or Section 17(a).

The SEC's allegation that Rindner participated in a fraudulent scheme likewise cannot salvage its primary liability claims.  Section 10(b), as interpreted by Rule 10b-5, and Section 17(a) prohibit the use of "any device, scheme, or artifice to defraud" or making a misstatement of material fact.  15 U.S.C. § 77q(a), 78j(b); 17 C.F.R. § 240.10b-5(a).  When a claim is premised on participation in a scheme to make a public misstatement or omission, primary liability extends only to those who actually made the public statements.  *See PIMCO*, 341 F. Supp. 2d at 467 (distinguishing *SEC v. U.S. Envtl, Inc.*, 155 F.3d 107, 111 (2d Cir. 1998)); *see also Collins & Aikman Corp.*, 524 F. Supp. 2d at 486.  Participation in a scheme that enables others to make misrepresentations simply is not sufficient.  *See PIMCO*, 341 F. Supp. 2d at 467.[7]

In this case, the Complaint alleges one scheme:  that AOL falsely recognized and represented its revenue in connection with several advertising transactions.  *See* Compl. ¶¶ 1, 4, 6, 31-39, 42.  Although the Complaint alleges that Rindner participated in that scheme, it does not allege that he personally made any representations to the public.  Nor does it allege that Rindner committed fraudulent acts outside of the scheme that might create an independent basis for primary liability.  Absent some allegation that Rindner made a misrepresentation to the public, or committed a fraudulent act outside the scheme, the scheme liability allegation cannot save Counts 1 and 2.  *See PIMCO*, 341 F. Supp. 2d at 467.  They should be dismissed as to Rindner.

---

[7] That construction is logical.  If the SEC could state a claim for a primary violation simply by alleging that a defendant participated in a scheme to facilitate misrepresentations made by others, primary liability would swallow aiding and abetting liability under 15 U.S.C. § 78t(e) (2000).

14

    4.   <u>The Complaint has not sufficiently alleged that Rindner acted with the requisite scienter.</u>

Yet another reason compels dismissal of Count 2, the SEC's Section 10(b) and Rule 10b-5 primary liability claim: the SEC cannot establish the requisite scienter element.[8] "[T]he Second Circuit sets a higher standard for securities fraud and requires the SEC to 'allege facts giving rise to a strong inference of fraudulent intent.'" *Parnes*, No. 01 Civ. 0763 (LLS)(THK), 2001 U.S. Dist. LEXIS 21722, at *16 (internal quotations omitted); *accord In re AOL Time Warner*, 381 F. Supp. 2d at 217. Facts that support a strong inference of fraudulent intent must: (a) demonstrate that the defendant "had both motive and opportunity to commit fraud" or (b) "constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001) (citations omitted). The inference must be "more than merely 'reasonable' or 'permissible,'" but "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007); *SEC v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2008 U.S. Dist. LEXIS 36160, at *21-22 (S.D.N.Y. May 5, 2008) (cogent and compelling standard applies to Section 10(b) actions).

In this case, the SEC has not alleged facts creating a cogent and compelling inference that Rindner had the motive or opportunity to commit fraud, or acted with conscious misbehavior or recklessness.

    a.   The SEC has failed to allege facts creating a cogent and compelling inference of motive and opportunity to commit fraud.

The Complaint is bereft of allegations supporting a claim that Rindner possessed any motive and opportunity to commit fraud. To carry its burden, the SEC must identify a "concrete

---

[8] This also compels dismissal of Count 1, to the extent it is based on Section 17(a)(1).

and personal" benefit accruing to Rindner as a result of AOL's fraudulent accounting for the

transactions. *See Kalnit*, 264 F.3d at 139. Motives generally possessed by corporate officers and

directors, such as a desire to increase incentive compensation through corporate performance, are

inadequate. *See id.*; *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *In re Take-*

*Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 273 (S.D.N.Y. 2008).

Here, the SEC alleges generically that each defendant profited by receiving bonuses and

selling AOL stocks at inflated prices, "based on AOL's artificially inflated financial results."

*See* Compl. ¶¶ 191-94. Neither is a cognizable "concrete and personal benefit" sufficient to infer

motive.[9]

As this Court and others have recognized, "the desire to improve a company's earnings in

order to bolster one's income or bonus prospects" is a "'generalized' desire common to most

high-level corporate employees." *In re Take-Two Interactive*, 551 F. Supp. 2d at 295. As such,

it is an insufficient basis to establish scienter. *See Greene v. Hanover Direct, Inc.*, No. 06 Civ.

13308(NRB), 2007 WL 4224372, at *4 (S.D.N.Y. Nov.19, 2007) (finding "prospect of

maximizing [executives'] year-end bonuses" to be insufficient basis for allegation of scienter); *In*

*re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416 (S.D.N.Y. 2003).

