Stephen G. Topetzes (ST-4145) (admitted pro hac vice)
Erin Ardale Koeppel (EK-3460) (admitted pro hac vice)
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C.  20006
(202) 778-9000
stephen.topetzes@klgates.com
erin.koeppel@klgates.com

Attorneys for Defendant Mark Wovsaniker

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | 08 Civ. 4612-SWK |
| | : | ECF Case |
| **JOHN MICHAEL KELLY, STEVEN E. RINDNER, JOSEPH A. RIPP, and MARK WOVSANIKER,** | : | |
| | : | |
| **Defendants.** | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**MARK WOVSANIKER'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 5

      A.    The SEC's Investigation ......................................................... 5

      B.    The Parties ............................................................................. 6

      C.    The SEC's Allegations ........................................................... 7

III.  ARGUMENT ............................................................................................ 8

      A.    Legal Standard of Motion to Dismiss ................................... 8

            1.    The "Flexible Plausibility Standard" .......................... 8

            2.    The Heightened Pleading Requirements of Rule 9(b) ........... 9

      B.    Counts I and II of the Complaint Asserting Violations of Section 17(a) of
            the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5
            Fail to State a Claim Against Mark Wovsaniker ............................................. 11

            1.    The Complaint Fails to Raise a "Strong Inference of Fraudulent
                  Intent" Against Mr. Wovsaniker ......................................... 12

            2.    The SEC has Failed to Plead Securities Fraud with Particularity
                  Against Mr. Wovsaniker with Respect to Any Transaction ............... 16

      C.    Counts IV, V and VI of the Complaint Asserting Violations of Section
            13(b)(5) and Rules 13b2-1 and 13b2-2 of the Exchange Act Fail to State a
            Claim Against Mark Wovsaniker ................................................................... 23

      D.    Counts III and VII of the Complaint Asserting Aiding and Abetting
            Violations of Sections 10(b), 13(a), and 13(b)(2)(A) and Rules 10b-5, 12b-
            20, 13a-1, 13a-11, 13a-13, and 13b2-1 of the Exchange Act Fail to State a
            Claim Against Mark Wovsaniker. .................................................................... 24

      E.    THE SEC'S CLAIMS ARE TIME BARRED UNDER THE
            APPLICABLE STATUTE OF LIMITATIONS. ........................................... 26

            1.    The SEC's Requests for Relief are Subject to the Five-Year
                  Limitations Period of 28 U.S.C. § 2462 ............................ 26

            2.    The Statute of Limitations Time Period Begins on the Date of the
                  Violation and Expires Five Years From that Date .......................... 28

            3.    The SEC Does Not State a Claim for Fraudulent Concealment ......... 29

**4.    The Tolling Agreement Affected Only Mr. Wovsaniker's Ability to Assert the Statute of Limitations Defense and Did Not Suspend the Limitations Period** .......................................................................... 35

**IV.    CONCLUSION** ............................................................................................. 37

# TABLE OF AUTHORITIES

## FEDERAL CASES

*3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) ........................................... 28

*131 Main Street Associates v. Manko*, 179 F. Supp. 2d 339 (S.D.N.Y.) .......................... 31

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litigation*, 381 F. Supp. 2d 192
    (S.D.N.Y. 2004) ..................................................................................... 15

*ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................. *passim*

*Acito v. Imcera Group, Inc.*, 47 F.3d 47 (2d Cir. 1995)................................. 13, 14

*In re Adelphia Comm'cns Corp. Sec. & Derivative Litigation*, 2005 U.S. Dist.
    LEXIS 10349 (S.D.N.Y. May 31, 2005)........................................................ 34

*In re Alstom SA Sec. Litigation*, 406 F. Supp. 2d 402 (S.D.N.Y. 2005) .......................... 32

*Banushi v. City of New York*, 2006 U.S. Dist. LEXIS 70414 (E.D.N.Y. Sept. 28,
    2006) ................................................................................................. 33

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................. 8, 19

*Bendik v. Credit Suisse First Boston*, 2004 U.S. Dist. LEXIS 5750 (S.D.N.Y.
    Apr. 5, 2004) ....................................................................................... 36

*In re Blech Sec. Litigation*, 928 F. Supp. 1279 (S.D.N.Y. 1996)........................................ 9

*Boos v. Runyon*, 201 F.3d 178 (2d Cir. 2000)..................................................... 29

*In re Bristol-Myers Squibb Sec. Litigation*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) 13, 15, 25

*Butala v. Agashiwala*, 916 F. Supp. 314 (S.D.N.Y. 1996)................................................ 29

*Camico Mutual Insurance Co. v. Citizens Bank*, 2006 U.S. Dist. LEXIS 27295
    (N.D. Ill. Apr. 12, 2006)........................................................................... 36

*Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996)................................................ 13

*Conduit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004)................................................ 32

*De la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003) ............... 29

*DiVittorio v. Equidyne Extractive Industrial, Inc.*, 822 F.2d 1242 (2d Cir. 1987) .......... 11

*Edwards & Hanley v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478 (2d Cir. 1979) ........................................................................................................ 25

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ............................................ 17

*Ganino v. Citizens Utility Co.*, 228 F.3d 154 (2d Cir. 2000) ............................ 12

*Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litigation)*, 252 F.3d 63 (2d Cir. 2001) ............................................................................................... 13

*In re Intelligroup Securities Litigation.*, 527 F. Supp. 2d 262 (D.N.J. 2007) ................... 32

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ...................................................... 8

*In re Issuer Plaintiff IPO Antitrust Litigation*, No. 00 Civ. 7084, 2004 U.S. Dist. LEXIS 3892 (S.D.N.Y. Mar. 12, 2004) ........................................................ 29

*ITT v. Comfield*, 619 F.2d 909 (2d Cir. 1980) ................................................... 25

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ................................................. 12

*Klein v. Bower*, 421 F.2d 338 (2d Cir. 1970) ................................................... 34

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ................................. 3

*Levy v. Southbrook International Investments, Ltd.*, 263 F.3d 10 (2d Cir. 2001) ............. 36

*Liberty Mutual Insurance Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384 (2d Cir. 1992) ..................................................................................................... 3

*Litle v. Arab Bank, PLC*, 507 F. Supp. 2d 267 (E.D.N.Y. 2007) ...................... 33

*Long v. Abbott Mortgage Corp.*, 459 F. Supp. 108 (D. Conn. 1978) ................. 30

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ............................ 9

*New York v. Niagara Mohawk Power Corp.*, 263 F. Supp. 2d 650 (W.D.N.Y. 2003) .......................................................................................................... 29

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) .......................... 8

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ...................................... *passim*

*Proffitt v. FDIC*, 200 F.3d 855 (D.C. Cir. 2000) ............................................... 27

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ................................................................. 9

*Roth v. Metal Management, Inc.*, 489 F.3d 499 (2d Cir. 2007) ......................................... 32

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)......................................................... 10, 14

*SEC v. Alexander*, 160 F. Supp. 2d 642 (S.D.N.Y. 2001) ................................................. 9

*SEC v. Caserta*, 75 F. Supp. 2d 79 (E.D.N.Y. 1999) .................................................. 28, 29

*SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326 (S.D.N.Y. 2006)........... 25

*SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477 (S.D.N.Y. 2007)................... *passim*

*SEC v. Commonwealth Chemical Sec., Inc.*, 574 F.2d 90 (2d Cir. 1978)........................ 27

*SEC v. Dauplaise*, 2006 WL 449175 (M.D. Fla. Feb. 22, 2006) ..................................... 23

*SEC v. DiBella*, 409 F. Supp. 2d 122 (D. Conn. 2006)..................................................... 27

*SEC v. DiBella*, Civil No. 3:04 CV 1342, 2005 U.S. Dist. LEXIS 31762 (D.
    Conn. Nov. 29, 2005) ................................................................................................... 16

*SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993)..................... 27

*SEC v. Fisher*, 2008 U.S. Dist. LEXIS 38738 (N.D. Ill. May 13, 2008) ..................... 9, 31

*SEC v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007)................................................ *passim*

*SEC v. Jones*, 2006 U.S. Dist. LEXIS 22800 (S.D.N.Y. Apr. 25, 2006) .................... 28, 29

*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006)............................................. 25

*SEC v. Lorin*, 869 F. Supp. 1117 (S.D.N.Y. 1994) ......................................................... 27

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998) ................................................................. 15

*SEC v. Miller*, 2006 U.S. Dist. LEXIS 56413 (N.D. Ga. July 31, 2006) ........................ 33

*SEC v. Morris, No.*, 2005 WL 2000665 (S.D. Tex. Aug. 18, 2005) ................................ 17

*SEC v. Northshore Asset Management*, 2008 U.S. Dist. LEXIS 36160 (S.D.N.Y.
    May 5, 2008) ............................................................................................................... 12

*SEC v. Parnes*, 2001 U.S. Dist. LEXIS 21722 (S.D.N.Y. Dec. 26, 2001).............. 9, 10, 12

*SEC v. Posner*, 16 F.3d 520 (2d Cir. 1994)........................................................................ 27

*SEC v. Price Waterhouse*, 797 F. Supp. 1217 (S.D.N.Y. 1992) ................................. 11, 15

*SEC v. Scrushy*, 2005 U.S. Dist. LEXIS 30553 (N.D. Ala. Nov. 29, 2005) ..................... 28

*SEC v. Treadway*, 430 F. Supp. 2d 293 (S.D.N.Y. 2006) ................................................. 13

*SEC v. U.S. Environmental, Inc.*, 82 F. Supp. 2d 237 (S.D.N.Y. 2000) ................... 10, 19

*SEC v. Yuen*, 221 F.R.D. 631 (C.D. Cal. 2004) ................................................................ 10

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)........................................................................... 8

*Serebian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357 (1st Cir. 1994) ........................... 18

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994)................................ 13, 17

*In re Sotheby's Holdings, Inc. Sec. Litig.*, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ............................................................................................................................... 15

*In re Take-Two Interactive Sec. Litigation*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008).......... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ............................. 12

*In re The Mediators, Inc.*, 190 B.R. 515 (S.D.N.Y. 1995)................................................. 29

*Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23 (2d Cir. 2002) .............................. 33

