371A

```
                                                              1

             UNITED STATES DISTRICT COURT

             SOUTHERN DISTRICT OF NEW YORK

   - - - - - - - - - - - - - - - x

   SECURITIES AND EXCHANGE         :

   COMMISSION,                     :

              Plaintiff,           :

         vs.                       :  08 Civ. 4612-CM

                                   :  (ECF Case)

   JOHN MICHAEL KELLY, STEVEN E.   :

   RINDNER, JOSEPH A. RIPP, and    :

   MARK WOVSANIKER,                :

                                   :

              Defendants.          :

   - - - - - - - - - - - - - - - x


                 Washington, D.C.

            Wednesday, December 23, 2009


              VIDEOTAPED DEPOSITION OF

                GARRET G. RASMUSSEN
```

Page 14

1  Q. And did there come a time in the late
2  1990s when you represented a company called
3  MovieFone?
4  A. Yes.
5  Q. Can you just tell me briefly a little bit
6  about MovieFone?
7  A. MovieFone was a company that provided
8  reserved seats at movie theaters so that people
9  could call in advance, make sure that they could
10 have a seat at the movie before they actually went
11 out of their house or apartment and went to the
12 movie theater.
13 Q. And can you tell me when you began
14 representing MovieFone?
15 A. It was in the late -- mid -- mid to late
16 1990s. It was the time that Pearl Jam had
17 complained about Ticketmaster's conduct to the
18 antitrust division.
19 Q. Okay, and if you could tell me how
20 Ticketmaster ties into MovieFone's business, if at
21 all?
22 A. Yeah, MovieFone entered into a joint

Page 15

1  venture with a company called Pacer CATS. Pacer
2  CATS had been owned by Wembley. At the time the
3  joint venture was entered into, Wembley was the
4  parent of Pacer CATS. Ticketmaster also, as you
5  know, sells tickets and is interested in all sorts
6  of ticket sales, so MovieFone considered
7  Ticketmaster to be a rival. Ticketmaster acquired
8  Pacer CATS from Wembley after the joint venture was
9  formed and proceeded to poison the joint venture by
10 disrupting the performance of Pacer CATS.
11 Q. Okay, and let's take a step back because I
12 didn't actually get the sort of foundational stuff
13 about MovieFone. Tell me who you worked with at
14 MovieFone.
15 A. Henry Jarecki, who was the chairman and
16 father of Andrew Jarecki. Andrew Jarecki was the
17 president and CEO, and Adam Slutsky was the CFO, and
18 it was those three people that I interacted with.
19 Q. And did there come a time when MovieFone
20 entered into some sort of business arrangement with
21 AOL?
22        MR. BENNETT: I'm just going to interject

Page 16

1  an objection here on behalf of AOL and Time Warner.
2  You're obviously welcome to answer the question with
3  any public information you have. I'd like you to
4  not answer to the extent your answer would reflect
5  attorney-client communications or your own attorney
6  work product on behalf of AOL --
7        THE WITNESS: Yeah.
8        MR. BENNETT: -- or Time Warner.
9        THE WITNESS: And I'll try to pay
10 attention to that, Edward. Please object if --
11 because I may not be paying as close attention as I
12 should.
13        MR. BENNETT: You've been doing a very
14 good job.
15        THE WITNESS: Okay, okay, okay.
16        MR. BENNETT: I just wanted to --
17        THE WITNESS: Thanks.
18 BY MR. BOWERS:
19 Q. Okay. So actually, let's take a different
20 step back and talk about Pacer CATS for a moment.
21 If I got it correct -- if I got your -- if I
22 understood your testimony correctly, what you said

Page 17

1  earlier is that MovieFone entered into a joint
2  venture with Wembley.
3  A. No, with Pacer CATS.
4  Q. I'm sorry, that's why I want to make sure
5  --
6  A. Yes.
7  Q. -- I had it right.
8  A. With Pacer CATS. Pacer CATS was owned by
9  Wembley.
10 Q. Okay.
11 A. So Wembley sold its interests subsequently
12 to Ticketmaster, so we found our joint venture
13 partner to be owned by our biggest rival. We could
14 have lived with that but for the conduct of
15 Ticketmaster after that.
16 Q. Okay, and let's -- again, let's step back
17 a little bit before Ticketmaster comes into the
18 picture and acquires the joint venture from Wembley.
19 A. Right. No, not acquired the joint
20 venture.
21 Q. Pacer CATS from Wembley.
22 A. Right.

