**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- X

**SECURITIES AND EXCHANGE COMMISSION**          :

                 **Plaintiff,**          :

                 **- vs -**          :    **08 Civil Action No: 4612 (CM)**
                                            **ECF Case**

**JOHN MICHAEL KELLY,**          :
**STEVEN E. RINDNER, and**
**MARK WOVSANIKER**          :

               **Defendants.**          :

-------------------------------------------------------------------------- X

## DEFENDANT MARK WOVSANIKER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

K&L GATES LLP
Stephen G. Topetzes (ST-4145) (admitted pro hac vice)
Glenn R. Reichardt (GR-2394) (admitted pro hac vice)
Erin Ardale Koeppel (EK-3460) (admitted pro hac vice)
Bethany M. Nikfar (BN-9693) (admitted pro hac vice)
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9000

*Attorneys for Defendant Mark Wovsaniker*

**Table of Contents**

**Page**

I.     THE SEC MISSTATES APPLICABLE LAW................................................ 1

    A.    The SEC has misstated the legal standards for misrepresentation and scheme
          liability under Section 10(b), Rule 10b-5 and Section 17(a)................................. 1

        1.    Mr. Wovsaniker cannot be held liable for a misstatement........................ 1

        2.    The SEC cannot use allegations of scheme liability to assert liability
             for misstatements Mr. Wovsaniker did not make. .................................... 2

    B.    The SEC has misstated the legal standard for aiding and abetting liability............ 4

II.    THE SEC HAS FAILED TO IDENTIFY SPECIFIC ADMISSIBLE EVIDENCE
      SUPPORTING ITS ARGUMENTS AGAINST SUMMARY JUDGMENT. .................. 4

    A.    The SEC improperly seeks to obscure the uncontested nature of the facts
          cited by Mr. Wovsaniker........................................................................... 4

    B.    The SEC has directly violated Magistrate Judge Gorenstein's order by
          referring to facts that are irrelevant and inadmissible. ................................ 5

    C.    The SEC has not addressed Mr. Wovsaniker's primary factual arguments............ 6

        1.    The SEC has failed to identify evidence to support its lying to
             auditors claim. .......................................................................... 6

        2.    The SEC has disregarded sworn testimony of AOL Network
             Operations executives who directly contradicted the SEC's allegations
             that Mr. Wovsaniker was aware that discounts had been traded for
             advertising. ............................................................................... 8

        3.    The SEC has failed to address the fundamental inconsistency between
             its claims and Mr. Wovsaniker's actions with respect to AOL's
             transactions with Telefonica, Homestore and PurchasePro. ...................... 9

        4.    There is no evidence that Mr. Wovsaniker acted with scienter. .............. 10

    D.    The SEC has grossly distorted certain facts....................................................... 10

    E.    The SEC has mischaracterized the contentions of Defendants' accounting
          experts ................................................................................................. 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ........................................... 2

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................................................... 8

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)............................................... 3

*In re Parmalat Sec. Litigation*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005)........................... 3, 4

*SEC v. Espuelas*, 699 F. Supp. 2d 655 (S.D.N.Y. 2010)................................................... 1, 2

*SEC v. KPMG*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006).................................................... 2, 3

*SEC v. Kearns*, 691 F. Supp. 2d 601 (D.N.J. 2010) ....................................................... 3, 4

*SEC v. Lee*, No. 08-9961, 2010 WL 2594280 (S.D.N.Y. June 18, 2010).......................... 3

*SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342 (D.N.J. 2009) ..................................... 3, 4

*SEC v. PIMCO Advisors Fund Mgmt.*, 341 F. Supp. 2d 454 (S.D.N.Y. 2004) ................. 4

*Santos v. Murdock*, 243 F.3d 681 (2d Cir. 2001) ................................................................ 9

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) .............................................. 2

## FEDERAL STATUTES

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-
203, 124 Stat. 1376 (2010) .......................................................................................... 4

In its Opposition to Mr. Wovsaniker's Motion for Summary Judgment ("Opp'n Mem."), the SEC eschews its burden of demonstrating disputed issues of material fact concerning Mr. Wovsaniker's motion and instead tries to conceal its lack of evidence against him by relying upon innuendo and by asserting repeatedly and unspecifically that it has "forecast sufficient evidence" to survive summary judgment.  The SEC ignores or twists legal precedent, offers conclusory, unsupported, and inadmissible "facts" that do not address the arguments made by Mr. Wovsaniker in the Memorandum of Law in Support of his Motion ("Initial Mem."), mischaracterizes key factual propositions, and, as detailed in Mr. Wovsaniker's Motion to Strike filed on August 9, 2010, violates Local Rule 56.1 and Your Honor's Individual Practices.

