**FILED ELECTRONICALLY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X
SECURITIES AND EXCHANGE COMMISSION    :
                                                                            :
           Plaintiff,                                           :
                                                                            :   08 Civil Action No: 4612 (CM)
           - vs -                                              :   ECF Case
                                                                            :
JOHN MICHAEL KELLY,                                      :
STEVEN E. RINDNER, and                                 :
MARK WOVSANIKER                                          :
                                                                            :
           Defendants.                                      :
------------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARK WOVSANIKER'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS I AND II OF THE COMPLAINT BASED ON THE SUPREME COURT'S JUNE 13, 2011 *JANUS* DECISION, OR, ALTERNATIVELY, FOR RECONSIDERATION IN PART OF THIS COURT'S DECISION AND ORDER DATED JANUARY 7, 2011**

Stephen G. Topetzes, Esq. (ST-4145) (*pro hac vice*)
Glenn R. Reichardt, Esq. (GR-2394) (*pro hac vice*)
Erin Ardale Koeppel, Esq. (EK-3460) (*pro hac vice*)
Stephen J. Crimmins, Esq. (SC-2714)
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
P:  (202) 778-9000
F:  (202) 778-9100

*Attorneys for Defendant Mark Wovsaniker*

Dated: July 11, 2011

**TABLE OF CONTENTS**

**Page**

I.  The Supreme Court's June 13, 2011 *Janus* Decision ........................................................ 5

II. Count II of the Complaint Is Facially Deficient Under *Janus* ........................................... 7

III. The SEC's Admissions Demonstrate That Count II Cannot Survive *Janus* ....................... 9

IV. The *Janus* Rule Should Also Reach Plaintiff's Section 17(a) Claim in Count I .............. 11

CONCLUSION ................................................................................................................. 14

## TABLE OF AUTHORITIES

Page

**Cases**

*Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952)..............................................11

*In re Cady, Roberts & Co.*, Exchange Act Release No. 6668, 1961 WL 60638 (Nov. 8, 1961)...12

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005) ..................................................8

*Janus Capital Group, Inc. v. First Derivative Traders,*
  No. 09-525, 2011 U.S. LEXIS 4380 (June 13, 2011) ........................................................*passim*

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ..........................................................8

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) ............................................12

*SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999)..............................................11, 12

*SEC v. Tambone*, 597 F.3d 436 (1st Cir. 2010) ..........................................................................12

*SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968)..............................................11

*Shapiro v. Cantor,* 123 F.3d 717 (2d Cir. 1997) ..........................................................................6

**Statutes**

15 U.S.C. § 77q(a)..................................................................................................5, 11, 12, 13

15 U.S.C. § 78j(b) ...........................................................................................................4, 11

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................................9

Fed. R. Civ. P. 12(c)................................................................................................................4, 9

Fed. R. Civ. P. 54(b)....................................................................................................................4

**Regulations**

17 C.F.R. § 240.10b-5 ..............................................................................4, 5, 6, 8, 10, 11, 12, 13

Based on the Supreme Court's decision last month in *Janus Capital Group, Inc. v. First Derivative Traders*, No. 09-525, 2011 U.S. LEXIS 4380 (June 13, 2011), attached hereto as Appendix A, Defendant Mark Wovsaniker moves, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings dismissing Counts I and II as to him because these counts are facially deficient after *Janus*. Alternatively, Mr. Wovsaniker moves, pursuant to Federal Rule of Civil Procedure 54(b), for reconsideration of this Court's pre-*Janus* decision denying Mr. Wovsaniker summary judgment as to Counts I and II, (Decision & Order, Jan. 7, 2011 (ECF No. 270)), because undisputed facts admitted by the SEC show that these counts cannot be sustained after *Janus*.

In *Janus*, the Supreme Court substantially changed the interpretation of the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5, adopted under Securities Exchange Act Section 10(b), 15 U.S.C. § 78j(b). In a new "clean line" test, the Supreme Court interpreted the word "make" in Rule 10b-5 according to its plain meaning, finding that one only "makes a statement by stating it." The Court held that for primary liability to attach under the rule, a defendant must have "made" a false or misleading statement in that he or it had "ultimate authority" or "control" over both the content and the dissemination of the statement. This is determinative for present purposes because the SEC's Complaint and admissions show that **(i)** Mr. Wovsaniker did not "make" any allegedly false or misleading statement to investors in AOL securities; **(ii)** Mr. Wovsaniker did not sign any AOL public filings or otherwise make any other public statement about AOL; and **(iii)** Mr. Wovsaniker did not have ultimate authority" or "control" (as explained in *Janus*) over the content or dissemination of AOL's financial statements or public reports to investors.