Likewise "executive stock sales, standing alone, are insufficient to support a strong

inference of fraudulent intent." *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 221

(S.D.N.Y. 2008) (internal quotations omitted). Scienter only can be inferred when such sales are

"unusual" in timing and amount, and resulted in "concrete benefits." *See In re Scholastic Corp.*

---

[9] Although the SEC also alleges generically that the "scheme" was established to falsely inflate AOL's revenues, and thereby create an appearance that AOL had met its revenue targets, Compl. ¶ 25, the goal of meeting revenue targets is shared by corporate executives generally. It is not a "concrete and personal benefit," and cannot legitimately serve as a basis to allege scienter. *See Kalnit,* 264 F.3d at 139 ("Insufficient motives . . . can include . . . the desire for the corporation to appear profitable.").

*Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001); *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 269 (2d Cir. 1996). Here, the SEC adduces no facts to show when Rindner sold stocks, how much stock he sold, the proportion of stock sold, how much profit he made, the number of insiders selling stock, that the sales related in any way to the alleged accounting fraud, or any other fact that might support a claim that Rindner's alleged stock sales were "unusual." *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 75 (2d Cir. 2001); *380544 Can.*, 544 F. Supp. 2d at 221; *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 58 (E.D.N.Y 1998). Absent facts to suggest a strong inference that Rindner sought a "concrete and personal benefit," the SEC cannot show scienter through a motive and opportunity to commit fraud.

   b. The SEC has failed to allege facts creating a cogent and compelling inference of conscious misbehavior or recklessness.

  Nor does the SEC plead scienter by showing that Rindner engaged in conscious or reckless misbehavior in connection with AOL's alleged decision to recognize revenue in violation of accounting rules. Conscious misbehavior is "deliberate illegal behavior." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000); *Garber v. Legg Mason Inc.*, 537 F. Supp. 2d 597, 616 (S.D.N.Y. 2008). Recklessness is "conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care . . . to the extent the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Novak*, 216 F.3d at 308 (ellipsis in original) (citations omitted); *Garber*, 537 F. Supp. 2d at 616. Where motive is not apparent or sufficiently pled, as in this case, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142.

  Here, the SEC has patently failed to allege facts that create a cogent and compelling inference that Rindner engaged in knowingly illegal acts, or conduct that represented an extreme departure from the standards of ordinary care. For the Sun and Ticketmaster transactions, the

SEC alleges no facts related to Rindner.  For the Veritas, HP, and Wembley transactions, the SEC alleges no contemporaneous involvement by Rindner.  At most, the SEC alleges that Rindner received post-hoc notice of alleged flaws in certain aspects of those deals, but not that Rindner himself performed any acts in connection with the transactions.  *See Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994).  Accordingly, the SEC's allegations regarding these transactions provide no grounds to infer scienter or suggest liability of any kind, and should be dismissed as bases of liability under Count 2.

Although the SEC alleges that Rindner performed discrete acts in connection with the BAG, WorldCom, and Telefonica transactions, none of the facts alleged in connection with those deals permits a strong inference of conscious or reckless misconduct.  The SEC contends that the revenue for these transactions was improperly inflated in violation of GAAP.  Compl. ¶ 40.  Yet, at no time does the SEC suggest that Rindner understood the nature of the accounting treatment for these transactions, or any of the accounting rules that may have been at issue.  *See Lucent Techs., Inc.*, No. 04-2315 (WHW), 2005 U.S. Dist. LEXIS 41713, at *14-16 (dismissing primary liability claim under Section 10(b) where defendant was not alleged to have understood the accounting principles or played any role in the accounting decisions on the transactions at issue).  Nor does the SEC intimate that Rindner had any experience in or knowledge of accounting, such that he should have known of any improper recognition of revenue.  Likewise, the SEC proffers no facts to suggest that Rindner played a part in determining how revenue should be recognized and reported, or otherwise understood that revenue from the deals could not properly be recognized.

For BAG, Rindner's alleged role was limited to helping others track revenue after the deal was negotiated and executed, and its accounting determined.  Compl. ¶¶ 142-43.  The SEC

does not assert that Rindner knew of the deal structure, or of the alleged wrongful recognition of revenue that caused BAG to be an improper "round trip" transaction.  *See* Compl. ¶ 135.[10]

      For WorldCom, the SEC alleges that Rindner understood that AOL would pay a penalty to WorldCom equal in amount to WorldCom's advertising purchase.  Compl. ¶¶ 170, 172.  Similarly, for Telefonica, the Commission alleges that Rindner knew that the deal involved converting "forgone credits and rebates . . . into online advertising revenue."  Compl. ¶ 103.  But for neither transaction does the Commission at any point suggest that Rindner, a non-accountant, understood that such alleged structures could not appropriately yield revenue to AOL.  *See Shields*, 25 F.3d at 1129 (refusing to accept "pleading technique [of] . . . coupl[ing] a factual statement with a conclusory allegation of fraudulent intent").  To the contrary, for WorldCom, the SEC alleges that accounting personnel were involved in approving the deal structure.  *See* Compl.  ¶¶ 164, 175.  In Telefonica, the SEC likewise indicates that AOL reviewed the transaction and assessed how revenue from it should be recognized.  Compl. ¶ 109.  Such facts renders an inference that Rindner unwittingly contributed to alleged accounting irregularities in reliance upon AOL's accounting experts "at least as" cogent and compelling as an inference that he engaged in knowingly or recklessly illegal acts -- particularly given the absence of allegations that Rindner had accounting experience or knew that revenue might not be recognizable from the WorldCom or Telefonica deals.  *Tellabs*, 127 S. Ct. 2499 at 2510; *see Shields*, 25 F.3d at 1129; *Greene*, No. 06 Civ. 13308(NLB), 2007 WL 4224372, at *4 ("The facts alleged are entirely consistent with nothing more than the existence of accounting irregularities, which, standing alone, fail to state a securities fraud claim."); *Lucent Techs., Inc.*, No. 04-2315 (WHW), 2005