*In re Time Warner Inc. Sec. Litigation*, 9 F.3d 259 (2d Cir. 1993).................................. 14

*United States v. International Brotherhood of Teamsters*, 970 F.2d 1132 (2d Cir. 1992) ............................................................................................................................... 36

*United States v. Timmons Corp.*, 2006 U.S. Dist. LEXIS 7642 (N.D.N.Y. Feb. 8, 2006) ............................................................................................................................... 36

*Universal Express, Inc. v. SEC*, 177 Fed. Appx. 52 (11th Cir. 2006)................................ 3

*In re Zyprexa Prod. Liability Litigation*, 2008 U.S. Dist. LEXIS 35162 (E.D.N.Y. Apr. 30, 2008) ................................................................................................................. 3

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 9(b)...................................................................................................*passim*

vi

Fed. R. Civ. P. 12(b)(6) ..............................................................................*passim*

Fed. R. Evid. 201(b) ....................................................................................... 32

28 U.S.C. § 2462 ................................................................................... 26, 27, 28

**OTHER**

Procedures Relating to the Commencement of Enforcement Proceedings and
    Termination of Staff Investigations, Sec. Act Rel. No. 33-5310 (Sept. 27,
    1972) ...................................................................................................... 6

Defendant Mark Wovsaniker respectfully submits this memorandum of law in support of his motion to dismiss the Complaint filed by the U.S. Securities and Exchange Commission ("SEC" or the "Commission") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

## I.    PRELIMINARY STATEMENT

The SEC's Complaint against Mr. Wovsaniker is defective in several key respects. Significantly, the SEC has failed to allege properly, and with sufficient particularity, facts that – *even assuming they could be proven at trial* – would establish the asserted violations of the federal securities laws and support the requested relief. Rather, in certain critical areas, the SEC improperly seeks to proceed based upon only broad-brush and conclusory allegations that Mr. Wovsaniker "knowingly or recklessly" "engineered," "oversaw," or "executed" a "scheme to artificially and materially inflate" the online advertising revenue of America Online, Inc. and AOL Time Warner, Inc. (collectively, "AOL" or the "Company").[2] The Court should not countenance this inadequate effort by the SEC.

The paucity of detailed factual allegations by the SEC concerning misconduct by Mr. Wovsaniker is particularly inappropriate, legally insufficient and unfair for two reasons. First, this case arises against the backdrop of many years of investigation and numerous related civil and criminal proceedings commenced by the SEC or the U.S. Department of Justice ("DOJ") against the Company, certain of its present or former personnel, various other companies that purchased online advertising from AOL, and officers, directors or employees of those other companies. AOL announced the restatement of revenue associated with many of the transactions

---

[1]    Mr. Wovsaniker adopts by reference the arguments advanced by the other Defendants, as applicable.

[2]    Time Warner Inc. is the successor to AOL Time Warner, Inc.

identified in the Complaint in 2002. Following a thorough governmental investigation, the Company settled charges brought by the SEC and reached a related agreement with the DOJ concerning the accounting irregularities alleged in the Complaint in early 2005.

Beginning in January 2005, the SEC and DOJ also began instituting civil or criminal proceedings related to these matters against persons presently or formerly associated with AOL. Certain of these persons determined to reach settlements with the SEC respecting matters growing out of the underlying investigation. Other former AOL employees elected to litigate against the SEC or DOJ. Following jury trials in those related criminal and civil cases, each of these former AOL employees was acquitted of all criminal charges and found not to have violated the federal securities laws.[3]

Mr. Wovsaniker was identified by the SEC or DOJ as a witness in nearly all of the related criminal or civil cases brought against AOL personnel or employees of other companies that did business with AOL. He testified on numerous occasions at the request of the federal government. During those related trials, the SEC or DOJ elicited testimony from Mr. Wovsaniker and other witnesses demonstrating that Mr. Wovsaniker was "gamed" or circumvented by other persons at AOL; that he was given selective or incomplete descriptions of contemplated transactions; that Mr. Wovsaniker expressly counseled AOL personnel against entering into so-called "side deals" or other arrangements that could serve to undermine the

---

[3]     Exhibit 1 to Declaration of Stephen G. Topetzes, Esq. dated September 5, 2008 ("Topetzes Declaration") (Verdict Form, United States v. Benyo, Crim. No. 1:05cr12 (E.D.Va.. filed on February 6, 2007)); Exhibit 2 to Topetzes Declaration (Judgment, SEC v. Johnson, No. 05-36 (D.D.C. April 29, 2008)). One of these earlier cases was continued and is still pending in the United States District Court for the District of Columbia. Exhibit 3 to Topetzes Declaration (Order, SEC v. Johnson, No. 05-36 (D.D.C. December 18, 2007)).

Company's revenue recognition or the integrity of its financial statements;[4] that he took affirmative steps to ensure that the circumstances surrounding online advertising transactions would be properly documented and sufficiently transparent to the finance personnel and independent auditors of both companies;[5] and that he "blew the whistle" on potentially inappropriate conduct by certain persons at AOL and other companies related to online advertising transactions in early 2001. In short, the federal government's theory in those cases was that certain business people engaged in inappropriate "round trip" or other improper

---

[4]     For example, in October 2006, Mr. Wovsaniker testified at a criminal trial in the U.S. District Court for the Eastern District of Virginia against Kent Wakeford, a former AOL executive, and certain other former executives of AOL or another company called PurchasePro.com. In response to questions by the DOJ attorneys, Mr. Wovsaniker described his concerns regarding AOL's efforts to earn revenue through the sale of PurchasePro marketplaces to existing AOL business partners in the first quarter of 2001 and his direction to Mr. Wakeford and others that revenue could not be recognized if there were side deals or separate promises made in connection with the sales. Exhibit 4 to Topetzes Declaration (Tr. of Trial Testimony (cumulative) at 898-99, U.S. v. Benyo, et al., Crim. No. 1:05cr12 (E.D.Va.)). Significantly, when Mr. Wakeford took the stand in his own defense, he did not contradict Mr. Wovsaniker's testimony, but rather confirmed that Mr. Wovsaniker "blew up" at the suggestion that side deals or collateral promises were made to induce sales of PurchasePro marketplaces and that Mr. Wovsaniker specifically advised him that certain transaction structures should not be used. Id. at 7676. Mr. Wakeford also testified that his immediate superior instructed him not to consult further with Mr. Wovsaniker regarding PurchasePro marketplaces, stating: "if you have any question[s], don't go to Mark." Id. at 7680. In considering a motion to dismiss, the court may consider not only the complaint but also any written instrument, statement or document attached or incorporated by reference to the complaint, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff. SEC v. Collins & Aikman Corp., 524 F. Supp. 2d 477, 483 (S.D.N.Y. 2007) (citing ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)). The Court can also take judicial notice of pleadings filed or other documents in other litigation. See e.g., Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)); Universal Express, Inc. v. SEC, 177 Fed. Appx. 52 (11th Cir. 2006) (district court properly took notice (at SEC's request) of complaint filed by SEC in another proceeding); In re Zyprexa Prod. Liab. Litig., No. 04-MDL-1596, 07-CV-1310, 2008 U.S. Dist. LEXIS 35162, at *9 (E.D.N.Y. Apr. 30, 2008).

[5]     Mr. Wovsaniker also testified at the criminal trial of former Homestore.com Chief Executive Officer Stuart Wolff on June 12, 2006. With respect to AOL's dealings with Homestore, the DOJ elicited testimony that Mr. Wovsaniker rejected attempts by AOL and Homestore personnel to document separately certain parts of a deal, stressing that the paperwork must reflect both sides of the parties' arrangements so that external auditors could see all elements of the transaction. Exhibit 5 to Topetzes Declaration (Tr. of Trial Testimony at 58-60, U.S. v. Wolff, et al., No. 2:05-cr-00398-PA (C.D. Cal.)).

transactions "despite the best efforts" of Mr. Wovsaniker and other finance or accounting personnel at AOL.[6]

Having largely failed in its efforts to establish violations by the persons responsible for negotiating the subject online advertising arrangements, the SEC now asserts that the same finance or accounting personnel the government repeatedly has contended were "gamed" or circumvented by executives at the Company knowingly or recklessly "engineered" a fraud by AOL.  In doing so, however, the SEC, in significant areas, pleads only generalized allegations of wrongdoing by Mr. Wovsaniker.  Moreover, although the SEC refers to various documents in its Complaint, including internal communications at companies that did business with AOL, it seems clear from the face of the Complaint that few of those documents allegedly were sent or received by Mr. Wovsaniker.

Mr. Wovsaniker is entitled to learn more about the purported claims against him, even at the initial pleadings stage.  The facts underlying this case have been the subject of one of the most thoroughgoing, and possibly one of the most expensive, law enforcement investigations in history.  Mr. Wovsaniker cooperated fully and in good faith with that investigation.  Given the passage of time and the federal government's apparent schizophrenia regarding the role played by Mr. Wovsaniker; given the abundant opportunity the government had to gather the relevant facts and plead appropriate claims; and, most importantly, given the heightened pleading requirements applicable to the SEC's charges, the Complaint should be dismissed.

---

[6]     See Exhibit 4 to Topetzes Declaration (Tr. of Trial Testimony (cumulative) at 64, U.S. v. Benyo, et al., Crim. No. 1:05cr12 (E.D.Va.)) (Opening Statement of Charles Connolly, Assistant United States Attorney).

Substantially all of the subject online advertising transactions and alleged public misstatements by the Company occurred in 2000 and 2001 – *approximately seven (7) or eight (8) years before the Complaint was filed*. Thus, as set forth below, the SEC's efforts to seek punitive relief against Mr. Wovsaniker, including a monetary penalty and any potential bar from serving as a corporate officer or director, are time-barred. The SEC has failed to plead adequately fraudulent concealment or other facts that would serve to preserve the timeliness of its requests for punitive measures. Because the SEC had abundant opportunity to bring its claims years before the Complaint was filed in this action, its failure to assert such facts is fatal to its claims.