372

AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Re: AAA Case No. 13-181-00952-94
MOVIEFONE, INC., PROMOFONE INC.,
AND THE TELETICKETING CO. L.P.,
VS
PACER CATS CORPORATION

## AWARD OF THE ARBITRATORS

We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into by the above-named parties and dated February 14, 1992, and having been duly sworn and having duly heard the proofs and allegations of the parties, AWARD as follows:

### I.

### Declaratory Relief

1. It is declared that:

    (a) On February 14, 1992 Pacer CATS Corporation ("Pacer CATS") and Promofone Inc. (later known as MovieFone, Inc. and referred to herein as "MovieFone") entered into an agreement (the "Agreement") pursuant to which, among other things, an entity known as "TTC" was created.

    (b) The Agreement contained an arbitration clause requiring disputes arising between the parties to be submitted to arbitration by a panel of three arbitrators under the

9AOL050048
CONFIDENTIAL TREATMENT
REQUESTED


Rasmussen
EXHIBIT NO. 3
KY 12/23/05

       laws of the State of New York in accordance with the rules of the American Arbitration Association.

  (c)  That clause has been properly invoked in connection with the disputes which are the subject of this Award and arbitral jurisdiction exists to make the determinations and Award herein.

2.  It is declared that the Agreement did not establish a partnership or joint venture between Pacer CATS and MovieFone.

3.  It is declared that:

  (a)  At the time the Agreement was entered into, Pacer CATS was a subsidiary of Wembley, plc ("Wembley").

  (b)  Wembley unconditionally guaranteed the full and timely performance by Pacer CATS of its obligations of payment and performance under the Agreement.

4.  It is declared that:

  (a)  The Agreement provided that the activities contemplated by its terms would be carried out in two stages as defined in the Agreement.

  (b)  The First Stage was never concluded and its requirements were never waived by TTC.

9AOL050049
CONFIDENTIAL TREATMENT
REQUESTED

      (c) The Threshold Return was never realized by TTC, and the Second Stage Deadline never expired.

5. It is declared that:

    (a). The Agreement by its terms was binding on Pacer CATS and its successors and assigns.

    (b) Pacer/CATS/CCS, which is a joint venture created by agreement dated March 4, 1994 between Ticketmaster Corporation and Wembley plc, is a "successor" to Pacer CATS as that term is used in the Agreement.

6. It is declared that:

    (a) Respondent materially breached the Agreement in the manner and to the extent set forth in the Statement of Reasons upon which this Award is based, commencing in approximately December 1993 and continuing thereafter.

    (b) Respondent is liable for damages to Claimant MovieFone for such breach in the amounts set forth below and detailed in the accompanying Statement of Reasons.

7. It is declared that Respondent is not liable to Claimant for punitive damages.

9AOL050050
CONFIDENTIAL TREATMENT REQUESTED

II.

Monetary Awards

1. As more fully set forth in the Statement of Reasons, Respondent is liable to Claimant MovieFone for general damages on account of Respondent's breach of the Agreement, in the aggregate amount of $7,567,250.

2. As more fully detailed in the Statement of Reasons, Respondent is liable to Claimant MovieFone for damages incurred by MovieFone in covering the failed performance of Respondent and as compensation for reasonably ascertainable loss of profits in the aggregate amount of $15,184,000.

3. Therefore, within thirty (30) days of the date of this Award, Respondent shall pay to Claimant MovieFone as damages herein the total sum of $22,751,250.

4. The damages awarded herein shall not bear any pre-award interest but shall bear interest on any unpaid amounts thereof at the legal rate for judgments from time to time obtaining under New York law, commencing thirty days from the date of this Award.

5. Each party shall bear the costs of its own attorneys' fees and the costs and disbursements of its experts and claims for the recovery of such amounts are in all respects denied.