## I.   THE SEC MISSTATES APPLICABLE LAW.

### A.   The SEC has misstated the legal standards for misrepresentation and scheme liability under Section 10(b), Rule 10b-5 and Section 17(a).

#### 1.   Mr. Wovsaniker cannot be held liable for a misstatement.

The SEC concedes its lack of evidence directly linking Mr. Wovsaniker to alleged misrepresentations by never attempting to show that Mr. Wovsaniker orally made, or prepared or signed a document making, a false statement and by repeatedly acknowledging that Mr. Wovsaniker's primary role at AOL was consulting.  Opp'n Mem. at 2, 4, 10, 12, 14, 16, 21, 22; SEC Resp. to Wovsaniker Statement of Undisputed Facts ("SUF") 37.  Instead, the SEC invokes the "group pleading doctrine" and asserts that Mr. Wovsaniker "made" the alleged misstatements because the SEC has "'**alleged** facts indicating [he] was a corporate insider or affiliate with direct involvement in the daily affairs of the company.'"  Opp'n Mem. at 30 (emphasis added).

The SEC's reliance upon the "group **pleading** doctrine" is misplaced.  The doctrine has no relevance at the summary judgment stage.  See SEC v. Espuelas, 699 F. Supp. 2d 655, 660-61 (S.D.N.Y. 2010) (explaining how "group pleading is and always has been just a pleading

device"). The group pleading doctrine is "designed to aid plaintiffs at the pleading stage and prior to discovery but not to free them of their ultimate burden to link the defendant to the making of a misstatement." Id. at 660. See also In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005) (describing the group pleading doctrine as arising in response to the rigors of Rule 9(b) and noting that the doctrine is "for pleading purposes only"). Therefore, innuendo and assumptions based on Mr. Wovsaniker's corporate title are insufficient to prove securities fraud. Espuelas, 699 F. Supp. 2d at 662.

The SEC also incorrectly asserts that Mr. Wovsaniker may be primarily liable under Section 10(b) for a false statement made by another if he was "sufficiently involved in or responsible for the false statement." Opp'n Mem. at 30. In doing so, the SEC mischaracterizes the holding in SEC v. KPMG, 412 F. Supp. 2d 349 (S.D.N.Y. 2006), which provides that for primary misstatement liability to attach, the SEC must "show that the defendant was *sufficiently responsible* for the statement — in effect, *caused the statement to be made*." Id. at 375 (emphasis added). The SEC slyly omits the "caused to be made" language and asserts an "involvement" standard that has no legal basis. Opp'n Mem. at 30. A test based on "involvement" or "participation" in a misstatement has been consistently rejected by the Second Circuit. See, e.g., Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998). Indeed, in KPMG, Judge Cote noted that her test "covers a narrower scope of conduct, and therefore a smaller class of defendants, than would be implicated by the 'substantial participation' test rejected by the Second Circuit in Wright." KPMG, 412 F. Supp. 2d at 375.

> 2. The SEC cannot use allegations of scheme liability to assert liability for misstatements Mr. Wovsaniker did not make.

The SEC attempts to use scheme liability as a back door into misrepresentation liability by arguing that Mr. Wovsaniker engaged in an alleged "scheme, artifice or device" actionable

2

under Subsections (a) and (c) of Rule 10b-5.  However, to establish scheme liability, the SEC must prove that a defendant committed an inherently deceptive or manipulative act that is independent from any alleged misstatement.  See Lentell v. Merrill Lynch & Co., 396 F. 3d 161, 177 (2d Cir. 2005); In re Parmalat Sec. Litig., 376 F. Supp. 2d 472, 503 (S.D.N.Y 2005) (liability under 10b-5(a) and (c) "is not a back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5").