Under the Supreme Court's new interpretation of Rule 10b-5, Count II is legally insufficient and should be dismissed. Furthermore, as this Court recognized in its Decision and

4

Order on January 7, 2011, the elements of a claim under Rule 10b-5 (fraudulent purchase or sale of securities) are "essentially the same" as the elements of a claim under Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) (fraudulent offer or sale of securities), according to controlling Second Circuit precedent and SEC interpretation. Therefore, Count I is also legally insufficient and likewise should be dismissed as to Mr. Wovsaniker.

I.      The Supreme Court's June 13, 2011 Janus Decision

The *Janus* case involved a claim by a shareholder of Janus Capital Group, Inc. ("JCG") contending that JCG and its subsidiary, Janus Capital Management LLC ("JCM"), should be held liable for allegedly misleading statements in prospectuses of the Janus Investment Fund ("Fund"). JCG created the Fund and JCM served as the Fund's investment adviser and administrator. All of the Fund's officers were also officers of JCM. JCM was substantially involved in preparing the Fund's prospectuses, and JCM hosted the prospectuses on its own website. However, the Fund was organized as a separate legal entity with its own board. *Janus*, 2011 U.S. LEXIS 4380, at *5-6, 23 n.12.

In upholding dismissal of the plaintiff's Rule 10b-5 claim, the Court said that, for liability to attach, JCM must have *made* the material misstatements in the Fund's prospectuses, and that JCM had not done so. *Id.* at *11. The Court further explained that, under Rule 10b-5, the *maker* of a statement is the person or entity with "ultimate authority" or "control" over the statement and its dissemination:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ***ultimate authority over the statement, including its content and whether and how to communicate it***. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker.

5

*Id.* at *13 (emphasis supplied). This holding applies equally to primary Rule 10b-5 claims by the SEC, as Justice Breyer noted in his dissent. *Id.* at *38-39 (Breyer, J., dissenting) (pointing out the broad scope of the Court's holding).

The *Janus* Court explicitly rejected arguments by the United States, as amicus curiae, that the word "make" in Rule 10b-5 should be defined as "create." *Id*. at *16. The Court also rejected the plaintiff's position that a defendant, through preparation of a statement made by others, can "indirectly" make a statement, as this would "erase the line between primary violators and aiders and abettors." *Id.* at *21 n.11.

Applying this rule to the particular facts before it, the Court rejected the argument that preparation of the Fund's prospectuses by JCM, the Fund's investment adviser, somehow made JCM a ***maker*** of the statements contained in the prospectus:

> First Derivative suggests that both JCM and Janus Investment Fund might have "made" the misleading statements within the meaning of Rule 10b-5 because ***JCM was significantly involved in preparing the prospectuses***. ***But this assistance***, subject to the ultimate control of Janus Investment Fund, ***does not mean that JCM "made" any statements in the prospectuses***. Although JCM . . . may have assisted Janus Investment Fund with crafting what Janus Investment Fund said in the prospectuses, JCM itself did not "make" those statements for purposes of Rule 10b-5.

*Id.* at *22-23 (emphasis supplied).

The Supreme Court's opinion in *Janus* goes well beyond prior lower court opinions which had previously held that "[a]llegations of 'assisting,' 'participating in,' 'complicity in' and similar synonyms" at most support aiding and abetting charges, and not primary liability. *E.g.*, *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997). *See also* Def. Wovsaniker's Mem. Supp. Summ. J. (ECF No. 157), at 12-16 (citing authorities).

6

## II.   Count II of the Complaint Is Facially Deficient Under Janus

The SEC's Complaint does not allege that Mr. Wovsaniker "made" any false or misleading statement to investors, or that he was a person with "ultimate authority" or "control" over an allegedly misleading statement, including its "content" and "whether and how to communicate it." *Janus*, 2011 U.S. LEXIS 4380, at *13. Instead, the theory of the SEC's case – now legally insufficient under the *Janus* holding – is that Mr. Wovsaniker simply engaged in allegedly supportive conduct that "caused," or that rendered him "responsible" for, false statements made by others:

> 4.  [Wovsaniker was] responsible for false statements regarding the Company's revenue, income, and results of operations. These false statements were made to investors in AOL's filings with the Commission and in public remarks and releases. . . .
>
> 6.  As a result of each of [Wovsaniker's] actions detailed below, the Company reported artificially inflated online advertising revenue in periodic reports and registration statements filed with the Commission and other public statements . . . .