---

[10] Indeed, in its Fed. R. Civ. P. 26(a) initial disclosures, the SEC states that Rindner likely possesses discoverable information in connection with some transactions that the Commission may use to support its claims or defenses, but not BAG, strongly suggesting it is not seeking liability against him in connection with that transaction.

U.S. Dist. LEXIS 41713, at *14-16.[11]  Because the SEC has not adequately pled motive and

opportunity or conscious or reckless misconduct in connection with any of the transactions in the

Complaint, it has failed to plead scienter, and Count 2 should be dismissed.

> **B.    The SEC Has Failed To State Claims Upon Which Relief Can Be Granted In Connection Counts 3, 4, and 7.**

The SEC asserts that Rindner aided and abetted AOL's violations of Section 10(b) and

Rule 10b-5 (Count 3); violated Exchange Act Rule 13b2-1 (Count 4); and aided and abetted

violations of Exchange Act Section 13(a) and 13(b)(2)(A), and Exchange Act Rule 12b-20, 13a-

1, 13a-11, 13a-13, and 13b2-1 (Count 7).  None of those claims can survive Rule 12(b)(6).

> 1.    <u>Aiding and abetting under Section 10(b) and Rule 10b-5 (Count 3), and Exchange Act Sections 13(a) and 13(b)(2)(A) and Exchange Act Rules 13a-1, 13a-11, 13a-13, 12b-20, and 13b2-1 (Count 7)</u>

The SEC advances two aiding and abetting claims against Defendants.  In Count 3, the

SEC alleges that all defendants "knowingly or recklessly provided substantial assistance to AOL

in its violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5."  Compl. ¶

202.  In Count 7, the SEC alleges that all Defendants aided and abetted AOL's inaccurate

reporting of its advertising revenue, in violation of Exchange Act Sections 13(a) and

13(b)(2)(A), as well as Exchange Act Rules 13a-1, 13a-11, 13a-13, 12b-20, and 13b2-1.[12]

---

[11] Likewise, although the SEC alleges that Rindner was told that WorldCom did not want advertising, Compl. ¶ 170, the inference that Rindner believed such alleged statements constituted posturing for negotiation purposes is "at least as" cogent and compelling as an inference that Rindner somehow engaged in knowingly or recklessly improper acts.  *Tellabs*, 127 S. Ct. at 2510.  Likewise, although the SEC alleges that Rindner knew that AOL created the advertising for the Telefonica deal, and perhaps did so poorly, Compl. ¶ 106, it does not suggest that such actions were done without Telefonica's consent or that Telefonica complained about the advertising; the sole inference to be drawn from the allegation is that Telefonica and AOL wished to created advertisements rapidly.

[12] Compl. ¶ 213.  Section 13(a) requires each issuer of registered securities to file "such information and documents . . . as the Commission shall require to keep reasonably current the information and documents required to be included in or filed with an application or registration

Aiding and abetting claims under Sections 10(b) and 13 are subject to the same three-part test. *See SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 336 (S.D.N.Y. 2006). For both, the SEC must show: (1) a securities law violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) substantial assistance by the aider and abettor in perpetrating the primary violation. *Ross*, 904 F.2d at 824; *PIMCO*, 341 F. Supp. 2d at 467-68.

To prove knowledge, the SEC must show that the aider and abettor "knew of the wrong" of the primary violation. *See Ross*, 904 F.2d at 824; *see also SEC v. Jones*, No. 05 Civ. 7044 (RCC), 2006 U.S. Dist. LEXIS 22800, at *24 (S.D.N.Y. Apr. 25, 2006) *("Jones I")* (requiring a showing of "actual intent to defraud"). Where, as here, the defendant is not a fiduciary, there must also be actual intent to aid the primary violator's fraud. *Ross*, 904 F.2d at 824. Recklessness is insufficient. *See Cedric Kushner*, 417 F. Supp. 2d at 335; *KPMG*, 412 F. Supp. 2d at 378.[13] In advancing its claim, "the SEC must provide some 'factual basis for conclusory allegations of intent.'" *Jones I*, 2006 U.S. Dist. LEXIS 22800, at *24 (citation omitted).