## II.    FACTUAL BACKGROUND

### A.    The SEC's Investigation

The transactions underlying the Complaint against Mr. Wovsaniker and the other defendants are quite familiar to the SEC. No later than May 2002, the SEC commenced its investigation and began to inquire about transactions between AOL and certain counterparties. Among those transactions were the transactions that form the basis of the Complaint, substantially all of which occurred in 2000 and 2001, almost seven or eight years prior to the filing of the Complaint. On March 21, 2005 – after a lengthy investigation, but still more than three years before this action was commenced – the SEC filed a civil injunctive action against AOL in the U.S. District Court for the District of Columbia, charging it with securities fraud and other violations as a result of the same transactions detailed in the Complaint against Mr. Wovsaniker and the other defendants.[7]  Further, on January 10, 2005, the SEC brought civil securities fraud charges in the U.S. District Court for the District of Columbia against certain

---

[7]    Exhibit 6 to Topetzes Declaration (Complaint, <u>SEC v. Time Warner Inc.</u>, Civil Action No. 1:05CV00578 (GK) (D.D.C.) ("Time Warner Complaint")).

former employees of AOL based on facts gathered in the underlying and a related SEC investigation.[8]

On March 2, 2006 – more than two years before the Complaint was filed – the SEC staff provided Mr. Wovsaniker with a formal "Wells Notice" stating that the staff intended to recommend to the Commission that a civil injunctive action be commenced against Mr. Wovsaniker.[9]  Exhibit 8 to Topetzes Declaration.   Mr. Wovsaniker submitted a written response to the Wells Notice on June 6, 2006.  Later, in October 2006, the SEC sought Mr. Wovsaniker's agreement to toll the statute of limitations via a tolling agreement drafted by the SEC.   Mr. Wovsaniker subsequently agreed to an extension of the tolling agreement through January 31, 2007.[10]  The SEC allowed the final tolling agreement to expire on January 31, 2007 – almost 16 months before this action was filed. Compl. ¶ 190.

### B.    The Parties

As alleged in the Complaint, Mr. Wovsaniker, a certified public accountant, was AOL's Senior Vice President of Accounting Policy during the Complaint time period.[11]

The Complaint names three other individuals as defendants:

---

[8]    Exhibit 7 to Topetzes Declaration (Complaint, SEC v. Johnson, D.D.C. No. 05-36).  As noted above, the DOJ also brought criminal charges against some of these individuals.

[9]    The provision of "Wells Notices" to proposed defendants in enforcement actions is a longstanding practice of the SEC and is incorporated in both Section 202.5(c) of the SEC's Rules of Practice and Investigations, 17 C.F.R. § 202.5(c), and Sec. Act Rel. No. 33-5310 (Sept. 27, 1972) (Procedures Relating to the Commencement of Enforcement Proceedings and Termination of Staff Investigations).  Because the SEC possesses and is aware of its own Wells Notice to Mr. Wovsaniker, this Court may take judicial notice of the Wells Notice issued to Mr. Wovsaniker, as well as Mr. Wovsaniker's written response.  Collins & Aikman, 524 F. Supp. 2d at 483.

[10]    Of course, the SEC is also aware of the tolling agreement signed by Mr. Wovsaniker and, as a result, this Court may take judicial notice of it.  Id.  Exhibit 9 to Topetzes Declaration.

[11]    The Complaint incorrectly alleges that Mr. Wovsaniker is still employed by AOL.

John Michael Kelly, a certified public accountant, was the Chief Financial Officer ("CFO") of AOL from 1998 to January 2001; the CFO of AOL Time Warner from January 2001 to November 2001; the Chief Operating Officer ("COO") of AOL, Inc. from November 2001 until December 2002; and the Chairman and CFO of AOL International & Web Services from December 2002 to March 2005, when he left AOL.

Joseph A. Ripp, also a certified public accountant, was the CFO of AOL from January 2001 until September 2002, when he became Vice Chairman and COO of AOL Time Warner. Mr. Ripp left AOL Time Warner in December 2004.

Steven E. Rindner, was a Senior Vice President of AOL's Business Affairs unit during the time period referenced in the Complaint. Mr. Rindner left AOL in February 2003.

### C.    The SEC's Allegations

The Complaint alleges that Mr. Wovsaniker and the other defendants "executed a scheme to artificially and materially inflate the Company's reported online advertising revenue." Compl. ¶ 1. The alleged scheme consisted of so-called "round-trip transactions," in which AOL is purported to have "fraudulently funded its own online advertising revenue by giving counterparties the means to pay for advertising they would not have otherwise purchased." Compl. ¶ 2. By this conduct, the defendants are alleged to be "responsible for" the Company reporting "artificially inflated online advertising revenue" in violation of generally accepted accounting principles ("GAAP") in periodic reports and registration statements filed with the Commission and other public statements. Compl. ¶¶ 4, 6, 40. Mr. Wovsaniker is also alleged to have made materially false or misleading statements to the Company's outside auditors in relation to these transactions. Compl. ¶ 209.

The Complaint alleges three types of inappropriate "round-trip" transactions: "vendor transactions," in which AOL is alleged to have paid inflated prices or foregone discounts on

goods or services in exchange for the vendors' purchases of online advertising in like amounts; "business acquisitions," in which AOL allegedly increased the price it paid to purchase businesses in exchange for the sellers' purchase of advertising; and transactions in which AOL converted the settlement of business disputes and legal claims into online advertising revenue. Compl. ¶ 37.  The SEC's conclusory allegations with respect to these transactions are insufficient to satisfy the scienter requirements of the federal securities laws or the particularity requirement of Federal Rule of Civil Procedure 9(b).  Additionally, because the transactions occurred in 2000 and 2001, certain of the SEC's claims for relief against Mr. Wovsaniker are barred by the applicable five-year statute of limitations.

## III.     ARGUMENT

### A.     Legal Standard of Motion to Dismiss

#### 1.     The "Flexible Plausibility Standard"

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966 (2007).  Although factual allegations must be construed in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), the court need not give "legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." Collins & Aikman, 524 F. Supp. 2d at 483 (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)).  Under the flexible "plausibility standard," the pleader must "amplify a claim with some factual allegations" when such elaboration "is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  A "formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965.

### 2.    The Heightened Pleading Requirements of Rule 9(b)

A complaint asserting securities fraud claims must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).   Under Rule 9(b), the plaintiff must plead the circumstances constituting fraud with particularity but may aver malice, intent, knowledge and other conditions of a person's mind generally.   Fed. R. Civ. P. 9(b).   A complaint alleging fraudulent misrepresentation or omission must: (1) specify the statements that the plaintiff alleges were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993); SEC v. Alexander, 160 F. Supp. 2d 642, 649 (S.D.N.Y. 2001).

The plaintiff must also meet the purposes of Rule 9(b), which include providing a defendant with fair notice of the claims against him and protecting a defendant from harm to his reputation or goodwill by unfounded allegations of fraud.  Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004); In re Blech Sec. Litig., 928 F. Supp. 1279, 1288 (S.D.N.Y. 1996).  A plaintiff, particularly one like the SEC with great investigative power prior to the filing of a complaint, cannot make allegations based solely on information and belief unless only the defendants have access to the facts needed to support such allegations.  See e.g., Alexander, 160 F. Supp. 2d at 649; see also SEC v. Parnes, No. 01 CIV 0763 LLS THK, 2001 U.S. Dist. Lexis 21722, at *14 (S.D.N.Y. Dec. 26, 2001) (SEC has access to records and documents over three year investigation); SEC v. Fisher, No. 07 C 4483, No. 07 C 4483, 2008 U.S. Dist. Lexis 38738, at *11-12 (N.D. Ill. May 13, 2008) (SEC has an "army of trained attorneys," subpoena power and other investigatory advantages over typical plaintiffs even before it files a lawsuit).

Rule 9(b) applies to all of the SEC's claims against Mr. Wovsaniker. See Collins &
Aikman, 524 F. Supp. 2d at 484 (applying Rule 9(b) to allegations under Section 17(a) of the
Securities Act, Sections 10(b) and 13(b)(5) of the Exchange Act, and Exchange Act Rules 10b-5,
13b2-1, 13b2-2, and similar aiding and abetting allegations); Rombach, 355 F.3d at 171 (holding
that Rule 9(b) applies when securities violations are predicated on allegations of fraud, even if
fraud is not a required element of the claim). Moreover, the SEC must plead each allegation
with particularity against each defendant. "A complaint may not rely upon blanket references to
acts or omissions by all of the defendants, for each defendant named in the complaint is entitled
to be apprised of the circumstances surrounding the fraudulent conduct with which [he]
individually stands charged." Parnes, 2001 U.S. Dist. LEXIS 21722, at *12. "Group pleading" is
permitted in some cases to protect plaintiffs until the discovery stage when they cannot tie
specific facts to allegedly false or misleading statements. SEC v. Yuen, 221 F.R.D. 631, 636-37
(C.D. Cal. 2004). However, the SEC may not allege a complex fraudulent scheme as a means of
getting around the individual pleading requirements for individual defendants. See id. ("This
Court will not allow the SEC to abuse the group pleading doctrine by asserting non-specific
claims…this Court finds that the SEC devised their theory of a 'complex fraudulent scheme' as a
means to get around the pleading requirements for the individual Defendants."). Because the
SEC had more than six years to investigate these matters, during which it took testimony or
participated in interviews of countless individuals, reviewed millions of pages of documents, and
brought claims against several other defendants, including the Company, it has had ample time to
determine which defendants were involved in the allegedly fraudulent transactions and cannot
rely upon generalized allegations of a complex "scheme." SEC v. U.S. Envtl., Inc., 82 F. Supp.
2d 237, 241 (S.D.N.Y. 2000); see also Yuen, 221 F.R.D. at 637 ("Given the SEC's substantial

pre-filing investigatory powers and the significant discovery already conducted in this case, the SEC's reliance upon the group published information doctrine is misplaced and inappropriate.").

A plaintiff must also plead scienter on an individual basis. DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1248 (2d Cir. 1987). Any attempt by the SEC to make conclusory and collective allegations about one or more of the defendants to support its claims against Mr. Wovsaniker must fail as a matter of law. The SEC must meet all requirements of Rule 9(b) and must plead all elements for each claim and for each defendant in order to survive a motion to dismiss.