9AOL050051
CONFIDENTIAL TREATMENT
REQUESTED

### III.

### Injunctive Award

1. Pacer CATS and its successors and assigns and all persons or entities acting in concert with them or any of them to whom actual notice of this Award may come are hereby enjoined during the period commencing on the date of this Award and ending at 12:00 o'clock midnight (E.S.T.) on December 31, 1999, from:

   (a) disabling or otherwise rendering inoperable the Teleservices equipment or Network Equipment or otherwise interfering with or causing another to interfere with the provision of Teleservices at TTC teleticketing theaters, including pass-through theaters; and

   (b) entering into agreements to provide or providing Teleservices or Network Services to theaters in Markets and Additional Markets other than those theaters to which Teleservices were provided by Pacer CATS or TTC as of April 14, 1994.

2. All other claims for equitable relief asserted by Claimants are denied.

### IV.

### Counterclaims

All counterclaims asserted by Respondent are denied and dismissed.

-5-

9AOL050052
CONFIDENTIAL TREATMENT
REQUESTED

## V.

### Other Matters

1. All capitalized terms used herein that are defined in the Agreement shall have the meanings attributed to them in the Agreement.

2. This Award is accompanied by a Statement of Reasons upon which it is based pursuant to paragraph 6 of the Supplementary Procedures for Large, Complex Disputes and such Statement of Reasons constitutes the findings of fact and conclusions of law of the Arbitrators. Such findings and conclusions are incorporated by reference herein and made a part of this Award as if they were set forth at length herein.

3. All pending motions for relief of any kind, including, without limitation, motions seeking the exclusion or striking of evidence or the drawing of specified inferences, are denied.

4. All claims of the parties, not otherwise specifically addressed herein, are denied. All contentions of the respective parties which are not specifically ruled upon in this Award and the Statement of Reasons have been considered by the Arbitrators and are rejected.

5. This Award is in full settlement of all claims and counterclaims submitted by the parties for arbitration.

9AOL050053
CONFIDENTIAL TREATMENT
REQUESTED

6. The compensation of the Neutral Arbitrator totaling TWO HUNDRED TWENTY NINE THOUSAND TWO HUNDRED TWENTY FIVE DOLLARS ($229,225.00), shall be borne equally by the parties.

7. The administrative fees and expenses of the American Arbitration Association totaling THIRTY FIVE THOUSAND THIRTEEN DOLLARS AND SEVENTEEN CENTS ($35,013.17), shall be borne equally by the Parties. Therefore, Pacer CATS shall pay to MovieFone the sum of FIVE HUNDRED DOLLARS ($500.00), representing that portion of said fees and expenses previously advanced by Pacer CATS to the Association over and above their one-half share.

_____ 7/23/97
Louis A. Craco, Esq./DATED

_____ 7/23/97
Honorable Bentley Kassal/DATED

_____ 7/23/97
B. Lance Sauerteig, Esq./DATED

9AOL050054
CONFIDENTIAL TREATMENT
REQUESTED

STATE OF NEW YORK  )
                   )ss.:
COUNTY OF NEW YORK )


I, Louis A. Craco, Esq., do hereby affirm upon my oath as
Arbitrator that I am the individual described in and who executed
this instrument which is my Award.

7/23/97
(DATED)                                   _Louis A. Craco_
                                          (SIGNATURE)


STATE OF NEW YORK  )
                   )ss.:
COUNTY OF NEW YORK )


I, Honorable Bentley Kassal, do hereby affirm upon my oath as
Arbitrator that I am the individual described in and who executed
this instrument which is my Award.

7/23/97
(DATED)                                   _Bentley Kassal_
                                          (SIGNATURE)


STATE OF NEW YORK  )
                   )ss.:
COUNTY OF NEW YORK )


I, B. Lance Sauerteig, Esq., do hereby affirm upon my oath as
Arbitrator that I am the individual described in and who executed
this instrument which is my Award.

7/23/97
(DATED)                                   _B. Lance Sauerteig_
                                          (SIGNATURE)

-8-

9AOL050055
CONFIDENTIAL TREATMENT
REQUESTED

373

```
                                                                      1
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3    - - - - - - - - - - - - - - x
 4    SECURITIES AND EXCHANGE        :
 5    COMMISSION,                    :
 6              Plaintiff,           :
 7         vs.                       :   08 Civ. 4612-CM
 8                                   :   (ECF Case)
 9    JOHN MICHAEL KELLY, STEVEN E.  :
10    RINDNER, JOSEPH A. RIPP, and   :
11    MARK WOVSANIKER,               :
12                                   :
13              Defendants.          :
14    - - - - - - - - - - - - - - x
15
16              Washington, D.C.
17              Wednesday, December 23, 2009
18
19              VIDEOTAPED DEPOSITION OF
20              GARRET G. RASMUSSEN
21
22
```