In KPMG, the court rejected a similar attempt by the SEC to characterize actions supporting an alleged misstatement as separate deceptive acts subject to scheme liability, holding that the SEC could only pursue aiding and abetting liability against those who did not "make" a statement.  KPMG, 412 F. Supp. 2d at 378 ("Because the core misconduct alleged is in fact a misstatement, it would be improper to impose primary liability . . . by designating the alleged fraud a manipulative device rather than a misstatement.").  Similarly, a New Jersey district court, following this District's precedents, recently held that alleged efforts by a corporate insider to hide information about transactions from the company's accountants did not constitute a separate deceptive act, but instead were "nothing more than a reiteration of the misrepresentations and omissions [claim]."  SEC v. Lucent Techs., Inc., 610 F. Supp. 2d 342, 361 (D.N.J. 2009) ("Lucent II").  As these cases make clear, at most, actions that support the making of a misstatement give rise to aiding and abetting liability.

The SEC's citations to SEC v. Lee, No. 08-9961, 2010 WL 2594280 (S.D.N.Y. June 18, 2010), and SEC v. Kearns, 691 F. Supp. 2d 601 (D.N.J. 2010), are inapposite.  Unlike the transactions here, which the SEC itself describes as "otherwise legitimate," Opp'n Mem. at 2, both Lee and Kearns involved allegations of inherently deceptive conduct separate and apart from a misrepresentation.  See Lee, 2010 WL 2594280, at *2-4 (fabrication of illegitimate broker

3

quotes); <u>Kearns</u>, 691 F. Supp. 2d at 603 (inflated bills).  Scheme liability requires transactions to

be inherently deceptive.  <u>See, e.g.</u>, <u>Parmalat</u>, 376 F. Supp. 2d at 505 (a bank that made legitimate

loans to a company, even if it "entered into the transactions knowing or even intending that [the

counterparty] would misrepresent the nature of the arrangements," was at worst liable for aiding

and abetting and could not be held liable for a scheme because the loans were legitimate); <u>SEC v.</u>

<u>PIMCO Advisors Fund Mgmt.</u>, 341 F. Supp. 2d 454, 468 (S.D.N.Y. 2004) (denying scheme

liability because deceptive market timing was not "per se a fraudulent device"); <u>Lucent II</u>, 610 F.

Supp. 2d at 360 (rejecting scheme liability because the deception only arose from a failure to

disclose the real terms of otherwise legitimate transactions).

**B.**     <u>**The SEC has misstated the legal standard for aiding and abetting liability.**</u>

    The SEC argues that the requisite state of mind for aiding and abetting liability is

recklessness.  Opp'n Mem. at 32.  The plain text of the statute and recent decisions in this

District show that actual knowledge is required.  Initial Mem. at 30.  The recently-enacted Dodd-

Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376

(2010), which modified the statute to <u>*add*</u> recklessness as a category of scienter for aiding and

abetting claims, confirms that recklessness was <u>*not*</u> embodied in the statute at the time the

alleged activities occurred.  <u>Id.</u> at § 929O.

**II.**     <u>**THE SEC HAS FAILED TO IDENTIFY SPECIFIC ADMISSIBLE EVIDENCE**</u>
        <u>**SUPPORTING ITS ARGUMENTS AGAINST SUMMARY JUDGMENT.**</u>

**A.**     <u>**The SEC improperly seeks to obscure the uncontested nature of the facts cited by**</u>
        <u>**Mr. Wovsaniker.**</u>

    As explained in the initial and reply memoranda supporting Mr. Wovsaniker's Motion to

Strike, the SEC misuses its 212-page, 617-paragraph Rule 56.1(b) Statement of Additional Facts

Precluding Summary Judgment ("SOF") to obscure the uncontested nature of the facts upon

which Mr. Wovsaniker bases his summary judgment motion.

For example, without offering any specifics, other than its conclusory claim that Mr. Wovsaniker was an "active participant" in fraud, the SEC asserts that it has "forecast sufficient evidence" to survive summary judgment on its claim that Mr. Wovsaniker aided and abetted a violation of Section 10(b), apparently inviting the Court to read its entire 212-page SOF to find that "evidence." Opp'n Mem. at 32. Similarly, with respect to its allegations that Mr. Wovsaniker aided and abetted AOL's violation of Section 13, the SEC merely notes Mr. Wovsaniker's corporate title, alleges (without citation to evidence) that he "had a direct role in providing incomplete, inaccurate and misleading information" to auditors and then asserts (again without reference to specifics) that it has "forecast ample evidence that [he] aided and abetted AOL's violations." Opp'n Mem. at 33. These tactics should not enable the SEC to escape summary judgment.