Compl. ¶¶ 4, 6.

The Complaint makes clear that Mr. Wovsaniker did not <u>make</u> *any* of the allegedly false or misleading statements at issue in this case. Rather, the Complaint contends that he engaged in behind-the-scenes conduct that allegedly facilitated false statements actually made by others:

> 29.  Wovsaniker, the head of AOL's Accounting Policy, made decisions on the accounting treatment to be accorded the round-trip transactions, provided advice on how to structure and document the transactions and, on occasion, with others, took part in negotiations . . . .
>
> 30.  Wovsaniker also directed that the contingent pieces of round-trip transactions be documented as separate, independent transactions, without any cross-referencing, thereby concealing the economic reality of those transactions from auditors.
>
> 31.  Wovsaniker *substantially contributed* to various public statements to investors that incorporated the fraudulent financial results . . . .

7

Compl. ¶¶ 29-31 (emphasis supplied).  Nowhere does the Complaint allege that Mr. Wovsaniker "controlled" or had "ultimate authority" over the content or issuance of any of AOL's public filings or releases, and nowhere does the Complaint allege that Mr. Wovsaniker spoke on any call to investors or analysts.  Thus, Count II of the Complaint is facially deficient because it fails to allege that Mr. Wovsaniker "made" any allegedly false or misleading statement.  *Janus*, 2011 U.S. LEXIS 4380, at *13.

The SEC cannot escape the inevitable consequences of the Supreme Court's decision in *Janus* by attempting to recast its misrepresentation claims as being based on an alleged "scheme, artifice or device," actionable under subsections (a) and (c) of Rule 10b-5.  Although *Janus* did not explicitly address "scheme" liability under Rule 10b-5(a) or (c), the logic and broad sweep of the Supreme Court's analysis in *Janus* fatally undermines the plaintiff's scheme theory in this case.

Even before the Supreme Court's recent decision in *Janus*, the Second Circuit and numerous other courts held that, where, as in this case, the primary purpose of an alleged scheme is to have an issuer make false statements to investors, a plaintiff cannot bypass the elements necessary to establish "misstatement" liability by merely labelling the alleged misconduct a "scheme" rather than a "misstatement."  *E.g.*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (rejecting scheme liability where "the sole basis for such claims is alleged misrepresentations or omission").  *See also* Def. Wovsaniker's Mem. Supp. Summ. J. (ECF No. 157), at 18-20 (citing authorities).  Subsections (a) and (c) are "not a backdoor into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5."  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 503 (S.D.N.Y. 2005).

By drawing a clear and broad distinction between primary and secondary liability under Rule 10b-5, the Supreme Court's opinion in *Janus* reinforces and highlights the reasoning of these previous decisions. If a plaintiff were able to pursue "scheme" liability claims against persons who did not have the "ultimate authority" over the content and dissemination of allegedly false statements, the rule announced in *Janus* would be rendered meaningless – a result the Supreme Court would never support.

Under *Janus*, Count II of the Complaint is deficient on its face as to Mr. Wovsaniker. Accordingly, he is entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). However, even if Count II were not facially deficient under *Janus*, the undisputed facts admitted by the SEC show that Mr. Wovsaniker should now have summary judgment under Federal Rule of Civil Procedure 56 for the reasons discussed immediately below.

### III. The SEC's Admissions Demonstrate That Count II Cannot Survive Janus

During discovery, the SEC clearly and indisputably conceded that Mr. Wovsaniker did not "make" a misstatement, as required for liability after *Janus*. In particular, the SEC conceded that Mr. Wovsaniker did not sign any of the allegedly misleading financial statements, 10-Q quarterly reports or 10-K annual reports. Pl.'s Answers to Def. Wovsaniker's Reqs. For Admis. Nos. 1-3 (Ex. 28 (ECF No. 158) to Def. Wovsaniker's Statement of Undisputed Facts (ECF No. 161)), attached hereto as Appendix B. The SEC has also not identified evidence that Mr. Wovsaniker made any other kind of statement to investors or that he participated in any earnings call with analysts. *Id.* at Nos. 5-6. At most, the SEC has asserted that Mr. Wovsaniker "provided substantial advice, guidance, and instructions that formed the basis" for statements made by others. *Id.* at No. 5.