In addition, "[t]he aider and abettor's substantial assistance must be a proximate cause of the primary violation." *SEC v. Treadway*, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006) (internal

statement . . . ." 15 U.S.C. § 78m(a) (2000). Rule 13a-1 implements Section 13(a) by requiring issuers to file annual reports. 17 C.F.R. § 240.13a-1 (2008). Rules 13a-11 and 13a-13 require quarterly reports 8-K and 10-Q, respectively. 17 C.F.R. §§ 240.13a-11, 240.13a-13 (2008). Rule 12b-20 requires issuers to include in its filing "such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading." 17 C.F.R. § 240.12b-20 (2008). Lastly, Rule 13b2-1 prohibits the direct or indirect falsification of "any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act." 17 C.F.R. § 240.13b2-1.

[13] The SEC alleged that all defendants "knowingly or recklessly provided substantial assistance to AOL in its violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5." Compl. ¶ 202. However, the alleged aider and abettor must have *actual knowledge* of the primary violation; recklessness will not suffice. *Ross*, 904 F.2d at 824; *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983).

citations omitted); *see also Edwards & Hanley v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478, 484 (2d Cir. 1979) (allegations of a "but for" causal relationship are insufficient). "[M]ere awareness and approval of the primary violation is insufficient to make out a claim for substantial assistance." *Treadway*, 430 F. Supp. 2d at 339. Accordingly, to satisfy Fed. R. Civ. P. 12(b)(6) on the aiding and abetting claims, the Complaint must include specific factual allegations that Rindner actually knew that each transaction was being accounted for improperly, that he intentionally aided that violation, and that his assistance was a proximate cause of the violation. *See Rombach*, 355 F.3d at 171; *Patel*, 2008 U.S. Dist. LEXIS 23553, at *38 (applying Rule 9(b)'s particularity requirement to aiding and abetting claims); *Power*, 525 F. Supp. 2d at 423-24.

The SEC has conclusively failed to make such allegations. The Complaint does not mention Rindner in connection with the Sun or Ticketmaster transactions and identifies no contemporaneous involvement regarding Veritas, HP, and Wembley. Absent some contemporaneous role in the deals, the SEC cannot plausibly establish, as it must, that Rindner knowingly or substantially contributed to AOL's alleged accounting fraud in connection with those four deals. *See Bell Atl. Corp.*, 127 S. Ct. at 1965 (allegations must be sufficient "to raise a right to relief above the speculative level"); *SEC v. Lyon*, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2008); *Patel*, 2008 U.S. Dist. LEXIS 23553, at *36-43 (dismissing aiding and abetting securities fraud and aiding and abetting books and records violations for failure to alleged affirmative conduct). None can serve as bases for aiding and abetting liability.

In addition, for the BAG, WorldCom and Telefonica deals, the SEC fails to allege that Rindner knew of and intentionally aided a primary violation. It suggests that others were contemporaneously aware of the allegedly improper nature of the underlying accounting for the

22

deals.  *See, e.g.*, Compl. ¶¶ 135, 141, 175.  It also alleges that for the WorldCom and Telefonica

deals -- but not BAG -- Rindner understood the structure of the transactions.  Compl. ¶¶ 102,

173.  But for none of the transactions does it plead that Rindner understood that the deals might

not properly yield recognizable revenue.  *See Shields*, 25 F.3d at 1129.  Absent allegations that

Rindner understood that the transactions could not produce recognizable revenue, the SEC

cannot establish that Rindner knew of and intentionally sought to contribute to any accounting

violations by others.  *See Lucent Techs., Inc.*, No. 04-2315 (WHW), 2005 U.S. Dist. LEXIS

41713, at *20-24 (dismissing counts for aiding and abetting securities fraud and reporting

violations because there were no allegations that defendant knew about accounting principles or

revenue recognition policies).  Because the SEC fails to allege that Rindner was aware of the

alleged primary violations regarding those transactions, and intentionally engaged in affirmative

wrongful conduct that substantially furthered the violations, the SEC cannot sustain its aiding

and abetting claims.  Counts 3 and 7 should be dismissed.

## 2.    Violation of Exchange Act Rule 13b2-1 (Count 4)

The SEC has alleged in Count 4 that Rindner "directly or indirectly[] falsified or caused

to be falsified books, records, and accounts of AOL subject to Section 13(b)(2)(A) of the

Exchange Act," and in doing so violated Exchange Act Rule 13b2-1. Compl. ¶¶ 203-04.[14]  The

gravamen of Count 4 is identical to the SEC's other claims: The SEC alleges that Rindner had a

hand in a number of round-trip transactions designed to facilitate the dissemination of inflated

---

[14] Section 13(b)(2)(A) provides that covered issuers are required to "make and keep
books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the
transactions and dispositions of the assets of the issuer . . . ." 15 U.S.C. § 78m(b)(2)(A).
Exchange Act Rule 13b2-1, promulgated pursuant to § 13(b)(2)(A), provides that "[n]o person
shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to
section 13(b)(2)(A) of the Securities Exchange Act."  17 C.F.R. § 240.13b2-1.

advertising revenue numbers through fraudulent public filings.  *See* Compl. ¶¶ 4, 203-04.  Because the claim is based on fraud, Rule 9(b)'s particularity requirement applies.