### B. Counts I and II of the Complaint Asserting Violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 Fail to State a Claim Against Mark Wovsaniker

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege that the defendant (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities. Collins & Aikman, 524 F. Supp. 2d at 485 (citing SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999)). Because the elements of Section 17(a)(1)[12] are essentially the same as the elements of Section 10(b), a complaint which is insufficient to state a claim under Section 10(b) is also insufficient under Section 17(a)(1). Monarch Funding Corp., 192 F.3d at 308; see also SEC v. Price Waterhouse, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992) (the elements of liability for Section 17(a)(1) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act are the same).

---

[12]    The SEC does not specify whether it is alleging a violation of Sections 17(a)(1), (a)(2) or (a)(3). Compl. ¶ 95-97. Sections 17(a)(2) and 17(a)(3) do not require scienter. Nevertheless, the SEC must still meet the pleading requirements of Federal Rule of Civil Procedure 9(b). See e.g., Collins & Aikman, 524 F. Supp. 2d at 484 (applying Rule 9(b) to Section 17(a) generally).

1.    **The Complaint Fails to Raise a "Strong Inference of Fraudulent Intent" Against Mr. Wovsaniker**

The SEC has not offered any particularized factual allegations against Mr. Wovsaniker that he acted with scienter with respect to any of the identified transactions.  Scienter under Section 10(b) and Rule 10b-5 is "an intent to deceive, manipulate or defraud." Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001) (quoting Ganino v. Citizens Util. Co., 228 F.3d 154, 168 (2d Cir. 2000)).  A plaintiff must allege facts giving rise to a "strong inference of fraudulent intent," Acito v. Imcera Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995); Parnes, 2001 U.S. Dist. LEXIS 21722, at *16, and suggesting an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2513 (2007); see also SEC v. Northshore Asset Mgmt., No. 05 Civ. 2192 (WHP), 2008 U.S. Dist. LEXIS 36160, at *21 (S.D.N.Y. May 5, 2008) (applying Tellabs to a Section 10(b) claim brought by the SEC).

The SEC improperly relies upon general allegations that Mr. Wovsaniker possessed certain knowledge without alleging sufficient facts raising a strong inference of fraudulent intent. Compl. ¶¶ 55, 56, 58, 60, 64, 72, 75, 76, 78, 80, 81, 82, 84, 88, 89, 92, 95, 132, 134, 141, 142, 143, 151, 152, 164, 165, 167, 170, 175, 177, 178, 179.  Indeed, none of the SEC's assertions regarding Mr. Wovsaniker sufficiently pleads facts that he had the motive and opportunity to commit fraud or that Mr. Wovsaniker acted with conscious misbehavior or recklessness. ATSI, 493 F.3d at 99.

(a)    **The SEC's allegations of motive are deficient**

The SEC makes only conclusory allegations regarding Mr. Wovsaniker's motives, none of which is sufficient to support its claims.  Significantly, the SEC fails to allege with

particularity that Mr. Wovsaniker could realize "concrete benefits" from the alleged misconduct. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994).

First, the SEC's generalized allegation that Mr. Wovsaniker and others engaged in fraudulent behavior to inflate AOL's online advertising revenue, Compl. ¶¶ 3, 48, is supported by no specific factual allegation and fails to offer any theory of personal motivation on the part of Mr. Wovsaniker. Novak v. Kasaks, 216 F.3d 300, 307-08 (2d Cir. 2000) (to defeat a motion to dismiss, "plaintiffs had to allege that defendants benefited in some concrete and personal way from the purported fraud"). Allegations seeking to prove a desire to inflate AOL's advertising revenue so that the corporation would appear profitable are insufficient to plead motive. Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996) (benefits must go beyond the desire for the corporation to appear profitable or the desire to keep stock prices high); SEC v. Treadway, 430 F. Supp. 2d 293, 331 (S.D.N.Y. 2006). Motives that are generally possessed by most corporate directors and officers do not suffice. Kalnit, 264 F.3d at 139.

Second, although the SEC alleges that Mr. Wovsaniker profited by selling stock at inflated prices, Compl. ¶ 194, the SEC provides no facts regarding these allegedly fraudulent stock sales. Even if the SEC had made more particularized allegations regarding Mr. Wovsaniker's stock trading, "executive stock sales, standing alone, are insufficient to support a strong inference of fraudulent intent." In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004). Additionally, the SEC has not attempted to allege that any of Mr. Wovsaniker's stock sales were "unusual" in timing or amount. Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.), 252 F.3d 63, 74 (2d Cir. 2001). See Acito, 47 F.3d at 54 (stock sales could raise an inference of scienter if they were unusual in timing or amount); In re Scholastic Corp., 252 F.3d at 74-75 (sufficient allegations include the amount of profit from the

sales, the portion of stockholdings sold, the change in volume of insider sales, and the number of insiders selling) (citation omitted).

Third, the SEC's allegation that Mr. Wovsaniker was motivated by the receipt of bonuses based on the Company's financial results, Compl. ¶ 194, also fails as a matter of law because a desire to maintain or increase executive compensation is an insufficient motive for fraud. Kalnit, 264 F.3d at 140 (such desire can be attributed to all corporate officers); Acito, 47 F.3d at 54 (incentive compensation cannot be the basis of an allegation of fraud); In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 273 (S.D.N.Y. 2008) (allegation of scienter cannot be based on a desire to increase incentive compensation). The SEC's naked implication that Mr. Wovsaniker was motivated by the AOL-Time Warner merger, Compl. ¶ 23, likewise is not sufficient. Rothman v. Gregor, 220 F.3d 81, 93-94 (2d Cir. 2000) (citing In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 270 (2d Cir. 1993)) (desire to consummate corporate transaction "cannot ever be a motive for securities fraud").

Finally, the SEC fails to allege any particularized facts that Mr. Wovsaniker had the opportunity to commit fraud. Novak, 216 F.3d at 307 (quoting Shields, 25 F.3d at 1130) (opportunity includes the "means and likely prospect of achieving" those concrete benefits by the means alleged).

### (b)    The SEC fails to allege facts supporting strong circumstantial evidence of conscious misbehavior or recklessness

The SEC similarly fails to allege facts giving rise to strong circumstantial evidence of conscious misbehavior or recklessness. If a plaintiff cannot plead motive and opportunity and instead relies upon circumstantial evidence of conscious misbehavior or reckless conduct, the strength of the circumstantial evidence must be "correspondingly greater." Kalnit, 264 F.3d at 142. Conscious misbehavior includes deliberate illegal behavior, Novak, 216 F.3d at 308, and

"is easily identified." Kalnit, 264 F.3d at 142.  The SEC's allegations fail to give rise to an inference that Mr. Wovsaniker deliberately engaged in illegal behavior.  Moreover, the SEC's attempt to allege recklessness falls far short of pleading reckless conduct which is at the very least "highly unreasonable and which represents an extreme departure from the standards of ordinary care," SEC v. McNulty, 137 F.3d 732, 741 (2d Cir. 1998) (citation omitted), so that the "danger was either known to the defendant or so obvious that the defendant must have been aware of it." Kalnit, 264 F.3d at 142 (quoting Honeyman v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.), 220 F.3d 36, 39 (2d Cir. 2000)).

The SEC relies on boilerplate allegations that Mr. Wovsaniker knew or was reckless in not knowing about the alleged fraud associated with the subject transactions, presumably as a result of his role at the Company.  Compl. ¶¶ 1, 3, 4, 28, 29, 48, 49.  In the Second Circuit, however, generalized or boilerplate allegations based solely on defendant's position with a company are insufficient as a matter of law.  In re Sotheby's Holdings, Inc. Sec. Litig., No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000).  Similarly, a restatement by AOL of its financial statements is not an admission that the defendants, and specifically Mr. Wovsaniker, knowingly made accounting mistakes or overlooked material information.  See In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 565 (S.D.N.Y. 2004) (allegations of accounting irregularities are insufficient to state a securities fraud claim); SEC v. Price Waterhouse, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992) (recklessness standard requires more than misapplication of accounting principles).  Generic allegations that offer no facts regarding knowledge of the alleged underlying fraud do not sufficiently plead scienter. See e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 218 (S.D.N.Y. 2004).

### 2.    The SEC has Failed to Plead Securities Fraud with Particularity Against Mr. Wovsaniker with Respect to Any Transaction

After investigating these matters for over six years, the SEC has failed to plead violations of Section 17(a), Section 10(b) and Rule 10b-5 with particularity and, as described above, has failed to plead the scienter element with respect to any of the transactions forming the basis of the Complaint.  These claims should therefore be dismissed in their entirety with prejudice.

### (a)    The Vendor Transactions

#### (i)    Sun Microsystems

The SEC does not plead securities fraud with the required amount of particularity with respect to Mr. Wovsaniker and the Sun Microsystems transaction.  Although the SEC alleges that Mr. Wovsaniker contributed substantially to "various public statements" that incorporated allegedly fraudulent financial results, the SEC does not specify which statements were false or how Mr. Wovsaniker supposedly contributed to them in relation to the Sun Microsystems transaction. Compl. ¶ 31.  Further, the SEC does not - because it cannot - allege that Mr. Wovsaniker was involved in the negotiation of the deal or even suggest what role he played.  The SEC broadly alleges that Mr. Wovsaniker knew and approved the details of the transaction, Compl. ¶ 60, without attempting to plead how, when or where he supposedly learned this information.  SEC v. DiBella, Civil No. 3:04 CV 1342, 2005 U.S. Dist. Lexis 31762, at *33 (D. Conn. Nov. 29, 2005) (sufficient specificity includes "the who, what, when, where, why and how of the allegedly fraudulent conduct"); see also Novak, 216 F.3d at 306 (plaintiff must recount factual allegations outlining the "who, what, when, where and why" of defendant's involvement).