**Page 22**

1  things for the record, I'd just note for the record
2  I sent a letter last night to counsel for the SEC,
3  counsel for the witness and counsel for AOL
4  outlining Mr. Kelly's reservation of the rights.
5  Should there be a waiver of the privilege today,
6  Mr. Kelly reserves the right to call Mr. Rasmussen
7  in order to go over with him any privileged
8  materials that might be produced subsequent to such
9  waiver.
10       MR. DRIMMER:  And we will note for the
11  record that we're joining in the reservation of
12  Mr. Kelly for Mr. Rindner.
13       MR. DUNCAN:  And just so everyone knows,
14  our position is Mr. Rasmussen's available today for
15  seven hours of deposition and we'll await further
16  court order for any further testimony.
17       MR. BENNETT:  Just so we have a completely
18  level playing field, and I hope this will be the
19  last time I'll have to talk at length on the record,
20  just so everybody understands the ground rules so if
21  there's any -- there are any questions later in the
22  day from the defendants for Mr. Rasmussen, AOL for

**Page 23**

1  seven years has protected the attorney-client
2  privilege and the core work product of its attorneys
3  from disclosure, and we continue to keep to that
4  position.  We're more than happy to have
5  Mr. Rasmussen testify regarding communications he
6  had with third parties, but we're not inclined to
7  allow him to testify about his thoughts and
8  impressions as an attorney regarding documents or
9  strategies that were played.  We're also not
10  inclined to allow him to testify regarding any
11  communications he had with any persons internal to
12  his client, AOL or MovieFone or Time Warner.
13       MR. TOPETZES:  I want to note on the
14  record on behalf of Mr. Wovsaniker that we join with
15  counsel for the other defendants in reserving our
16  client's rights with respect to these privilege
17  issues.  I also want to note an administrative
18  matter with respect to today's deposition that,
19  John, I assume we have the same stipulation that
20  we've had in prior depositions that an objection for
21  one defendant is deemed to be an objection by all.
22       MR. BOWERS:  Yes, we do.

**Page 24**

1       MS. LYNCH:  And counsel for Mr. Rupp joins
2  in the reservation of rights as well.
3       BY MR. BOWERS:
4    Q.   Is that everybody?  Great.  Okay,
5  Mr. Rasmussen, I apologize for the delay and let's
6  continue.  Can you tell me, with respect to Exhibit
7  1, which my understanding is Wembley's guarantee of
8  Pacer CATS's obligations in the joint venture that
9  you described between MovieFone and Pacer CATS, did
10  there come a time when you communicated your
11  understanding of this document to Wembley?
12    A.   Wembley's counsel, yes.
13    Q.   Tell me about that if you would please.
14    A.   I told Wembley's counsel, a lawyer at
15  Dechert Price, that this guarantee obligated Wembley
16  to pay the full arbitration award that we had gotten
17  against Pacer CATS.
18    Q.   Okay, and let's take a step back.  We seem
19  to be going backwards and forwards.
20    A.   That's all right.
21    Q.   And I apologize for that.
22    A.   Yeah.

**Page 25**

1    Q.   But I'm somewhat trying to react to the
2  testimony that I get.  It sounds like you ultimately
3  ended up representing MovieFone in an arbitration
4  proceeding --
5    A.   Yes.
6    Q.   -- of some sort?  Can you tell me about
7  that?
8    A.   Well, we brought an arbitration action
9  against Pacer CATS pursuant to our contract with --
10  the joint venture contract with Pacer CATS, and that
11  was arbitrated in New York City over 81 days or so,
12  and we won a unanimous judgment for about $22
13  million, which was subsequently confirmed by the New
14  York Supreme Court.
15    Q.   And tell me what your understanding as you
16  communicated it to third parties was of the impact
17  of that arbitration award on Wembley.
18       MR. TUTTLE:  Objection to form and
19  foundation.
20    A.   We -- after winning that award and after
21  having it confirmed, I approached Wembley's counsel
22  and said that we wanted -- we -- we interpreted this