**B.      The SEC has directly violated Magistrate Judge Gorenstein's order by referring to facts that are irrelevant and inadmissible.**

On April 1, 2010, Magistrate Judge Gabriel Gorenstein granted Defendants' Motion in Limine, precluding the SEC from introducing evidence of the transactions included in AOL's Third Restatement in 2006. Docket Nos. 129 and 140. As the SEC's trial counsel acknowledged and Magistrate Judge Gorenstein observed during the April 1, 2010 hearing concerning the Motion in Limine, one consequence of the Magistrate Judge's ruling was to prevent the SEC from describing this case as involving "$1 billion" of restatements. Hr'g Tr. 20-21, 23, 24.[1] Despite this, the SEC's Opposition repeatedly references both AOL's Third Restatement and the reversal of "more than $1 billion of advertising revenue." Opp'n Mem. at 2-4, 21, 33, 34.

---

[1]      The transcript of the April 1, 2010 conference before Magistrate Judge Gorenstein is attached as Exhibit A to the Declaration of Stephen G. Topetzes, dated September 10, 2010 ("September 10, 2010 Topetzes Decl.")

These references by the SEC to matters specifically excluded by the Magistrate Judge are utterly improper and cannot be used by it to try to defeat the instant motion.

**C.     The SEC has not addressed Mr. Wovsaniker's primary factual arguments.**

Given its lack of specific evidence rebutting Mr. Wovsaniker's factual arguments, the SEC chose to disregard them, focusing instead on a convoluted patchwork of facts and arguments that do not address the key issues relevant to Mr. Wovsaniker's motion.

      1.  <u>The SEC has failed to identify evidence to support its lying to auditors claim.</u>

Mr. Wovsaniker asserts that he is entitled to summary judgment with regard to the SEC's claims that he misled or lied to auditors in violation of Rule 13b2-2 because no representative of E&Y ever testified that Mr. Wovsaniker lied to E&Y, the SEC's allegation that Mr. Wovsaniker concealed from E&Y the contingent nature of AOL advertising transactions is directly rebutted by documents and testimony from E&Y, and there is no evidence that Mr. Wovsaniker knew any of the key facts that he allegedly withheld from E&Y.  Initial Mem. at 23-29.  Instead of showing there is a genuine issue of material fact with respect to any of these matters, the SEC chose simply to ignore them and to assert that E&Y's determination that it would no longer rely upon Mr. Wovsaniker "should be enough to support a claim for lying to auditors."  Opp'n Mem. at 35. Although the SEC also asserts that it has "forecast a great volume of additional evidence that makes clear that Wovsaniker actively and repeatedly misled AOL's auditors" (<u>id</u>.), the SEC never bothers to point the Court to any of that evidence.

The decision by H. Stephen Hurst on behalf of E&Y not to rely upon Mr. Wovsaniker's <u>judgment</u> on accounting matters is not enough to support a <u>lying</u> to auditors claim.  The SEC has ignored the undisputed facts that: (1) Mr. Hurst never provided a written or oral explanation for his decision not to rely upon Mr. Wovsaniker, even when pressed to do so by Frank Caufield, a

long-time director of AOL; and (2) Mr. Hurst did not accuse Mr. Wovsaniker of dishonesty or of misleading E&Y, and instead expressed concerns about Mr. Wovsaniker's judgment, something that no one at E&Y, including Mr. Hurst, ever discussed with Mr. Wovsaniker.  Initial Mem. at 5-6.

The SEC also contorts the facts concerning Mr. Wovsaniker's 2003 reassignment within AOL.  Reassignment is not evidence of a securities law violation.  In any event, it is undisputed that Mr. Wovsaniker continued to report to AOL's Controller for several more years after his reassignment, before separating from AOL in 2007.   Initial Mem. at 6; Wovsaniker SUF 36, 89. The fact that AOL continued to employ Mr. Wovsaniker for years after Mr. Hurst questioned his judgment is strong evidence that AOL did not agree with Mr. Hurst's view and is fundamentally inconsistent with any notion that AOL had concerns about Mr. Wovsaniker's honesty or integrity.