9

The SEC put forward no evidence in its summary judgment opposition that Mr. Wovsaniker "made" a statement under *Janus*'s "clean line" test.[1]  *See* 2011 U.S. LEXIS 4380, at *14-15 n.6.  To the contrary, the SEC rested its opposition to summary judgment for Mr. Wovsaniker as to Count II upon a factual assertion that clearly does not meet the *Janus* test, *i.e.*, that Mr. Wovsaniker could be "liable for a false statement made by another, even if not attributed to [him], . . . given his deep involvement in AOL's financial affairs."  Pls.'s Opp. to Def. Wovsaniker's Mot. for Summ. J. (ECF No. 176), at 30-31.  *See also* Pl.'s Opp. to Def. Rindner's Mot. for Summ. J. (ECF No. 182), at 20 (characterizing Mr. Wovsaniker as being "'sufficiently responsible'" for "'inflated advertising numbers that others at the company … personally touted" despite the fact that "no direct public attributions [in those statements] were made" to him).  Similarly, the SEC did not point to any specific evidence that Mr. Wovsaniker "made" a statement under the test announced in *Janus*.  Pl.'s Resp. to Def. Wovsaniker's Statement of Material Facts as to Which There Is No Dispute (ECF No. 177), at Nos. 55-59.

Thus, even if true, the SEC's factual assertions as to Mr. Wovsaniker and the undisputed record do not come close to showing that Mr. Wovsaniker was "the person or entity with ultimate authority" over any allegedly false statement, including its "content" and "whether and how to communicate it."  *Id.* at *13.  Therefore, even if Count II of the Complaint were not deficient on its face under *Janus*, the undisputed facts conceded by the SEC show that summary judgment should be granted dismissing the Rule 10b-5 claim against Mr. Wovsaniker.

---

[1]  Mr. Wovsaniker has always disputed the SEC's characterization of his conduct relevant to the Complaint, and will continue to do so at trial.  However, even taking as true the SEC's description of his actions, the SEC's allegations and purported evidence fall far short of demonstrating that Mr. Wovsaniker had "ultimate authority" over the alleged misstatements, as required to support primary liability after *Janus*.

**IV.     The Janus Rule Should Also Reach Plaintiff's Section 17(a) Claim in Count I**

Like Count II (charging a violation of Section 10(b) of the Exchange Act and Rule 10b-5), Count I of Plaintiff's Complaint, which alleges liability under Section 17(a) of the Securities Act, rests on the SEC's claim that Mr. Wovsaniker is "responsible for false statements" by AOL. Compl. ¶ 4.  The Complaint alleges that the same conduct by Mr. Wovsaniker that supports the SEC's Rule 10b-5 claim also supports a claim under Section 17(a).  *Compare* Compl. ¶¶ 195-96 *with* Compl. ¶¶ 198-99.  Such alleged conduct fails to support a claim under either Rule 10b-5 or Section 17(a) because, as this Court observed in this case, and as the SEC itself has admitted with respect to its claim against Mr. Wovsaniker, the Second Circuit has repeatedly held that, apart from scienter distinctions not implicated here, the elements of both Section 10(b) and of Section 17(a) are "essentially the same."  Decision & Order 26, Jan. 7, 2011 (ECF No. 270) and Pl.'s Opp. To Def. Wovsaniker's Mot. Summ. J. (ECF No. 180), at 31.  Thus, the Supreme Court's recent holding in *Janus* requires dismissal of both Counts I and II.

Although *Janus* did not involve Section 17(a), in a landmark decision more than forty years ago, the Second Circuit explicitly stated that the provisions of Rule 10b-5 and Section 17(a) are "virtually identical" and that Section 17(a) was "the model" for Rule 10b-5.  *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 855 n.22 (2d Cir. 1968).  Based on the SEC's original adopting release for Rule 10b-5, Exchange Act Release No. 3230, 1942 WL 34443 (May 21, 1942), the Second Circuit had previously recognized that the SEC's "only purpose" in adopting Rule 10b-5 was to make the same prohibitions contained in Section 17(a) applicable to "purchasers" as well as to "sellers" of securities.  *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463 (2d Cir. 1952).