Foremost, the SEC completely fails to allege specifically what AOL books or records Rindner supposed falsified or caused to be falsified, as is required by Rule 9(b).  *See Patel*, 2008 U.S. Dist. LEXIS 23553, at *16-17.  For that reason alone, the SEC's 13b2-1 claim fails.[15]

Additionally, with respect to the Sun, Veritas, HP, BAG, Ticketmaster and Wembley transactions, the SEC has not alleged affirmative conduct by Rindner sufficient to formulate a claim for a primary violation of Rule 13b2-1 under Rule 12(b)(6), much less with the specificity required by Rule 9(b).  *See Power*, 525 F. Supp. 2d at 423-24 (regarding applicability of Rule 9(b)).  To satisfy its Rule 13b2-1 claim, the SEC must allege with specificity that Rindner directly or indirectly caused AOL's books and records to be falsified.  *See, e.g., Power*, 525 F. Supp. 2d at 420, 424; *SEC v. Thielbar*, No. Civ. 06-4253, 2007 U.S. Dist. LEXIS 72986, at *28-29 (D.S.D. Sept. 28, 2007); *SEC v. Dauplaise*, No. 6:05CV1391, 2006 WL 449175, at *8 (M.D. Fla. Feb. 22, 2006).  However, the SEC has not offered any allegation remotely suggesting that Rindner falsified or caused anyone else to falsify any of AOL's books and records in connection with the Sun, Veritas, HP, Ticketmaster, Wembley and BAG transactions.  At most, the SEC alleges that Rindner exchanged emails about or knew of the nature of those transactions -- far from an assertion that Rindner caused books or records to be falsified.  *See Nacchio*, 438 F. Supp. 2d at 1284 (allegation that defendant "knew of and failed to disclose" practice insufficient under Rule 13b2-1).  Absent such allegations, and given the SEC's failure to identify what books and records were falsified, Count 4 should be dismissed.

---

[15] Nor does the SEC allege that Rindner himself knew what books and records were falsified, or had any responsibility for maintaining books and records.  *See Cedric Kushner Promotions,* 417 F. Supp. 2d at 336-37; *SEC v. Berry*, No. C-07-04431 RMW, 2008 WL 2002537, *13 (N.D. Cal. May 7, 2008).

24

**C.      The Requests For Relief Should Be Stricken.**

      1.      <u>The Statute of Limitations Requires Exclusion of All, or Nearly All, of the Transactions As Bases for Relief</u>.

In addition to their other flaws, all or nearly all of the transactions in the SEC's Complaint against Rindner fall outside the applicable limitations period.  Unless otherwise provided by Congress, 28 U.S.C. § 2462 imposes a five-year window on enforcement proceedings seeking "any civil fine, penalty, or forfeiture, pecuniary or otherwise . . . ."  28 U.S.C. § 2462.  Congress has not legislated statutes of limitation applicable to SEC enforcement actions; therefore, those actions are governed by Section 2462's five-year limitations period.  *See Jones II*, 476 F. Supp. 2d at 380.

      a.      The five-year statute of limitations bars transactions that took place before October 8, 2001.

The SEC contends that Rindner and the SEC entered into agreements that tolled the statute of limitations from December 20, 2005 through July 31, 2007.  Compl. ¶ 188.  Assuming that assertion is credited,[16] the five-year limitations period of 28 U.S.C. § 2462 extends to acts that took place on or after October 8, 2001.

---

[16] If that assertion is not credited, then all of the transactions are untimely.  To that end, Rindner joins the arguments of Defendants Kelly, Ripp, and Wovsaniker that the tolling agreements in fact only limited the filing of the Complaint during the tolling period.  Similar to the other Defendants, Mr. Rindner's tolling agreement provides:

> Steven E. Rindner and any of his agents or attorneys will not assert that the Commission's failure to commence the proceeding or any related proceedings during the tolling period gives him any grounds for (a) asserting any statute of limitations as a defense to the proceeding or any related proceedings, or any sanctions or relief to be imposed therein, or (b) raising in any way any statute of limitations or any failure to commence the proceeding or any related proceedings during the tolling period as a defense to the proceeding or any related proceedings or to reduce any sanctions or relief to be imposed therein . . . .

In assessing the timeliness of the transactions as bases of liability, a limitations period begins to run when the SEC "could first have successfully maintained a suit based on that cause of action." *King*, 785 F.2d at 33 (internal quotations omitted); *see Jones II*, 476 F. Supp. 2d at 381 (under § 2462, the SEC's "claim accrued when the factual and legal prerequisites for filing suit were in place"). As courts in this district and elsewhere have overwhelmingly recognized, the discovery rule does not apply. *See Jones II*, 476 F. Supp. 2d at 381 ("'discovery of violation' rule does not apply to cases governed by § 2462"); *see also United States v. Ancorp Nat'l Servs., Inc.*, 516 F.2d 198, 201 n.5 (2d Cir. 1975).[17]