In addition, as discussed above, the SEC fails to plead sufficient factual allegations that Mr. Wovsaniker acted with the requisite scienter. The SEC's allegation that Mr. Wovsaniker "discussed" proposed plans, Compl. ¶ 55, does not assert specific facts sufficient to support its claim of fraudulent intent. See e.g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976) (plaintiff must plead intent to deceive, manipulate or defraud). The SEC's implication that Mr. Wovsaniker was knowledgeable about the alleged fraud with respect to the transaction because he allegedly rejected a deal structure proposed by Sun Microsystems also falls short. Compl. ¶ 58. Such an allegation fails to give rise to a strong inference of fraudulent intent, and instead alleges only that Mr. Wovsaniker offered his opinion with respect to a business decision made in the ordinary course. SEC v. Morris, No. Civ. A. H-04-3096, 2005 WL 2000665, at *9 (S.D. Tex. Aug. 18, 2005) (stating that defendant is not liable for merely participating in ordinary business activities without clear proof of intent to violate securities laws).

### (ii)    **Veritas**

The SEC also does not plead securities fraud with particularity with respect to Mr. Wovsaniker and the Veritas transaction. Although the SEC alleges that the "Business Affairs" unit as a whole followed Mr. Wovsaniker's "advice," Compl. ¶¶ 72, 75, it presents no specific factual allegations regarding what that supposed advice was, what part or parts of the transaction it supposedly related to or to whom he allegedly provided "advice." Compl. ¶ 76. There are no factual assertions in the Complaint that Mr. Wovsaniker knew or was reckless in not knowing during the time period relevant to the Veritas transaction that the licensing and advertising deals were "contingent," Compl. ¶ 76, that they were not fairly valued, Compl. ¶¶ 80, 82, or that they were not in fact separate transactions. The alleged fact that there was no advertising carriage plan in place prior to executing the deal, Compl. ¶¶ 77, 78, does not impart knowledge of some

17

nefarious and fraudulent plot.  At most, it reflects an alleged business decision or judgment, with which the SEC in hindsight apparently disagrees. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (allegations that defendants should have been more skeptical or turned out to be wrong do not indicate that they were promoting a fraud); see also Serebian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 362 (1st Cir. 1994) (violations of federal banking law may reflect poorly on management's skills but do not necessarily adequately plead a Rule 10b-5 violation).

The crux of the SEC's charge against Mr. Wovsaniker regarding this transaction is that Mr. Wovsaniker told an unnamed "lead Business Affairs executive" that the summaries should have been documented separately.  Compl. ¶ 81.  However, even assuming it were true, this allegation offers nothing with respect to Mr. Wovsaniker's knowledge at the time he made the alleged statement.  The SEC neither alleges that Mr. Wovsaniker knew at the time that the licensing and advertising deals were not separate transactions nor explains why such an alleged statement is fraudulent.  The SEC also does not, because it cannot, make any allegation that Mr. Wovsaniker was involved in the Veritas deal negotiations or that he was familiar with the detailed discussions underlying the final deal.  Compl. ¶¶ 69, 70, 73.  The SEC cannot attribute such knowledge to Mr. Wovsaniker in hindsight.  Novak, 216 F.3d at 309 (plaintiffs may not proceed with allegations of "fraud by hindsight") (quoting Stevelman v. Alias Research Inc., 174 F.3d 79, 85 (2d Cir. 1999)).

(iii)    **Hewlett-Packard**

The SEC's allegations against Mr. Wovsaniker with regard to the Hewlett-Packard transaction are even thinner and more cursory than those concerning Sun Microsystems and

18

Veritas.  As a result, they fail to withstand scrutiny under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.

First, the SEC alleges that Mr. Wovsaniker "helped devise" the transaction, Compl. ¶ 88, and gave "advice and assistance" regarding the transaction, Compl. ¶ 89, without offering any specific factual allegations regarding what Mr. Wovsaniker supposedly did.  Second, the SEC alleges that Mr. Wovsaniker knew or was reckless in not knowing that the two transactions were not separate and bona fide, while in the same paragraph admitting that the deal summaries presented to Mr. Wovsaniker – from which he gained his knowledge about the transactions – signaled no relationship between the advertising and equipment deals.  Compl. ¶ 92.  Finally, the SEC alleges that Mr. Wovsaniker "approved" the transaction and somehow "knew" that AOL had turned down a discount in exchange for advertising without presenting any specific factual allegations regarding the nature, basis or extent of his supposed knowledge. Compl. ¶ 95.  In fact, the Complaint attributes actions to "Business Affairs," Compl. ¶¶ 90, 91, and "member[s] of the AOL negotiating team," Compl. ¶ 93, and makes no factual allegations regarding involvement by Mr. Wovsaniker in any negotiation or discussion of the deal structure.  Although the SEC presents factual allegations related to internal Hewlett-Packard communications, it does not allege that any of the defendants, including Mr. Wovsaniker, were aware of these communications, either at the time of the transaction or subsequently. Compl. ¶¶ 90, 94.

(iv)    **Telefonica**

In the entire section of the Complaint regarding the Telefonica transaction, the SEC *never* refers to Mr. Wovsaniker by name, title, or implication.  The law is clear that the SEC must at least plead factual allegations sufficient to make the right of relief more than "speculative." Twombly, 127 S. Ct. at 1965.  The SEC has not offered any factual allegations in support of its

claims against Mr. Wovsaniker related to the Telefonica transaction. Therefore, the Complaint fails to satisfy the standard under Rule 12(b)(6) and does not meet the requirements for particularity under Rule 9(b). The SEC must present specific allegations against each defendant in multiple defendant cases. SEC v. U.S. Envtl., Inc., 82 F. Supp. 2d 237, 241 (S.D.N.Y. 2000) (plaintiff must present specific facts against each defendant informing him of the nature of his alleged participation in the fraud). The only reasonable inference to be drawn from the SEC's failure to make **any** factual allegations against Mr. Wovsaniker with respect to the Telefonica transaction is that, despite over six years of investigation, there are no facts to support the claim.

**(b)** **The Business Acquisition Transactions**

(i) **The BAG transactions**

The SEC does not plead securities fraud with particularity with respect to Mr. Wovsaniker and the Bertelsmann, A.G. ("BAG") transactions. The SEC makes only conclusory statements that Mr. Wovsaniker "knew or was reckless in not knowing" that the BAG advertising deals allegedly had no value, and fails to provide supporting factual allegations. Compl. ¶ 141.

In allegations describing participation in BAG negotiation sessions and deal discussions, Compl. ¶¶ 127, 128, 129, 133, 140, the SEC fails to mention Mr. Wovsaniker at all. The SEC makes blanket statements that Mr. Wovsaniker "knew" that BAG was paying for put/call amendments rather than advertising, Compl. ¶ 132, and that Mr. Wovsaniker "provided advice on the value, structure, and accounting" of the deals, Compl. ¶ 134, without specifying how he obtained such knowledge or what advice he provided. Significantly, although the SEC alleges that Mr. Wovsaniker was involved in internal discussions about how much advertising revenue to recognize, it supports its claim with an email chain that does not include Mr. Wovsaniker.

Compl. ¶ 142.  A companion allegation that Mr. Wovsaniker and the other defendants "carefully tracked" these revenues and related disclosure requirements, Compl ¶ 143, does not support a fraud claim.  The SEC's claims respecting BAG are defective as a matter of law.  The SEC provides no specific allegation linking Mr. Wovsaniker to the alleged fraud concerning these transactions.

### (c)     Business Dispute Settlements

#### (i)     Ticketmaster/ Wembley

The SEC also fails to plead securities fraud with particularity concerning the Ticketmaster and Wembley settlements.  First, the SEC alleges that Mr. Wovsaniker "approved" the transactions and "knew" that Wembley had acknowledged its obligation to AOL to settle the dispute, but it provides no factual assertions to support these claims.  Compl. ¶ 151.  There are no specific factual allegations in the Complaint regarding how Mr. Wovsaniker knew or was reckless in not knowing that there was a cash settlement offer.   Compl. ¶¶ 149, 151, 152.  Second, the SEC alleges that Mr. Wovsaniker did not tell Ernst & Young "material facts regarding the transactions" but it does not offer any factual allegations describing what the supposed material facts were or how Mr. Wovsaniker allegedly knew them. Compl. ¶ 152.  The remaining assertions in the Complaint regarding the general nature of the transactions, Compl. ¶¶ 148-150, and actions of a "Business Affairs executive," Compl. ¶ 153, and another individual, Compl. ¶ 154, do not mention Mr. Wovsaniker and offer no support for the SEC's claims against Mr. Wovsaniker with respect to the Ticketmaster and Wembley transactions.

#### (ii)     Worldcom

The SEC fails to plead securities fraud with particularity against Mr. Wovsaniker with respect to the June 2001 Worldcom transaction.  The SEC alleges vaguely that Mr. Wovsaniker

"was consulted and provided advice" with respect to the transaction, Compl. ¶ 164, but does not allege what that advice was or how it allegedly contributed to the fraud.  The SEC does not allege that Mr. Wovsaniker attended meetings with AOL negotiators, Compl. ¶ 163, or that he received emails discussing the transaction.  Compl. ¶ 166.  Furthermore, the SEC admits that a deal summary received by three defendants discussed only the $39.2 million settlement and not the advertising deal.  Compl. ¶ 165.  There is no allegation in the Complaint that Mr. Wovsaniker was involved in the drafting of this summary or that he possessed any more information regarding the transaction than was on the face of the document.  Id.  Although the SEC alleges that the advertising contract was "contingent," id., it pleads no facts that Mr. Wovsaniker was aware of the "contingent" nature of the advertising deal when he reviewed the deal summary or when he learned that Ernst & Young was auditing the Worldcom network deal.  Compl. ¶ 167.  There are similarly no factual allegations regarding whether Mr. Wovsaniker knew Worldcom was willing to settle the dispute for $5 million. Compl. ¶¶ 160, 161, 163.

The SEC also fails to plead securities fraud with particularity with respect to the December 2001 Worldcom transaction.  The SEC alleges that Mr. Wovsaniker and other individuals "decided that AOL would pay the waived penalty," Compl. ¶ 170, and that Mr. Wovsaniker and another individual "helped engineer and ultimately approved" the deal.  Compl. ¶ 175.  However, the SEC offers no specific factual allegation regarding how Mr. Wovsaniker allegedly learned that the penalty was waived, Compl. ¶ 177, knew that the voice and data contract and the advertising contract were related, Compl. ¶ 172, or otherwise was reckless.  The SEC further alleges that Mr. Wovsaniker told a "junior AOL executive" not to document a "side agreement" with respect to the transaction, but presents no specific factual assertions regarding this alleged statement or the alleged side deal itself.  Compl. ¶ 178.  Finally, the SEC's vague

22

allegation that Mr. Wovsaniker "advised Business Affairs not to send external communications that would link the additional $10 million penalty and the credits" does not adequately offer facts that Mr. Wovsaniker knew at the time that the two transactions were related or that he engaged in fraudulent conduct.  Compl. ¶ 179.