The SEC never rebuts the copious evidence that E&Y was aware of AOL's concurrent transactions with counterparties nor does the SEC identify any evidence that Mr. Wovsaniker concealed those transactions from E&Y.[2]  Initial Mem. at 25-26.  The SEC also fails to identify facts supporting its conclusory assertions that Mr. Wovsaniker had contemporaneous knowledge of key facts that he allegedly withheld from E&Y.

For example, although the SEC alleges that Mr. Wovsaniker failed to tell E&Y that Wembley had offered to pay $23.8 million to settle a dispute with AOL without a concurrent advertising deal (Opp'n Mem. at 17), the SEC fails to point to any evidence that Mr. Wovsaniker was ever aware of a "cash only" settlement offer from Wembley nor has the SEC addressed the

---

[2]     The SEC's suggestions that Mr. Wovsaniker counseled AOL personnel to document transactions in a manner that concealed the contemporaneous or contingent nature of the relevant transactions from E&Y, Opp'n Mem. at 8, 11, 29, is flatly belied by the plain record, including E&Y's own work papers.  See, e.g., Wovsaniker SUF 75-80, 93-94, 110-113.

testimony of key witnesses who said they did not discuss with Mr. Wovsaniker their negotiations with Wembley.  Initial Mem. at 29; Wovsaniker SUF 172,178.

Given the SEC's failure to support its conclusory assertions with real facts supporting the essential elements of its lying to auditor's claim, summary judgment in favor of Mr. Wovsaniker is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (summary judgment should be granted if "the nonmoving party [fails] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof").

        2.      <u>The SEC has disregarded sworn testimony of AOL Network Operations executives who directly contradicted the SEC's allegations that Mr. Wovsaniker was aware that discounts had been traded for advertising.</u>

Mr. Wovsaniker asserts that that there is no evidence supporting the SEC's allegations that Senior Network Operations executives "repeatedly complained" to him regarding how "grossed-up" deals with Sun, Veritas, HP and Telefonica, which purportedly involved arrangements by AOL to "pay inflated prices for goods or services in exchange for online advertising revenue in the amount AOL overpaid," affected their budgets.  Initial Mem. at 31. There are no documents that suggest information regarding such "traded discounts" was communicated to Mr. Wovsaniker, and each of the Senior Network Operations executives deposed by the SEC in this case (Matt Korn, Terry Laber and Bill McGrath) testified that he never discussed "traded discounts" or "inflated prices" with Mr. Wovsaniker and never complained to Mr. Wovsaniker about transactions with the counterparties named in the Complaint.  Initial Mem. at 31.  Accordingly, there is no genuine issue of material fact regarding these matters.  The only evidence the SEC cites to rebut the abundant record in favor of Mr. Wovsaniker on this point are two snippets of 2004 investigative testimony by Mr. McGrath (concerning discussions Mr. McGrath claims he had with Mr. Wovsaniker regarding the

Network Operations budget) (Opp'n Mem. at 13) that would, in any event, be inadmissible at trial.[3]

3.   The SEC has failed to address the fundamental inconsistency between its claims and Mr. Wovsaniker's actions with respect to AOL's transactions with Telefonica, Homestore and PurchasePro.

As described in his Initial Memorandum, when Mr. Wovsaniker became aware of side deals or otherwise learned that he had not been given key facts about an AOL transaction, he raised concerns with appropriate people within the Company's finance or legal departments. Initial Mem. at 8-10. The SEC does not contest the fact that Mr. Wovsaniker was identified as a trial witness by the Government in criminal proceedings against AOL personnel or employees of counterparties to transactions with AOL. Id. See also SEC Response to Wovsaniker SUF 13, 14, 19. It was clear during those trials that certain persons at AOL withheld key information from Mr. Wovsaniker and that he took affirmative steps to ensure that transactions were properly documented and sufficiently transparent to both Company finance personnel and independent auditors. Initial Mem. at 8-10. Despite the SEC's concessions regarding these undisputed facts in its Response to Mr. Wovsaniker's SUF, the SEC does not even attempt to resolve the overwhelming contradiction between this evidence of Mr. Wovsaniker's good faith and the SEC's conclusory allegations that Mr. Wovsaniker was the architect of a fraudulent scheme.