For this reason, a long line of Second Circuit cases has consistently held that the elements of Section 17(a) and Rule 10b-5 are "essentially the same."  *E.g., SEC v. Monarch Funding*

11

*Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) ("Essentially the same elements [for liability under Rule 10b-5] are required under Section 17(a)(1)-(3) in connection with the offer or sale of a security," apart from scienter distinctions not pertinent here); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) ("essentially the same elements must be established" under both provisions, apart from scienter distinctions).  Indeed, just 19 years after adopting Rule 10b-5, the SEC – in a famous opinion penned by its then Chairman William L. Cary (for decades a securities law professor at Columbia) – explained that, while the provisions are "almost identical," Rule 10b-5 can actually be viewed as "broader in several respects" than Section 17(a).  *In re Cady, Roberts & Co.*, Exchange Act Release No. 6668, 1961 WL 60638, at *3 and n.11 (Nov. 8, 1961).

Although a pre-*Janus* First Circuit opinion suggests that Section 17(a) may in some cases cover conduct not prohibited by Rule 10b-5, *see SEC v. Tambone*, 597 F.3d 436, 445 (1st Cir. 2010) (en banc), the en banc decision's discussion was dicta entitled to little or no consideration because the SEC's Section 17(a) claim was "not before the en banc court."  *Id.* at n. 6.  More importantly, that en banc dicta and the prior panel opinion is contrary to 60 years of jurisprudence in the Second Circuit, which is the applicable law in this District.

Beyond what the Second Circuit and the SEC itself have told us about how Rule 10b-5 and Section 17(a) are "virtually identical" and have elements that are "essentially the same," it would indeed be strange from a law enforcement perspective to construe Section 17(a) in a way that would have that provision (covering fraud in the offer or sale of a security) reach third-party misstatements while at the same time the Supreme Court in *Janus* has determined that Rule 10b-5 (covering fraud in the purchase or sale of a security) does not reach third-party misstatements.  There is simply no legal or policy reason to create such an anomaly, particularly in a context

12

where the Second Circuit has consistently interpreted the two antifraud provisions as being parallel in meaning and reach.

Thus, as with the Rule 10b-5 claim against Mr. Wovsaniker, the Supreme Court's opinion in *Janus* also supports dismissal of the Section 17(a) claim in Count I for the reason that Mr. Wovsaniker plainly lacked "ultimate authority" or "control" over the "content" or "dissemination" of any allegedly false or misleading statement by AOL.

## CONCLUSION

As Counts I and II are legally insufficient under *Janus*, Mr. Wovsaniker should have judgment on the pleadings on these two counts pursuant to Fed. R. Civ. P. 12(c). Alternatively, because undisputed facts demonstrate that the SEC cannot satisfy the elements of proof required under *Janus*, Mr. Wovsaniker should have summary judgment on these two counts pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

K&L GATES LLP

/s/ Stephen G. Topetzes
Stephen G. Topetzes, Esq. (ST-4145) (admitted *pro hac vice*)
Glenn R. Reichardt, Esq. (GR-2394) (admitted *pro hac vice*)
Erin Ardale Koeppel, Esq. (EK-3460) (admitted *pro hac vice*)
Stephen J. Crimmins, Esq. (SC-2714)

K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
P:  (202) 778-9000
F:  (202) 778-9100
stephen.topetzes@klgates.com
glenn.reichardt@klgates.com
erin.koeppel@klgates.com
stephen.crimmins@klgates.com

*Attorneys for Defendant Mark Wovsaniker*

Dated: July 11, 2011

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant Mark Wovsaniker's Motion for Judgment on the Pleadings or for Reconsideration was served this 11th day of July, 2011, via the Court's ECF system upon the following:

*Attorneys for Plaintiff:*

John D. Worland, Jr.
John J. Bowers
U.S. SECURITIES AND EXCHANGE
COMMISSION
100 F Street, N.E.
Washington, D.C. 20549

*Attorneys for John Michael Kelly:*

Jonathan Tuttle
Ada Fernandez Johnson
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Suite 1100E
Washington, D.C. 20004

*Attorneys for Steven E. Rindner:*

Roger E. Warin
Patrick F. Linehan
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

 

/s/ Stephen G. Topetzes
Stephen G. Topetzes, Esq. (ST-4145)
\* *Admitted pro hac vice*
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
Phone: 202-778-9000
Fax: 202-778-9100