The legal and factual prerequisites for a cause of action for securities fraud or a reporting violation are in place when a misrepresentation or material omission is made in a public filing with the Commission, if not earlier. *See, e.g., In re Ames Dep't Stores, Inc. Stock Litig.*, 991 F.2d 953, 962 (2d Cir. 1993); *Hall v. Children's Place Retail Stores, Inc.*, No. 07 Civ. 8252(SAS), 2008 WL 2791526, at *9 (S.D.N.Y. July 18, 2008); *SEC v. Caserta*, 75 F. Supp. 2d 79, 90-91 (E.D.N.Y. 1999); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 861-62 (S.D.N.Y. 1997).[18] Similarly,

---

Exhibit 1 to Declaration of Jonathan C. Drimmer; *see Collins & Aikman Corp.*, 524 F. Supp. 2d at 483 (In considering a motion to dismiss, a court may consider documents attached to or incorporated by reference to the complaint and documents possessed by or known to the plaintiff.). According to the plain language of the agreement, Rindner agreed to forgo his right to raise the statute of limitations defense during the time period specified in the agreement. Because the tolling agreement expired on July 31, 2007, it is no longer relevant. As revenue for all of the transactions identified in the Complaint was recognized and reported by early 2002, all of the SEC's claims against Rindner expired in early 2007.

[17] *See also Trawinski v. United Techs.,* 313 F.3d 1295, 1298 (11th Cir. 2002); *FEC v. Williams,* 104 F.3d 237, 240 (9th Cir. 1996); *3M Co. (Minnesota Mining & Manufacturing) v. Browner,* 17 F.3d 1453, 1460-63 (D.C. Cir. 1994); *United States v. Core Labs. Inc.,* 759 F.2d 480, 482-84 (5th Cir. 1985); *United States v. Witherspoon,* 211 F.2d 858, 862 (6th Cir.1954); *SEC v. Scrushy,* No. CV-03-J-615S, 2005 WL 3279894, at *2-3 (N.D. Ala. Nov. 29, 2005); *United States v. Maillard,* 26 F. Cas. 1140, 1143 (S.D.N.Y. 1871).

[18] *See infra* Sections A(1) (the elements of a claim under Exchange Act Section 10(b) and Rule 10b-5 are a material misrepresentation or a material omission, made with scienter, in

a plaintiff can maintain a claim for record-keeping violations when internal accounts or records are not kept in accordance with GAAP.  *See id.* at 866.

In this case, the SEC's record-keeping cause of action (Count 4) is premised on AOL's improperly recording revenue for the transactions at issue, and its causes of action for misrepresentations and false reports (Counts 1, 2, 3 and 7) are based on AOL's including that revenue in SEC filings and other public statements.  Compl. ¶¶ 31-33, 35-36.  Yet for nearly every transaction identified in the Complaint, revenue was recognized and reported well before October 2001.

In the third-quarter of 2000, AOL allegedly improperly recognized revenue for the Sun Ticketmaster, and Wembley transactions; AOL reported that revenue in an SEC filing on November 9, 2000.  Likewise, revenue for the Veritas and HP transactions was recognized in the fourth quarter of 2000 and reported in an SEC filing on March 27, 2001.  Compl. ¶¶ 32, 77, 85, 95-96.  For the March BAG amendment, AOL first recognized revenue in the first and second quarters of 2001, and reported that revenue in a May 15, 2001 SEC filing.  Compl. ¶¶ 32, 137, 142.  Although it is unclear whether the SEC is seeking liability against Rindner based on those transactions -- the Complaint barely mentions Rindner in connection with the deals -- the SEC does appear to be seeking relief against Rindner based on his alleged involvement with Telefonica and WorldCom.

Yet revenue for Telefonica was first recognized by AOL in the fourth quarter of 2000 and reported in an SEC filing on March 27, 2001.  Compl. ¶¶ 32, 106, 109.  AOL first recognized

---

connection with the purchase or sale of securities; elements under Securities Act 17(a) are the same, except the scienter requirement is relaxed); B(1) (elements of aiding and abetting claim are a primary securities law violation, knowledge of that violation by the aider and abettor, and substantial assistance by the aider and abettor in perpetrating the primary violation); B(2) (directly or indirectly causing books and records to be falsified).

allegedly improper revenue for the June WorldCom transaction in the second quarter of 2001, and reported that revenue an SEC filing in August 2001.  Compl. ¶¶ 32, 155, 166.  As revenue for all of these deals was recognized and reported to the SEC well before October 2001, and Rindner himself certainly committed no acts in connection with these deals after that date, the "legal and factual prerequisites for filing suit" indisputably were in place outside the limitations period.  *See Jones II*, 476 F. Supp. 2d at 381.

Nor is the SEC's failure to bring an action based on these transactions in a timely manner remotely comprehensible.  In March 2005, more than 3 years ago, it filed and settled its Complaint against the Company and an administrative action against three senior executives based on the same alleged "scheme" listed in the Complaint.  *See SEC v. Time Warner, Inc.*, No. 1:05-cv-00578-GK (D.D.C. Mar. 29, 2005) (final judgment); *In re Barge*, No. 3-11862 (SEC Mar. 21, 2005) (Order Imposing Cease-and-Desist).  More than 5 years ago, a score of class actions against AOL Time Warner were consolidated before this Court, which the SEC contends are related to this action.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, MDL Docket No. 1500; *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d at 217.  Those cases also settled years ago.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1:02-md-01500-SWK, (S.D.N.Y. Apr. 6, 2006).  The SEC does not, and cannot, proffer a plausible justification for its extraordinary tardiness in this action.  The SEC elected to sit on its hands rather than pursue this case with any modicum of vigor, and its inexcusable neglect precludes most of the transactions from serving as bases of relief against Rindner.

   b.  The SEC fails to plead fraudulent concealment against Rindner.