* * *

For the above described reasons, the allegations that Mr. Wovsaniker violated Sections 17(a) and 10(b) and Rule 10b-5 are insufficient as a matter of law and should be dismissed in their entirety with prejudice.

### C.     Counts IV, V and VI of the Complaint Asserting Violations of Section 13(b)(5) and Rules 13b2-1 and 13b2-2 of the Exchange Act Fail to State a Claim Against Mark Wovsaniker

The SEC fails to state a claim against Mr. Wovsaniker for violations of Section 13(b)(5) and Rules 13b2-1 and 13b2-2 of the Exchange Act.  Section 13(b)(5) provides that "[n]o person shall . . . knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account" required to be maintained pursuant to Section 13(b)(2) of the Exchange Act.  Rule 13b2-1 provides that "[n]o person shall, directly or indirectly, falsify or cause to be falsified, any book, record or account" maintained pursuant to Section 13(b)(2)(A).  Rule 13b2-2 prohibits officers, directors, or those acting under their direction from making false statements to auditors if it was or should have been known that those statements would lead to materially misleading financial statements.  Collins & Aikman, Corp., 524 F. Supp. 2d at 491.

The SEC provides no particularized factual allegations describing how Mr. Wovsaniker supposedly falsified AOL's books and records or what books and records he purportedly falsified.  SEC v. Dauplaise, No. 6:05CV1391, 2006 WL 449175, at *8 (M.D. Fla. Feb. 22,

23

2006) (dismissing Rule 13b2-1 claim because the SEC failed to allege how the defendant falsified the books and records, despite allegations that the defendant knew about certain practices and made material misrepresentations and omissions); <u>SEC v. Kahn</u>, No. 99 C 6343, 2002 WL 1163723, at *14 (N.D. Ill. May 31, 2002) (determining that the SEC did not allege with particularity what misrepresentations were made to auditors or which internal controls were purportedly circumvented). As discussed above, the SEC fails to provide factual allegations that Mr. Wovsaniker engaged in the fraudulent conduct giving rise to the allegedly false books and records. The SEC has not averred specific facts to depict sufficiently how Mr. Wovsaniker's conduct caused AOL's books and records to be false.

Furthermore, the SEC has failed to allege how Mr. Wovsaniker *knowingly* falsified the books and records or *knowingly* provided false information to Ernst & Young. The Complaint is devoid of any allegation that Mr. Wovsaniker signed the Company's financial statements or public filings. Moreover, as illustrated in the preceding sections, the SEC makes no factual assertions that Mr. Wovsaniker had any knowledge of "contingent" transactions when he made statements to the auditors or when he allegedly failed to disclose certain facts. Compl. ¶¶ 64, 80, 81, 82, 118, 152, 167. As such, the allegations that Mr. Wovsaniker violated Section 13(b)(5) and Rules 13b2-1 and 13b2-2 of the Exchange Act should be dismissed in their entirety with prejudice.

    **D.**    **Counts III and VII of the Complaint Asserting Aiding and Abetting Violations of Sections 10(b), 13(a), and 13(b)(2)(A) and Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 13b2-1 of the Exchange Act Fail to State a Claim Against Mark Wovsaniker.**

The SEC alleges that Mr. Wovsaniker "knowingly and recklessly" assisted AOL in its securities law violations but fails to allege factual assertions supporting each element of those claims. In order to allege liability for aiding and abetting a securities law violation, the plaintiff

must allege facts offering (1) the existence of a securities law violation by the primary party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. Collins & Aikman, 524 F. Supp. 2d at 491 (citing IIT v. Cornfield, 619 F.2d 909, 922 (2d Cir. 1980)). This test applies to the SEC's claims under Sections 10(b) and 13 of the Exchange Act. SEC v. Cedric Kushner Promotions, Inc., 417 F. Supp. 2d 326, 336 (S.D.N.Y. 2006). The plaintiff must sufficiently plead that the defendant had actual knowledge or engaged in knowing misconduct. Collins & Aikman, 524 F. Supp. 2d at 491 (citing Edwards & Hanly v. Wells Fargo Sec. Clearance Corp., 602 F.2d 478, 484 (2d Cir. 1979)); Cedric Kushner, 417 F. Supp. 2d at 334-35; SEC v. KPMG LLP, 412 F. Supp. 2d 349, 372 (S.D.N.Y. 2006). Recklessness is not enough.

The SEC has not sufficiently pled each element of its aiding and abetting charges against Mr. Wovsaniker. First, as discussed above, the SEC does not present sufficient factual allegations regarding the underlying purported securities fraud. The SEC alleges that Mr. Wovsaniker engaged in primary conduct, but provides no factual allegations to support what he did, what statements were false, or how he disseminated the false statements to the public or to the SEC in public filings. The SEC has similarly failed to plead adequately that AOL or any other individual engaged in primary conduct that violated the anti-fraud provisions. The fact of a restatement itself is not sufficient to plead securities fraud. In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 565 (S.D.N.Y. 2004). Lacking the wherewithal to impose primary liability, the SEC now attempts to charge Mr. Wovsaniker with aiding and abetting liability. This effort fails for the same reasons as the alleged primary violation.

Second, the SEC fails to offer facts that Mr. Wovsaniker engaged in knowing misconduct. As explained above, the SEC makes numerous conclusory allegations regarding

Mr. Wovsaniker but provides few particular facts relating to Mr. Wovsaniker's actual knowledge of any fraudulent conduct. Aiding and abetting liability requires knowing conduct. Cedric Kushner, 417 F. Supp. 2d at 335.

Third, the SEC's conclusory allegations do not satisfy its burden of pleading that Mr. Wovsaniker substantially assisted in the achievement of the primary violations. The SEC has failed to present specific factual allegations regarding what Mr. Wovsaniker did in relation to the online advertising transactions underlying its claims.

The SEC has failed to present factual allegations supporting each element of its aiding and abetting claims. Accordingly, those claims should be dismissed with prejudice.

### E. THE SEC'S CLAIMS ARE TIME BARRED UNDER THE APPLICABLE STATUTE OF LIMITATIONS.

#### 1. The SEC's Requests for Relief are Subject to the Five-Year Limitations Period of 28 U.S.C. § 2462

The SEC's claims for punitive measures are governed by the five-year statute of limitations in 28 U.S.C. § 2462:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued.

See SEC v. Jones, 476 F. Supp. 2d 374, 380 (S.D.N.Y. 2007) ("Jones II") (applying Section 2462 to SEC enforcement actions). The SEC filed its Complaint against Mr. Wovsaniker and the other defendants on May 19, 2008. Given the five-year statute of limitations, the SEC generally may not assert any claim that accrued prior to May 19, 2003.

The SEC makes various requests for relief regarding Mr. Wovsaniker, including disgorgement, civil monetary penalties, a permanent bar against acting as an officer or director of a publicly-traded company, and a permanent injunction. Compl. ¶¶ 54, 55. Section 2462 of Title

28, which applies when the requested remedies are punitive, operates against all of the SEC's requests for relief, except disgorgement.[13]    A claim for civil monetary penalties is "unquestionably a penalty" and therefore subject to the five-year limitations period of Section 2462.  Jones II, 476 F. Supp. 2d at 381.  Section 2462 also applies to the request for a permanent bar against acting as an officer or director.  DiBella, 409 F. Supp. 2d at 127-28 & n.3.  In determining whether Section 2462 applies to the SEC's request for a permanent injunction, the Second Circuit demands that the SEC present "positive proof of a reasonable likelihood that past wrong-doing will recur."  SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99 (2d Cir. 1978).  In other words, the statute of limitations will apply if a permanent injunction would be punitive.  The SEC has not pled any allegations in the Complaint to suggest that there is a danger of recurrence.  Not only does the SEC fail to plead adequately that Mr. Wovsaniker acted with the requisite scienter when he allegedly committed the violations, but it also fails to plead sufficiently that an injunction would protect the public from any danger of repetition. Furthermore, the length of time between the alleged conduct and this lawsuit undercuts the suggestion that a permanent injunction and an officer or director bar are necessary to protect the public.  Jones II, 476 F. Supp. 2d at 384; Proffitt v. FDIC, 200 F.3d 855, 862 (D.C. Cir. 2000). Mr. Wovsaniker is not a repeat offender with a high degree of scienter, SEC v. Posner, 16 F.3d 520, 521-22 (2d Cir. 1994); SEC v. Drexel Burnham Lambert Inc., 837 F. Supp. 587, 611 (S.D.N.Y. 1993), and, therefore, the SEC's request for a permanent injunction should be viewed as punitive and subject to the five-year bar.

---

[13]    The SEC makes only a generic and conclusory allegation that Mr. Wovsaniker profited from stock sales and incentive compensation. Compl. ¶ 194.  To the extent that the SEC is asking for disgorgement beyond unjust enrichment, the request is punitive in nature rather than remedial and would also be barred by Section 2462.  SEC v. DiBella, 409 F. Supp. 2d 122, 127 (D. Conn. 2006) (disgorgement merely "deprives one of wrongfully obtained proceeds") (quoting SEC v. Lorin, 869 F. Supp. 1117, 1122 (S.D.N.Y. 1994), aff'd in part 76 F.3d 458 (2d Cir. 1996)).