---

[3]   Mr. McGrath's deposition testimony regarding these matters is clear. His prior investigative testimony should not be considered in connection with Mr. Wovsaniker's Motion for Summary Judgment because Mr. Wovsaniker did not have an opportunity to cross-examine Mr. McGrath during his investigative testimony. Santos v. Murdock, 243 F.3d 681, 684 (2d Cir. 2001) (on summary judgment a party cannot rely on a prior sworn statement that contradicts the person's deposition testimony because the prior statement is inadmissible hearsay that cannot be introduced at trial for the truth of the matter asserted). The SEC's misuse of investigative testimony and its inadmissibility at trial will be the subjects of a forthcoming motion in limine in the event that any part of the SEC's claims against Mr. Wovsaniker survives this motion.

9

4.      <u>There is no evidence that Mr. Wovsaniker acted with scienter.</u>

The SEC fails to address Mr. Wovsaniker's scienter arguments, apparently conceding that Mr. Wovsaniker did not have a motive to commit fraud.  Initial Mem. at 21-22.  The SEC's only discussion of scienter is a short paragraph (devoid of any citation to evidence), that begins with the conclusory statement: "Nor is scienter an issue, since there is ample evidence of Wovsaniker's knowing, active participation in the scheme."  Opp'n Mem. at 31.  The SEC then directs the Court to its Opposition to Mr. Kelly's Motion for Summary Judgment, which similarly does not cite to any evidence and does not discuss any specifics of Mr. Wovsaniker's alleged scienter.  Kelly Opp. Mem. at 33.  The SEC's failure to produce evidence of this essential element of its fraud claims is reason enough for this Court to grant summary judgment in favor of Mr. Wovsaniker.

**D.      <u>The SEC has grossly distorted certain facts.</u>**

As ostensible support for its allegations that Mr. Wovsaniker was "involved" in each of the Complaint transactions, the SEC frequently cites to written reports prepared by the Company in response to an order issued by the SEC under Section 21(a) of the Exchange Act.  Opp'n Mem. at 9, 11, 13, 15, 17, 21, 24.  Those Section 21(a) reports described transactions reviewed and information compiled by the CFO Review team as part of its broad investigation of AOL's advertising revenue.  Wovsaniker SUF 2, 3; Ex. 2 to First Decl. of Stephen G. Topetzes in Supp. of Def. Mark Wovsaniker's Mot. for Summ. J., dated June 11, 2010; James Barge Declaration ("Barge Decl.") dated May 8, 2010 at ¶ 7.[4]  The Section 21(a) reports also identified various people involved in the transactions at the time they occurred, including business employees

---

[4]      A copy of Mr. Barge's Declaration is attached as Exhibit B to the September 10, 2010 Topetzes Decl.

responsible for negotiating the transactions and accounting employees who booked the transactions or were consulted about them.  See, e.g., SEC SJ Exhibit 91 (Sun 21(a) Report) at 4.

Not surprisingly given his role in providing advice to various persons within AOL, the Section 21(a) reports often identified Mr. Wovsaniker as an "accounting employee" who had been aware of a transaction. The SEC has inappropriately suggested that, because Mr. Wovsaniker's name appears in these Section 21(a) reports, they provide evidence that Mr. Wovsaniker participated in a scheme to defraud.  The identification of Mr. Wovsaniker as an accounting employee in the Section 21(a) reports is, in fact, not evidence of any wrongdoing, just as the fact that E&Y was referenced in those Section 21(a) reports as the "auditor" for those transactions indicates no more than the historical fact that E&Y was the auditor when the transactions originally occurred. [5]

The SEC also grossly distorts the significance of other materials created as part of the Company's internal CFO review in late 2002 or 2003 – *after* facts giving rise to the Company's decisions to restate certain transactions had come to light and *after* those facts were discussed between and among AOL finance personnel, including Mr. Wovsaniker.  Neither Mr. Wovsaniker's late 2002 certification of many of the Company's Section 21(a) reports, nor handwritten notes of a discussion Mr. Wovsaniker had with the CFO Review team in late 2002 or 2003 create a genuine issue of fact with respect to whether Mr. Wovsaniker was aware of any of those "bad facts" before late 2002.  The record is undisputed that no one from the CFO Review team ever accused Mr. Wovsaniker of acting improperly.  In fact, James Barge, the Company Controller and the executive who led the CFO investigation, has affirmatively declared

---

[5]     Similarly, as described in greater detail in Mr. Wovsaniker's Initial Memorandum, the fact that Mr. Wovsaniker signed off on a transaction is proof of nothing more than that he provided consultation on a proposed deal at some point in time.  Compare Initial Mem. at 7 with Opp'n Mem. 9, 10, 14, 16, 19, 23, 26.

that he did not come to the conclusion that Mr. Wovsaniker engaged in any wrongdoing.  Ex. B to September 10, 2010 Topetzes Decl. (Barge Decl.) at ¶ 11.