Seeking to overcome its remarkable lack of diligence in bringing this case, the SEC no doubt wishes to equitably toll the limitations period by alleging fraudulent concealment.  *See* Comp. ¶ 184.  Its effort is for naught.

Equitable tolling is available only in "rare and exceptional circumstance[s]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (citation omitted).  To demonstrate fraudulent concealment, the SEC must allege that (1) the defendant concealed the existence of the cause of action; (2) the concealment prevented the SEC from discovering the alleged wrongdoing within the limitations period; and (3) due diligence in pursuing the discovery of the claim.  *See In re Merrill Lynch Ltd. P'shps Litig.*, 154 F.3d at 60; *Jones II*, 476 F. Supp. 2d at 382.  The burden of establishing fraudulent concealment rests with the SEC.  *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).  Pleadings of fraudulent concealment are subject to the particularity requirements of Rule 9(b).  *Jones I*, 2006 U.S. Dist. LEXIS 22800, at *17.  Allegations must be individualized by defendant; group allegations of fraudulent concealment are inadequate, and allegations against one defendant cannot be imputed to others.  *See In re The Mediators, Inc.,* 190 B.R. 515, 525 (S.D.N.Y. 1995), *aff'd*, 105 F.3d 822 (2d Cir. 1997).  Likewise, allegations that a non-party committed the fraudulently concealing acts are insufficient.  *See id.*

Here, the SEC does not even attempt to suggest that it has met the third prong of the fraudulent concealment test -- that the SEC diligently pursued its claims.  Indeed, such a concession is wholly appropriate, given the SEC's inconceivable delay in bringing this action.  By itself, that defeats the Commission's fraudulent concealment claim.  *In re Merrill Lynch*, 154 F.3d at 60 (rejecting fraudulent concealment claim where plaintiffs failed to allege "that they exercised due diligence; they make no allegation of any specific inquiries of [defendant], let alone detail when such inquiries were made, to whom, regarding what, and with what response"); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 529 (S.D.N.Y. 2007) (rejecting fraudulent concealment claim where no due diligence was alleged); *In re Merrill Lynch Ltd. P'ships Litig.,* 7 F. Supp. 2d 256, 264 (S.D.N.Y. 1997) ("plaintiffs must demonstrate

reasonable diligence even if defendants engaged in active concealment"), *aff'd,* 154 F.3d 56 (2d Cir. 1998).

The SEC also fails to proffer adequate allegations regarding the first two prongs of the fraudulent concealment test -- that Rindner intentionally sought to conceal from the SEC the alleged violations, and that his conduct prevented the SEC from discovering any wrongdoing. The SEC's only pertinent allegations are the vague assertions that Rindner instructed AOL employees to "delete or omit any cross-references to the transactions," Compl. ¶ 184, and instructed a subordinate not to speak to AOL's internal accounting personnel about the transaction. *Id.*[19]

The SEC does not explicitly identify the transactions it is referencing with these allegations, despite the particularity requirements of Rule 9(b) -- yet another fatal flaw in its fraudulent concealment claim. Notwithstanding that deficiency, in attempting to deduce the SEC's meaning from the rest of the Complaint, the only plausible transaction to which it might be referring is Telefonica. *See* Compl. ¶¶ 104, 105.[20] As the SEC makes no allegations of concealment by Rindner that possibly could be applicable to the June WorldCom or any other transaction that took place before October 2001, its general fraudulent concealment assertions can do nothing for those expired transactions.

---

[19] Although the SEC also includes the opaque statement that all of the defendants concealed the true nature of the transactions at issue through improper structuring and accounting, Compl. ¶ 184, such a general assertion is insufficiently specific under Rule 9(b). Likewise, although the SEC makes allegations of fraudulent concealment regarding the conduct of other defendants and the Company, those allegations cannot be imputed to Rindner. *See In re The Mediators,* 190 B.R. at 525.

[20] Certainly, Telefonica is the only transaction occurring before October 2001 to which the allegations could plausibly be connected to the SEC's general allegations.

Even regarding Telefonica, however, the SEC includes no allegations, as it must, that Rindner intentionally sought to delay the discovery of any fraud. *See Halbrecht v. Prudential-Bache Prop., Inc.,* No. H-90-799(JAC), 1992 WL 336757, at *6 (D. Conn. July 25, 1991) ("the fraudulent intent of inducing a delay") (citation omitted). Nor does it assert that Rindner's alleged conduct concealed anything from the Commission, or even could have done so. To the contrary, the allegations focus on wholly internal reporting matters. Those internal matters could not have hidden anything from the public or the SEC, and the SEC thus rightly does not suggest that Rindner's acts prevented the SEC from unearthing its claim had it acted with any sort of diligence. Absent allegations that Rindner sought to and did conceal a fraud, or that the SEC acted diligently, the SEC's fraudulent concealment allegation fails.