### 2.    The Statute of Limitations Time Period Begins on the Date of the Violation and Expires Five Years From that Date

In the Second Circuit, a claim accrues under Section 2462 as of the date of the violation, or when the factual and legal prerequisites for filing suit are in place. Jones II, 476 F. Supp. 2d at 381; 3M Co. v. Browner, 17 F.3d 1453, 1460 (D.C. Cir. 1994). Such prerequisites are in place for securities fraud or misrepresentation claims as of the time of the allegedly fraudulent transaction that is the basis of the claim or on the date of the initial public filing with the SEC or publication, and not the discovery of such violations. See e.g., SEC v. Jones, No. 05 Civ. 7044 (RCC), 2006 U.S. Dist. LEXIS 22800, at *6 (S.D.N.Y. Apr. 25, 2006) ("Jones I"); SEC v. Scrushy, No. CV-03-J-615S, 2005 U.S. Dist. LEXIS 30553, at *8-9 (N.D. Ala. Nov. 29, 2005); SEC v. Caserta, 75 F. Supp. 2d 79, 90-91 (E.D.N.Y. 1999).

Given that the transactions that form the basis of the Complaint occurred in 2000 and 2001, more than seven years ago, they are easily barred by the statute of limitations. Furthermore, although the SEC alleges in the Complaint that Mr. Wovsaniker "contributed"[14] to "various public statements," the last of which was an earnings call on January 7, 2002 (more than six years before the Complaint was filed), these statements were made well before the limitations period cut off date of May 19, 2003. Compl. ¶ 31. The SEC also contends generically that the Company's financial statements incorporated the allegedly inflated revenue numbers until an

---

14    The SEC does not allege – because it cannot – that Mr. Wovsaniker signed public filings containing the allegedly false or misleading financial results. As AOL's Senior Vice President of Accounting Policy, Mr. Wovsaniker never signed and never was responsible for the Company's financial statements.

undetermined date at "the end of 2003," but it offers no specific factual allegations in support of that assertion.[15]  Compl. ¶ 6.

### 3.    The SEC Does Not State a Claim for Fraudulent Concealment

The SEC bears the burden of establishing fraudulent concealment in order to defeat a statute of limitations defense.  In re Issuer Plaintiff IPO Antitrust Litig., No. 00 Civ. 7084, 2004 U.S. Dist. Lexis 3892, at *13 (S.D.N.Y. Mar. 12, 2004).  To meet its burden of satisfying the rigorous pleading standards of fraudulent concealment, Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000), the SEC must assert facts to establish that: (1) Mr. Wovsaniker concealed the fraud or the fraud was self-concealing; (2) the SEC did not discover the cause of action until sometime within five years of bringing the claim; and (3) the SEC's continuing ignorance was not due to a lack of due diligence.  Jones II, 476 F. Supp. 2d at 382 (citations omitted).  The SEC must plead all elements of fraudulent concealment with particularity under Rule 9(b).  Butala v. Agashiwala, 916 F. Supp. 314, 319 (S.D.N.Y. 1996) (citations omitted).  Further, the SEC may not rely upon the group pleading doctrine.  In re The Mediators, Inc., 190 B.R. 515, 525 (S.D.N.Y. 1995).

### (a)    The SEC fails to allege that Mr. Wovsaniker concealed the alleged fraud

---

[15]      It appears that, with this allegation, the SEC is trying to capitalize on the continuing violation doctrine in an attempt to survive a statute of limitations bar.  The Second Circuit, however, rejects the continuing violation doctrine as inappropriate in the securities law context. See e.g., Jones I, 2006 U.S. Dist. LEXIS 22800 at *12-13 (refusing to adopt continuing violation doctrine in SEC enforcement actions); De la Fuente v. DCI Telecomms., Inc., 259 F. Supp. 2d 250, 267 & n.12 (S.D.N.Y. 2003) (the Second Circuit has long "disfavored" the continuing violation doctrine); SEC v. Caserta, 75 F. Supp. 2d. 79, 80 (E.D.N.Y. 1999) (refusing to adopt the doctrine in an SEC enforcement action).  Moreover, any such argument by the SEC is unavailing because the SEC does not allege that the effect on subsequent financial statements is anything other than the continued ill effects of the initial violation. New York v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650, 660 (W.D.N.Y. 2003) (the continuing violation doctrine requires continuing unlawful acts, not continual ill effects from a single violation).

The SEC fails to make any specific factual allegations regarding how Mr. Wovsaniker concealed the alleged fraud or even how long it was concealed.  The SEC refers to five "affirmative steps" of alleged concealment by the defendants, four of which do not even name Mr. Wovsaniker.  Compl. ¶ 185.  The other generic references in that section of the Complaint to the defendants' alleged involvement in the transactions, as well as the allegation that Mr. Wovsaniker "misrepresented or omitted material information about the transactions" in discussions with Ernst & Young, Compl. ¶ 185, fail to meet the above-described tests with respect to Rule 9(b).  General allegations of fraud are insufficient to demonstrate that a particular act is self-concealing.  Jones II, 476 F. Supp. 2d at 382 (a fraud is self-concealing if "the defendant does only what is necessary to perpetrate the fraud, and that alone makes the fraud unknowable") (quoting Long v. Abbott Mortgage Corp., 459 F. Supp. 108, 120 (D. Conn. 1978).

The SEC also makes no factual allegations showing that anyone concealed the fraud after AOL's announcement in August 2002 that it was reviewing its advertising transactions and its announcement in October 2002 that it would restate its financial statements for the quarters ended September 30, 2000 through June 30, 2002.  Compl. ¶ 7.  Interestingly, at the same time that the SEC argues the defendants fraudulently concealed the alleged misconduct, the SEC asserts that this case is related to private plaintiff litigation that was brought in the weeks following the July 2002 Washington Post articles.  Exhibit 10 to Topetzes Declaration (AOLTW 2002 10-K filed on March 28, 2003).  The SEC gives no explanation justifying its inability to bring suit in a timely manner when private plaintiffs did.  With all of its pre-litigation investigatory powers, it is incredible that the SEC could not discover facts that private plaintiffs could.

        **(b)**        **The SEC fails to allege that it did not discover the causes of action within the limitations period**

The SEC fails to allege that it did not discover the asserted causes of action until sometime within five years of bringing the claim. For purposes of fraudulent concealment, discovery occurs when the plaintiff has notice of a potential claim. <u>131 Main Street Assocs. v. Manko</u>, 179 F. Supp. 2d 339, 348 (S.D.N.Y.), <u>aff'd</u> 54 Fed. Appx. 507 (2d Cir. 2002). Put another way, the SEC discovers the alleged fraud when it "ha[s] learned enough facts to enable it, through further investigation, to sue within five years." <u>SEC v. Fisher</u>, No. 07 C 4483, 2008 U.S. Dist. Lexis 38738, at *14 (N.D. Ill. May 13, 2008).

The SEC was on inquiry notice well within the limitations period. By at least early May 2002, the SEC began its investigation of AOL's accounting practices.[16] Mr. Wovsaniker testified before the SEC staff with respect to two related investigations of AOL counterparties - Homestore and PurchasePro - in June 2002 and July 2002, respectively. Mr. Wovsaniker's testimony in those matters was focused on the SEC's inquiries into allegedly fraudulent "round-trip" transactions involving those companies and AOL. In its December 2005 complaint against AOL, the SEC alleged that AOL violated the federal securities laws with respect to transactions

---

[16]    In a November 2002 letter to AOL's outside counsel, the SEC staff conducting the investigation asserted the transactions it was requesting information about (including Worldcom, Hewlett-Packard, and Veritas, all of which are now pled in the Complaint) were "materially similar to the transactions the staff had been questioning since [the SEC's] investigation had begun in May [2002]." Exhibit 11 to Topetzes Declaration (Letter from J. Coffman to G. Bruch and F.W. Peters, Counsel to AOL, Re: In the Matter of AOL Time Warner Inc. File No. HO-9429, at 2 (Nov. 15, 2002) ("Coffman letter")). Given that the SEC had both "knowledge" and "possession" of the Coffman letter and that the contents of the letter are directly relevant to the SEC's investigation of AOL and the transactions alleged in the Complaint, the Court may therefore take judicial notice of the Coffman letter. <u>See</u> <u>supra</u>, note 2.

with Homestore and PurchasePro, in addition to the transactions that form the basis of the Complaint against Mr. Wovsaniker and the other defendants.[17]

In July 2002, the Washington Post published articles describing alleged accounting irregularities in the Sun Microsystems, Wembley and Ticketmaster transactions, among others.[18] Compl. ¶ 185. See Exhibit 12 to Topetzes Declaration ("Unconventional Transactions Boosted Sales; Amid Big Merger, Company Resisted Dot-Com Collapse," The Washington Post, July 18, 2002 at A1); Exhibit 13 to the Topetzes Declaration ("Creative Transactions earned Team Rewards," The Washington Post, July 19, 2002 at A1); Exhibit 14 to the Topetzes Declaration ("Unorthodox Partnership Produced Financial Gains; Deals Allowed AOL, PurchasePro.Com to Boost Revenue," The Washington Post, July 19, 2002 at A17). The SEC then issued a Formal Order of Private Investigation with respect to AOL in late July 2002 styled "In the Matter of AOL Time Warner Inc. (HO-09429),"[19] and, in August, 2002, AOL disclosed in its second-quarter Form 10-Q that it was reviewing its advertising transactions.[20] See Exhibit 15 to Topetzes Declaration (AOL June 30, 2002 Form 10-Q filed Aug. 14, 2002 at 51).

Subsequently, AOL announced in October 2002 that it would restate its financial statements for the quarters ended September 30, 2000 through June 30, 2002. Compl. ¶ 7;

---

[17]    Exhibit 6 to Topetzes Declaration (Time Warner Complaint).

[18]    The Court may take judicial notice of the fact of publication and the content of newspaper articles and other press reports on motion to dismiss, whether or not they are not referenced in the Complaint. See e.g., In re Alstom SA Sec. Litig., 406 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) (citing Conduit v. Dunne, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004); See supra note 4.

[19]    The Court may take judicial notice of an official record of an administrative agency under Federal Rule of Evidence 201(b). See In re Intelligroup Sec. Lit., 527 F. Supp. 2d 262, 274 (D.N.J. 2007) (taking notice of SEC no-action letter); See supra note 4.

[20]    The Court may take judicial notice of the Company's periodic filings with the SEC. See Roth v. Metal Mgmt., Inc., 489 F.3d 499 (2d Cir. 2007); See supra note 4.