The SEC's arguments related to the June 2001 and December 2001 transactions involving WorldCom also are disingenuous and fail to create a genuine issue regarding a *material* fact. The record is clear that revenue associated with the Company's June 2001 transaction with WorldCom was restated because information came to light in late 2002 suggesting that WorldCom had agreed to resolve the parties' modem Market Rate Dispute in exchange for a cash payment by the Company in the amount of $5 million and that the Company instead offered to pay $39.2 million to WorldCom in exchange for a related commitment by WorldCom to purchase $34.2 million in advertising.  Wovsaniker SUF 183.  The SEC contends: "Internal and external communications make it clear that AOL was trading discounts for advertising . . ." Opp'n Mem. at 19.  That may or may not be true.  But there is no evidence that any of those "internal or external communications" involved Mr. Wovsaniker.  No document sent to, drafted by or provided to Mr. Wovsaniker reflects that Mr. Wovsaniker was aware of the information leading to the restatement.  Moreover, the AOL and WorldCom employees who allegedly negotiated this arrangement have testified uniformly that they did not provide such information to Mr. Wovsaniker.  Wovsaniker SUF 185,186.  Faced with this reality, the SEC seeks to cloud the summary judgment record with other facts that purportedly undermine the Company's original accounting and by referring gratuitously to evidence of an isolated exchange between Mr. Wovsaniker and Scott Sullivan, the former CFO of WorldCom and now a convicted felon, respecting a topic unrelated to the restatement decision.  None of these efforts by the SEC is sufficient to create a genuine issue of material fact regarding Mr. Wovsaniker's liability.

Similarly, the record is clear that revenue associated with the December 2001 transaction with WorldCom was restated because information came to light in late 2002 suggesting that "WorldCom had agreed to forgive the $17 million AOL Europe Shortfall Penalty in exchange for AOL's agreement to add an additional year" to the parties' "Voice/Data Agreement."  Opp'n Mem. at 22.  There is no evidence that Mr. Wovsaniker was aware of this information prior to the CFO Review and the Company's decision to restate.  Here again, the AOL and WorldCom employees who allegedly negotiated this arrangement have testified uniformly that they did not provide such information to Mr. Wovsaniker.  Wovsaniker SUF 185, 186.  In an effort to mask the absence of evidence that Mr. Wovsaniker knew the information giving rise to the Company's later decision to restate, the SEC again tosses in evidence regarding non-material matters: Mr. Wovsaniker's role as a consultant and as a "sign off" for the transaction (Opp'n Mem. at 22-23), his "discomfort" with an earlier, abandoned proposal to supply WorldCom with DVDs or other media distributed by an AOL affiliate (id.), and references to communications involving WorldCom representatives and other AOL employees (id.).  These "facts" do not create a triable issue.  No document and no witness statement reflects that Mr. Wovsaniker possessed information that undermined the reasonableness of the Company's original accounting.[6]  Innuendo and surmise based upon Mr. Wovsaniker's role are not enough to allow the SEC to escape summary judgment.

---

[6]    Andrew Haire, the AOL executive who negotiated with WorldCom, testified at deposition that he did not advise Mr. Wovsaniker that WorldCom had offered to waive the AOL Europe Shortfall Penalty in exchange for a third year on the Voice/Data Agreement.  Ex. 73 (Haire Dep.) to Second Decl. of Stephen G. Topetzes in Supp. of Defendant Mark Wovsaniker's Mot. for Summ. J., dated June 11, 2010, at 307:20-25 to 308:2.

E.      The SEC has mischaracterized the contentions of Defendants' accounting experts

        The SEC repeatedly argues that "[n]o defense expert contends that AOL's original accounting [for a particular transaction] was in accordance with GAAP."  Opp'n Mem. at 7, 9, 11.  These arguments are misleading and miss the larger point: <u>AOL</u> is <u>not</u> a defendant in this case.  The pertinent issue is <u>not</u> whether AOL's original accounting was in accordance with GAAP, but whether Mr. Wovsaniker was aware of information, at the time of AOL's original accounting for the transactions at issue, that was inconsistent with that accounting.