> c.     No civil fines, a permanent officer and director bar, or a permanent injunction can be levied against Rindner based on acts occurring before October 2001.

Given the untimely nature of the Complaint, and the lack of fraudulent concealment by Rindner, the SEC is precluded from obtaining a civil fine, permanent injunction, or permanent director or officer bar against Rindner based on any act by Rindner that took place before October 8, 2001. By its terms, Section 2462 encompasses civil penalties. *See Jones II*, 476 F. Supp. 2d at 383. However, it also can cover equitable relief that is punitive in nature, including, in appropriate cases, permanent injunctions and officer and director bars. *See id.*; *SEC v. DiBella*, 409 F. Supp. 2d 122, 128 & n.3 (D. Conn. 2006); *see also Johnson v. SEC*, 87 F.3d 484, 488 (D.C. Cir. 1996); *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978). In determining whether equitable relief is punitive, and thus subject to Section 2462, a court "looks to the likelihood of recurrence of violations and the possible collateral consequences" of the relief sought. *Jones II*, 476 F. Supp. 2d at 383. Both factors demonstrate

31

that the SEC's requests for an injunction and officer and director bar against Rindner are punitive in nature.

To establish recurrence, the SEC must do more than merely allege that Rindner is likely to commit future violations of the securities laws. *See SEC v. Patel*, 61 F.3d 137, 141-42 (2d Cir. 1995) (statement that defendant "used his position . . . to engage in misconduct. . . . can in no way justify the prediction that future misconduct will occur"); *Commonwealth Chem. Sec., Inc.*, 574 F.2d at 100 ("'The Commission cannot obtain relief without positive proof of a reasonable likelihood that past wrong-doing will recur.'" (alteration in original) (citation omitted)). However, in its Complaint, the Commission simply repeats a mantra that, "unless restrained," Rindner "will continue to" violate the law. Compl. ¶¶ 197, 200, 202, 204, 214. Indeed, the SEC cannot realistically allege facts to support a likelihood of recurrence, given that the conduct at issue in this case took place seven years ago and no improprieties have been alleged against Rindner in the interim. *See Proffitt v. FDIC*, 200 F.3d 855, 862 (D.C. Cir. 2000) (injunction punitive where "based . . . solely on . . . long past conduct" six years prior, and not "present fitness or competence"); *Jones II*, 476 F. Supp. 2d at 384; *see also SEC v. Posner*, 16 F.3d 520, 521-22 (2d Cir. 1994); *SEC v. Drexel Burnham Lambert, Inc.*, 837 F. Supp. 587, 611 (S.D.N.Y. 1993). Nor has the SEC acted with the slightest hint of expeditiousness in this matter, hesitating for years to bring this matter, effectively eliminating any possible claim that it is acting to protect the public from future harms. *Cf. Coghlan v. NTSB*, 470 F.3d 1300, 1307 n.6 (11th Cir. 2006).

Likewise, the collateral consequences of a bar or an injunction are manifestly harsh. Both would "stigmatize [Rindner] . . . and significantly impair [his] ability to pursue a career." *Jones II*, 476 F. Supp. 2d at 385; *see Commonwealth Chem. Sec., Inc.*, 574 F.2d at 99. Given the severity of the relief, the lengthy time lapse since the alleged violations, and the SEC's failure to

allege any facts to support a claim that Rindner is likely to commit future violations, the SEC's request for an injunction and bar must be deemed punitive.  Thus, neither request for relief can be premised on acts by Rindner occurring before October 8, 2001.

                2.    <u>The SEC Fails to State Its Request for Relief on Disgorgement With Particularity.</u>

In its prayer for relief, the SEC requests that Rindner "disgorge ill-gotten gains . . . resulting from the violations alleged in this Complaint."  Compl. ¶ 55.  This request, like the Commission's substantive claims, is premised on Rindner's alleged fraudulent conduct.  It is also subject, therefore, to Rule 9(b)'s heightened pleading standard.  *See Rombach*, 355 F.3d at 171.  Yet the only allegation the SEC makes in support of disgorgement is the conclusory assertion that Rindner sold stock and earned bonuses.  Compl. ¶ 192.  This allegation does not satisfy Rule 9(b)'s particularity requirements, because it fails to identify the specific stock transactions and bonuses in question, let alone provide any detail connecting them to the alleged fraud.  Accordingly, the Court should strike the SEC's request for disgorgement as to Rindner.  *See* Fed. R. Civ. P. 12(f).

## CONCLUSION

For the forgoing reasons, Rindner respectfully requests that the SEC's Complaint be dismissed against him.

Respectfully submitted,

s/ Jonathan C. Drimmer

Mark J. Hulkower
Jonathan C. Drimmer
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Attorneys for Defendant
Steven E. Rindner

September 5, 2008