Exhibit 16 to Topetzes Declaration (AOL Form 8-K filed Oct. 23, 2002). AOL filed these restatements with the SEC in January 2003. Compl. ¶ 7. In March 2003, AOL filed its 2002 Form 10-K with the SEC in which it reported that the SEC staff had reached a preliminary view that the Company's accounting for BAG should be adjusted. AOL also warned that further restatements may be necessary. See Exhibit 10 to Topetzes Declaration (AOL 2002 Form 10-K filed Mar. 28, 2003). More than two years later, in March 2005, the SEC filed a complaint against AOL in which it raised allegations relating to all of the transactions now at issue. Exhibit 6 to Topetzes Declaration (Time Warner Complaint). Finally, in March 2006, the SEC provided Mr. Wovsaniker with a formal Wells Notice regarding its claims against him. Exhibit 8 to Topetzes Declaration.

The SEC has provided no explanation for this inexcusable delay. The SEC does not get the benefit of a delayed limitations period when it discovered the nature of the claim within the limitations period. See Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 36-37 (2d Cir. 2002) (plaintiff must show that he did not discover the nature of the claim within the limitations period); Litle v. Arab Bank, PLC, 507 F. Supp. 2d 267, 278 n.11 (E.D.N.Y. 2007) (fraudulent concealment does not apply when plaintiffs discovered the cause of action with several months left of the limitations period during which plaintiffs could file suit); Banushi v. City of New York, CV-05-1805 (CPS), 2006 U.S. Dist. Lexis 70414, at *12 n.5 (E.D.N.Y. Sept. 28, 2006), cert. denied, 128 S. Ct. 2433 (2008) (fraudulent concealment did not apply when plaintiffs discovered cause of action within limitations period). The SEC plainly had enough facts to complete its inquiry within the limitations period. Even without the wave of news regarding AOL's accounting, the Company's announcement of a possible restatement in 2002 provided sufficient notice of potential claims. SEC v. Miller, Civ. No. 1:04-CV-1655-JEC, 2006 U.S.

Dist. LEXIS 56413, at *37 (N.D. Ga. July 31, 2006). The statute of limitations does not "await appellant's leisurely discovery of the full details of the alleged scheme." Klein v. Bower, 421 F.2d 338, 343 (2d Cir. 1970). The SEC provides no justification for its failure to bring suit against Mr. Wovsaniker in the more than six years following the subject transactions, during which it brought suit against AOL, other companies and even other individuals at AOL in a timely manner. See e.g., Exhibit 6 to Topetzes Declaration (Time Warner Complaint).

(c) **The SEC fails to allege that it exercised due diligence during the period of time it wishes to delay the statute of limitations**

The SEC makes no factual allegations that it acted with due diligence during the period of time it wishes to suspend the statute of limitations. It fails to explain how it was able to file suit against AOL within the five-year limitations period, but was unable to file against these individual defendants until three years later based on the ***same allegations.*** Moreover, the SEC failed to allege adequately that it proceeded with due diligence when it provided a formal Wells Notice to Mr. Wovsaniker in March 2006 but did not file its Complaint until more than two more years later. In re Adelphia Comm'cns Corp. Sec. & Derivative Litig., No. 03 MDL 1529 (LMM), 2005 U.S. Dist. LEXIS 10349, at *48 (S.D.N.Y. May 31, 2005) (action was untimely, in part, when plaintiffs waited several months after investigation to file suit).

* * *

The SEC fails to provide factual allegations showing each element of fraudulent concealment. It does not allege sufficiently that Mr. Wovsaniker concealed the true nature of the alleged fraud, nor does it allege adequately that it did not discover the alleged fraud during the limitations period. Finally, it fails to allege that it exercised due diligence in its investigation of the matter and therefore fails to plead sufficiently that the doctrine of fraudulent concealment

34

applies to this matter. Accordingly, the SEC's requests for civil monetary penalties, a permanent bar against acting as an officer or director of a publicly-traded company, and a permanent injunction against Mr. Wovsaniker must be dismissed as time-barred.

### 4.    The Tolling Agreement Affected Only Mr. Wovsaniker's Ability to Assert the Statute of Limitations Defense and Did Not Suspend the Limitations Period

Mr. Wovsaniker entered into a tolling agreement with the SEC in October and December 2006. The time period in the final inclusive tolling agreement, which was drafted by the SEC, ran from January 12, 2006 to January 31, 2007. The agreement, which the SEC incorporated by reference into its Complaint, Compl. ¶ 190, states:

> 1. [A]ny statute of limitations applicable to the filing of a civil enforcement action (the "proceeding") against Mark Wovsaniker or any other action or proceeding brought by or on behalf of the Commission or to which the Commission is a party arising out of the investigation ("any related proceedings"), including any sanctions or relief that may be imposed therein, is tolled for the period beginning on January 12, 2006 and ending at midnight on January 31, 2007 (the "tolling period"); [and]
>
> 2. Mark Wovsaniker and any of his agents or attorneys will not assert that the Commission's failure to commence the proceeding or any related proceedings during the tolling period gives him any grounds for (a) asserting any statement of limitations as defense to the proceeding or any related proceedings, or any sanctions or relief to be imposed therein, or (b) raising in any way any statute of limitations or any failure to commence the proceeding or any related proceedings during the tolling period as a defense to the proceeding or any related proceedings or to avoid or reduce any sanctions or relief to be imposed therein; . . .

See Exhibit 9 to Topetzes Declaration.

When Mr. Wovsaniker agreed to the terms of the tolling agreement, he relinquished only his right to raise the statute of limitations defense during the time period specified in the agreement. The tolling agreement obviously does not establish the meaning of the word "toll" in the first paragraph. Nevertheless, the language of the agreement is clear and unambiguous based

on rational interpretation and the ordinary meaning of the words.  Tolling is logically defined as the taking away of a right.  See BLACK'S LAW DICTIONARY 1495 (7th ed. 1999).  In this case, Mr. Wovsaniker agreed to the taking away of his right to a defense.  This interpretation is sensible when the first and second paragraphs of the agreement are interpreted together.  Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 17 (2d Cir. 2001) (contract language should not be interpreted in isolation but should be interpreted as part of the instrument as a whole).

If "toll" is not read as an abrogation of the right to raise a defense, then the second paragraph becomes redundant.  See United States v. Int'l Bhd. of Teamsters, 970 F.2d 1132, 1136 (2d Cir. 1992) (court must avoid an interpretation of a contract that renders one of the provisions superfluous); Camico Mut. Ins. Co. v. Citizens Bank, Civ. No. 05 C 7270, 2006 U.S. Dist. LEXIS 27295, at *6-7 (N.D. Ill. Apr. 12, 2006), aff'd 474 F.3d 989 (7th Cir. 2007) (meaning of the word "toll" should be interpreted by reference to the surrounding language). Thus, the first paragraph outlines only the time period during which the agreement is in effect, while the second paragraph delineates the terms of the agreement.  Nothing in the tolling agreement discusses an extension of the time to file suit or refers to the suspension of the limitations period. See Bendik v. Credit Suisse First Boston, No. 02 Civ. 955 (CBM), 2004 U.S. Dist. LEXIS 5750, at *6 (S.D.N.Y. Apr. 5, 2004) (tolling agreement says that time to file suit "is extended"); United States v. Timmons Corp., Civ. No. 1:03-CV-00951 (RFT), 2006 U.S. Dist. LEXIS 7642, at *44 (N.D.N.Y. Feb. 8, 2006) (agreements stated that the "statute of limitations would not run until the last date stated in the agreement").  In addition, the SEC's request for an extension of the first tolling agreement period belies any argument that the tolling agreement suspended the statute of limitations indefinitely because, under such theory, an extension would have been unnecessary.

Even if the tolling agreement suspended the five-year limitations period, the SEC's Complaint is still untimely. In its Complaint, the SEC identifies transactions occurring in 2000 and 2001 and public filings and statements in which allegedly false statements were made through January 7, 2002. Compl. ¶ 31. Under the five-year limitations period, the claims expired at the latest on January 7, 2007. If the SEC gets the benefit of a one-year and 18-day suspension, the claims expired on January 25, 2008, which is almost four months before the SEC filed this lawsuit. Alternatively, if the SEC gets the benefit of a suspension, it may only raise claims that accrued after May 1, 2002. All of the "various public statements" occurred prior to that date, and the associated claims are therefore barred. Compl. ¶ 31.

The tolling agreement does not change the fact that the SEC waited too long to file this Complaint, and its claims are now barred by the statute of limitations.

## IV.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

K&L GATES LLP

By:          _____/s/ Stephen G. Topetzes_____
             Stephen G. Topetzes, Esq. (ST-4145)(admitted pro hac vice)
             Erin Ardale Koeppel, Esq. (EK-3460) (admitted pro hac vice)
             K&L GATES LLP
             1601 K Street, N.W.
             Washington, D.C. 20006
             (202) 778-9000
             (202) 778-9100 (fax)
             stephen.topetzes@klgates.com
             erin.koeppel@klgates.com

Attorneys for Defendant Mark Wovsaniker

Dated: September 5, 2008

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | 08 Civ. 4612-SWK |
| | : | ECF Case |
| **JOHN MICHAEL KELLY, STEVEN E.** | : | |
| **RINDNER, JOSEPH A. RIPP, and MARK** | : | |
| **WOVSANIKER,** | : | |
| | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I, Stephen G. Topetzes, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

I am a partner at the law firm K&L Gates LLP, attorneys for Defendant Mark Wovsaniker.

On September 5, 2008, I served a true and correct copy of the foregoing Memorandum of Law in Support of Defendant Mark Wovsaniker's Motion to Dismiss the Complaint in the above-captioned matter on counsel of record via the Court's ECF System.

Executed on September 5, 2008.

                                     _____/s/ Stephen G. Topetzes_____
                                     Stephen G. Topetzes, Esq. (ST-4145) (admitted pro hac vice)
                                     Erin Ardale Koeppel, Esq. (EK-3460) (admitted pro hac vice)
                                     K&L GATES LLP
                                     1601 K Street, N.W.
                                     Washington, D.C. 20006
                                     Phone:  202-778-9000
                                     Fax:  202-778-9100
                                     stephen.topetzes@klgates.com
                                     erin.koeppel@klgates.com