        Mr. Wovsaniker's accounting expert, John M. Riley, a former Deputy Chief Accountant and Acting Chief Accountant at the SEC, has offered expert opinions that directly address that issue.  Mr. Riley opined that, after a thorough review of documents and testimony pertaining to the AOL transactions listed in the Complaint, he had seen no evidence that Mr. Wovsaniker or co-Defendant Michael Kelly was aware of information that would have caused them, as accountants, to believe that the original accounting for the transactions was incorrect or not in accordance with GAAP.  Riley Dep. at 53:15-54:15, May 12, 2010 (referencing the Expert Report of John M. Riley dated March 26, 2010 at 13).[7]

        In contrast, Douglas Carmichael and Edward Weinstein, the SEC's accounting experts, admitted that they did not formulate opinions about the conduct of any of the individual Defendants in this case or the role any individual Defendant played in the accounting for the transactions they analyzed.  Carmichael Dep. at 10:5-11:4, April 13, 2010; Weinstein Dep.

--------

[7]      For the Court's convenience, the first 13 pages of Mr. Riley's 265-page expert report, which includes a short discussion of Mr. Riley's credentials and qualifications and a summary of his expert opinions in this case, are attached as Exhibit C to the September 10, 2010 Topetzes Decl.  Pages 53-54 of the expert deposition of Mr. Riley on May 12, 2010 are attached as Exhibit D to that Declaration.

30:20-31:9, April 23, 2010.[8]   Instead, Messrs. Carmichael and Weinstein only formulated opinions as to whether AOL accounted for certain transactions in conformity with GAAP. Carmichael Dep. at 9:12-10:4; Weinstein Dep. at 13:15-14:5.  Although the expert opinions of Mr. Carmichael and Mr. Weinstein might have spoken to central issues in a case the SEC brought against AOL, neither Mr. Carmichael nor Mr. Weinstein has addressed the key issues raised by the SEC's claims against Mr. Wovsaniker and the other individual Defendants in this case.  Mr. Riley is the only accounting expert who has done so.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant Wovsaniker's Motion for Summary Judgment.

Respectfully submitted,

K&L GATES LLP

_____/s/ Stephen G. Topetzes_____
Stephen G. Topetzes, Esq. (ST-4145) (admitted pro hac vice)
Glenn R. Reichardt, Esq. (GR-2394) (admitted pro hac vice)
Erin Ardale Koeppel, Esq. (EK-3460) (admitted pro hac vice)
Bethany M. Nikfar, Esq. (BN-9693) (admitted pro hac vice)

K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
P:  (202) 778-9000
F:  (202) 778-9100
stephen.topetzes@klgates.com
glenn.reichardt@klgates.com
erin.koeppel@klgates.com
bethany.nikfar@klgates.com

Dated: September 10, 2010

---

[8]      Pages 9-11 from the expert deposition of Mr. Carmichael on April 13, 2010 are attached as Exhibit E to the September 10, 2010 Topetzes Decl., and pages 13-14 and pages 30-31 from the expert deposition of Mr. Weinstein on April 23, 2010 are attached as Exhibit F to that Declaration.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of DEFENDANT MARK WOVSANIKER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT, MARK WOVSANIKER'S REPLIES TO THE SEC'S RESPONSES TO THE STATEMENTS OF UNDISPUTED FACT IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT, AND THE DECLARATION OF STEPHEN G. TOPETZES IN SUPPORT OF DEFENDANT MARK WOVSANIKER'S REPLY MEMORANDUM OF LAW was served this 10th day of September 2010 via the Court's ECF system upon the following:

*Attorneys for Plaintiff:*
Richard Hong
John J. Bowers
John D. Worland, Jr.
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549

*Attorneys for John Michael Kelly:*
Bruce E. Yannett
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Jonathan Tuttle
Ada Fernandez Johnson
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Suite 1100E
Washington, D.C. 20004

*Attorneys for Steven E. Rindner:*
Mark Hulkower
Jonathan Drimmer
Patrick F. Linehan
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

/s/  Stephen G. Topetzes

Stephen G. Topetzes (ST-4145)*
*  Admitted pro hac vice
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
Phone:  202-778-9000
Fax:  202-778-9100