Roger E. Warin (admitted *pro hac vice*)
Reid Weingarten (admitted *pro hac vice*)
Patrick F. Linehan (admitted *pro hac vice*)
Robert Moore (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

*Attorneys for Defendant*
*Steven E. Rindner*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 08 Civ. 4612 (CM) |
| | : | ECF Case |
| JOHN MICHAEL KELLY, STEVEN E. | : | |
| RINDNER, JOSEPH A. RIPP, and | : | ORAL ARGUMENT |
| MARK WOVSANIKER, | : | REQUESTED |
| | : | |
| Defendants. | : | |

**DEFENDANT STEVEN E. RINDNER'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS,**
**OR ALTERNATIVELY FOR PARTIAL RECONSIDERATION OF THE**
**COURT'S JANUARY 7, 2011 ORDER DENYING SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

Page(s)

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 4

I.  Legal Standards.............................................................................................. 4

    A.  Judgment on the Pleadings.................................................................. 4

    B.  Reconsideration.................................................................................. 4

    C.  Summary Judgment. .......................................................................... 6

II.  *Janus* Establishes a Bright-Line Rule Requiring "Ultimate Authority" Over Alleged Misstatements to Establish Primary Liability Under Rule 10b-5. ...................... 6

III.  Judgment Should Be Granted on Counts 1 and 2 for Primary Liability Under Sections 10(b) and 17(a) Because *Janus* Directly Controls.............................. 8

    A.  Mr. Rindner Cannot Be Primarily Liable Under Rule 10b-5(b) Because He Did Not Have "Ultimate Authority" Over the Statements at Issue. ..................... 8

    B.  *Janus* Confirms that Mr. Rindner Cannot Be Liable Under Rule 10b-5(a) or (c). ................................................................................ 10

    C.  *Janus* Precludes Primary Liability as to Mr. Rindner Under Section 17(a). .......... 12

CONCLUSION ..................................................................................................... 16

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Birnbaum v. Newport Steel Corp.,
193 F.2d 461 (2d Cir. 1952)..................................................................................13

Catskill Dev., L.L.C. v. Park Place Entm't Corp.,
217 F. Supp. 2d 423 (S.D.N.Y. 2002).....................................................................5

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)...............................................................................................6

Cleveland v. Caplaw Enters.,
448 F.3d 518 (2d Cir. 2006)....................................................................................4

Clinton v. Brown & Williamson Holdings, Inc.,
652 F. Supp. 2d 528 (S.D.N.Y. 2009).....................................................................5

Cobalt Multifamily Investors I, LLC v. Shapiro,
No. 06-cv-6468, 2009 WL 4408207 (S.D.N.Y. Dec. 1, 2009)................................5

Hooper v. Mountain States Secs. Corp.,
282 F.2d 195 (5th Cir. 1960) ................................................................................13

In re Mut. Funds Inv. Litig.,
566 F.3d 111 (4th Cir. 2009), rev'd by Janus ........................................................8

Janus Capital Group, Inc. v. First Derivative Traders,
131 S. Ct. 2296 (2011) (attached hereto as Exhibit A)................................. passim

Karedes v. Ackerley Group, Inc.,
423 F.3d 107 (2d Cir. 2005)....................................................................................4

Lentell v. Merrill Lynch & Co.,
396 F.3d 161 (2d Cir. 2005)..................................................................................11

Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,
LLP,
322 F.3d 147 (2d Cir. 2003)....................................................................................5

Richman v. W.L. Gore & Assocs.,
988 F. Supp. 753 (S.D.N.Y. 1997).........................................................................4

SEC v. Coffey,
493 F.2d 1304 (6th Cir. 1974) .........................................................................14, 15

*SEC v. Daifotis*,
No. CV-11-0137 WHA, Plaintiff's Memorandum in Opposition to Defendant
Daifotis's Motion for Reconsideration of Certain Portions of the Court's June 6, 2011
Order Denying His Motion to Dismiss, at 4 (N.D. Cal. July 6, 2011)......................................7

*SEC v. Espuelas*,
699 F. Supp. 2d 655 (S.D.N.Y. 2010)......................................................................................14

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996)..............................................................................................8, 12

*SEC v. Fitzgerald*,
135 F. Supp. 2d 992 (N.D. Cal. 2001) ....................................................................................15

*SEC v. Fraser*,
No. 09-cv-443, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010) ..................................................14

*SEC v. Global Telecom Servs., L.L.C.*,
325 F. Supp. 2d 94 (D. Conn. 2004)........................................................................................14

*SEC v. Kelly*,
663 F. Supp. 2d 276 (S.D.N.Y. 2009) ("*Kelly I*")....................................................................2

*SEC v. Kelly*,
765 F. Supp. 2d 301 (S.D.N.Y. 2011) ("*Kelly II*") ........................................................ passim

*SEC v. KPMG LLP*,
412 F. Supp. 2d 349 (S.D.N.Y. 2006)............................................................................. passim

*SEC v. Lucent Tech., Inc.*,
610 F. Supp. 2d 342 (D.N.J. 2009) .........................................................................................11

*SEC v. McGinn, Smith & Co.*,
752 F. Supp. 2d 194 (N.D.N.Y. 2010) ....................................................................................14

*SEC v. Monarch Funding Corp.*,
192 F.3d 295 (2d Cir. 1999)............................................................................................4, 8, 12

*SEC v. Patel*,
Civil No. 07-cv-39-SM, 2008 WL 782483 (D.N.H. Mar. 24, 2008).........................................3

*SEC v. PIMCO Advisors Fund Mgmt. LLC*,
341 F. Supp. 2d 454 (S.D.N.Y. 2004)..................................................................................3, 11

*SEC v. Power*,
525 F. Supp. 2d 415 419-20 (S.D.N.Y. 2007) ........................................................................13

*SEC v. Simpson Capital Mgmt., Inc.*,
   586 F. Supp. 2d 196 (S.D.N.Y. 2008) ..................................................................................15

*SEC v. Tambone*,
   597 F.3d 436 (1st Cir. 2010) ...............................................................................................14

*SEC v. Texas Gulf Sulphur Co.*,
   401 F.2d 833 (2d Cir. 1968) ................................................................................................13

*SEC v. Van Horn*,
   371 F.2d 181 (7th Cir. 1966) ...............................................................................................13

*SEC v. Wolfson*,
   539 F.3d 1249 (10th Cir. 2008) ...........................................................................................13

*Sheppard v. Beerman*,
   18 F.3d 147 (2d Cir. 1994) .....................................................................................................4

*Shervington v. Vill. of Piermont*,
   732 F. Supp. 2d 423 (S.D.N.Y. 2010) ....................................................................................4

*Smith v. City of Jackson*,
   544 U.S. 228 (2005) .............................................................................................................15

*Teamsters Local 282 Pension Trust Fund v. Angelos*,
   762 F.2d 522 (7th Cir. 1985) ...............................................................................................13

*Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) .................................................................................................5

*Williams v. County of Nassau*,
   No. 03-cv-6337, 2011 WL 1240699 (E.D.N.Y. Mar. 30, 2011) .............................................5

*Zerman v. Ball*,
   735 F.2d 15 (2d Cir. 1984) ..................................................................................................13

**STATUTES**

Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) ....................................................... passim

Section 17(a) of the Securities Act (15 U.S.C § 77q(a)) ...................................................... passim

**REGULATIONS**

17 C.F.R. § 240.10b-5 ............................................................................................................ passim

**BOOKS**

18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790 .....................5

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ................................................................4

Federal Rule of Civil Procedure 12(c) ..........................................................1, 4, 16

Federal Rule of Civil Procedure 54(b) .....................................................1, 4, 5, 16

Federal Rule of Civil Procedure 56(c) ................................................................6

Federal Rule of Civil Procedure 56(e) ................................................................6

Federal Rule of Civil Procedure 59(e) ................................................................5

Federal Rule of Civil Procedure 60(b) ................................................................5

Local Rule 6.3 ................................................................................................5

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Steven E. Rindner respectfully moves for judgment on the pleadings in regards to Counts 1 and 2 of the Complaint. In the alternative, Mr. Rindner moves, pursuant to Federal Rule of Civil Procedure 54(b), for partial reconsideration of the Court's January 7, 2011 Order (Dkt. 270) denying, in part, Mr. Rindner's motion for summary judgment (Dkt. 146). Based on an intervening change in the law, Counts 1 and 2 of the Complaint, which allege primary violations of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), Rule 10b-5 (17 C.F.R. § 240.10b-5), and Section 17(a) of the Securities Act (15 U.S.C § 77q(a)), cannot be legally sustained either on the pleadings or based on the evidence adduced during discovery, and judgment for Mr. Rindner as to those claims should therefore be granted.

## INTRODUCTION

The Securities and Exchange Commission's ("SEC") lawsuit against Mr. Rindner brings civil charges against him based on allegations that he participated, on behalf of America Online ("AOL"), in a series of allegedly fraudulent transactions involving the purchase of advertising by vendors and other counterparties in order to artificially inflate the advertising revenue reported to the investing public in AOL's SEC filings from 2000 through 2003. The SEC alleges that Mr. Rindner's conduct constitutes both primary and secondary (*i.e.*, aiding and abetting) violations of Section 10(b) of the Securities Exchange Act ("Exchange Act"), primary liability under Section 17(a) of the Securities Act, and primary and secondary "books and records" violations under Section 13 of the Exchange Act.

In both his motion to dismiss and his later motion for summary judgment, Mr. Rindner argued that the SEC's claims of primary liability under Sections 10(b) and 17(a) are fatally deficient for at least two reasons. First, he argued in those motions that he cannot be held

primarily liable for making an untrue statement of a material fact under Rule 10b-5(b) and Section 17(a)(2) because the Complaint does not allege, and ultimately because there is no evidence to show, that he "made" any of the alleged misstatements on which the SEC's claim of primary "misstatement" liability is based. Second, he argued that he cannot be held primarily liable as a matter of law under the "scheme liability" provisions of Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) because scheme liability is not actionable under those provisions where the alleged scheme is premised on misstatements.

As to both of Mr. Rindner's motions, this Court upheld the SEC's Section 10(b) and 17(a) claims. As to his argument that he could not be found to have "made" any of the alleged misstatements, the Court explained in its denial of summary judgment that "[i]n an SEC enforcement action, an individual can be held primarily liable for misstatements under Sections 10(b) and 17(a) if the individual 'was sufficiently responsible for the statement – in effect, caused the statement to be made – and knew or had reason to know that the statement would be disseminated to investors.'" *SEC v. Kelly*, 765 F. Supp. 2d 301, 319 (S.D.N.Y. 2011) ("*Kelly II*") (quoting *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 375 (S.D.N.Y. 2006)).[1] The Court did not address Mr. Rindner's scheme liability argument in its denials of either of Mr. Rindner's motions.

On June 13, 2011, the Supreme Court issued an opinion in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) (attached hereto as Exhibit A), which established a new bright-line rule for primary liability under Rule 10b-5: "For purposes of Rule

---

[1] The Court's opinion denying Mr. Rindner's motion to dismiss did not address the issue of what conduct suffices to establish whether Mr. Rindner "made" a misstatement under Rule 10b-5(b) and Section 17(a)(2), and instead focused on the sufficiency of the SEC's scienter allegations without distinguishing between the misstatement and scheme liability claims. *SEC v. Kelly*, 663 F. Supp. 2d 276, 285-86 (S.D.N.Y. 2009) ("*Kelly I*").

10b-5, the maker of a statement is the person or entity with ultimate authority over the statement." *Id.* at 2302. The Supreme Court based its holding on the unambiguous plain language of Rule 10b-5: "One 'makes' a statement by stating it." *Id.*; *see also id.* at 2304 n.8 ("[W]e do not find the meaning of 'make' in Rule 10b-5 to be ambiguous."). Moreover, the Court further recognized that any other interpretation of "make" – including one that includes actions constituting "substantial assistance" in the making of a statement but not actually making it – would blur the distinction drawn by Congress between "those who are primarily liable . . . and those who are secondarily liable," and held that primary liability cannot extend "beyond the person or entity that ultimately has authority over a false [or misleading] statement." *Id.* at 2302-03.

This new bright-line test for primary liability warrants partial judgment on the pleadings in favor of Mr. Rindner, or alternatively, reconsideration of the Court's denial of his motion for summary judgment, as to the SEC's primary liability claims under Rule 10b-5 and Section 17(a) claims. The SEC simply has not pleaded, and now cannot adduce any evidence at summary judgment, that Mr. Rindner had *any* authority, much less the "ultimate authority" now required under *Janus*, over the SEC filings it alleges to be false and misleading. Moreover, *Janus* also confirms the correctness of Mr. Rindner's prior arguments, supported by a number of decisions of this Court but not addressed by the Court's prior rulings in this case, regarding scheme liability – that scheme liability cannot be premised on allegedly false or misleading statements – because such claims would vitiate the distinction between primary and secondary misstatement liability. *See* 131 S. Ct. at 2304; *see also SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 467 (S.D.N.Y. 2004); *KPMG*, 412 F. Supp. 2d at 377-78; *accord SEC v. Patel*, Civil No. 07-cv-39-SM, 2008 WL 782483, at *9-12 (D.N.H. Mar. 24, 2008). And because the

elements of Section 17(a) "are 'essentially the same' as the elements of a claim under Section 10(b) and Rule 10b-5", *Kelly II*, 765 F. Supp. 2d at 319 (citing *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)), *Janus's* holding and rationale also warrant judgment in favor of Mr. Rindner as to the Section 17(a) claims.

Accordingly, this Court should grant Mr. Rindner judgment on the pleadings and dismiss Counts 1 and 2. Alternatively, this Court should reconsider its prior ruling and grant summary judgment in favor of Mr. Rindner as to those two claims.

## ARGUMENT

### I. Legal Standards.

#### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) is subject to the same analysis "as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). Therefore, if, after accepting the complaint's factual allegations as true and drawing all inferences in favor of the plaintiff, "it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]'" the complaint must be dismissed. *Id.* (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).

#### B. Reconsideration.

Reconsideration of a prior judgment which did not constitute a final adjudication of all claims is proper "[u]nder Fed. R. Civ. P. 54(b) as well as the inherent power of the court to reconsider a prior decision at any time before the entry of final judgment." *Shervington v. Vill. of Piermont*, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010) (citing *Richman v. W.L. Gore & Assocs.*,

988 F. Supp. 753, 755 (S.D.N.Y. 1997)). There are no time constraints for reconsideration of an interlocutory order pursuant to Rule 54(b).[2]

Among the "major grounds justifying reconsideration [is] an intervening change of controlling law." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790); *see also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). Although reconsideration lies in the sound discretion of the district court, "[j]ustice requires the exercise of this discretion when, for example, there is an intervening change in controlling law, such as the issuance of a relevant United States Supreme Court decision." *Clinton*, 652 F. Supp. 2d at 530; *see also Cobalt Multifamily Investors I, LLC v. Shapiro*, No. 06-cv-6468, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009) (citation omitted) (holding that reconsideration is appropriate where there are "controlling decisions" that "might have reasonably altered the result").

As addressed herein, the Supreme Court's decision in *Janus* constitutes an intervening change in controlling law because it announced a new bright-line rule for primary liability under Section 10(b) and Rule 10b-5, and, by extension, Section 17(a).

---

[2] The time limit set forth in Local Rule 6.3 does not bar reconsideration where the reason for reconsideration arose after the 14-day window. *See Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 530 (S.D.N.Y. 2009) (holding that the time limit in Local Rule 6.3 does not apply where there is an intervening change in controlling law, including most notably a new Supreme Court decision); *see also Williams v. County of Nassau*, No. 03-cv-6337, 2011 WL 1240699, at *2 (E.D.N.Y. Mar. 30, 2011) ("It is true that Defendants filed their motion for reconsideration beyond the time-limits prescribed by Federal Rules of Civil Procedure 60(b) and 59(e), and Local Rule 6.3. Plaintiffs' argument, however, ignores a fundamental principle. A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal.") (citing Fed. R. Civ. P. 54(b)); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 217 F. Supp. 2d 423, 428 (S.D.N.Y. 2002).

C.      **Summary Judgment.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment carries the initial burden of demonstrating that there is an absence of a genuine issue of material fact.  *See id.* at 323-25.  The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The "plain language of Rule 56(c) mandates the entry of summary judgment against . . . a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

II.    ***Janus* Establishes a Bright-Line Rule Requiring "Ultimate Authority" Over Alleged Misstatements to Establish Primary Liability Under Rule 10b-5.**

In *Janus*, the Supreme Court interpreted the word "make" in Rule 10b-5 by its plain meaning, finding that one only "makes a statement by stating it."  131 S. Ct. at 2302.  Thus, the Court held that under Rule 10b-5, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Id*.  The Court made clear that "[w]ithout control, a person or entity can merely *suggest* what to say, not *'make'* a statement in its own right."  *Id.* (emphasis added).

The Court also emphasized that the new rule creates the Congressionally drawn "distinction between those who are primarily liable . . . and those who are secondarily liable."  *Id.* at 2302 n.6.  A contrary rule, the Court reasoned, would improperly blur the lines between primary and secondary liability, because "[i]f persons [] without control over the content of a

statement could be considered primary violators who 'made' the statement, then aiders and abettors would be almost non-existent." *Id.* at 2302.

Notably, the Court explicitly rejected the argument of the United States, as *amicus curiae*, that the term "'make' should be defined as 'create.'" *Id.* at 2303. The Court held that "the Government's definition of 'make' would [] lead to results inconsistent with [the Court's] precedent." *Id*. For example, the Court reasoned that the "Government's definition would [improperly] permit private plaintiffs to sue a person who 'provides the false or misleading information that another person then puts into the statement.'"[3] *Id*. The Court also ruled that primary securities fraud liability cannot attach simply based on "participating in the drafting of a false statement." *Id*. at 2304.

Accordingly, neither the "sufficiently responsible" test for primary liability the Court applied in its denial of Mr. Rindner's summary judgment motion, *Kelly II*, 765 F. Supp. 2d. at 319, nor the "substantial participation" test used in other jurisdictions, is any longer the governing law for primary liability claims under Rule 10b-5. The new rule announced in *Janus* requires "ultimate authority" over the alleged misstatement, which the Court interpreted as something significantly greater than "substantial assistance," for primary liability to attach.

Applying this new bright-line rule, the Supreme Court upheld the district court's dismissal of the Rule 10b-5 claims brought against Janus Capital Management LLC ("JCM"), "a

---

[3] Although *Janus* involved private plaintiffs, the Court's interpretation of the language of Rule 10b-5 applies equally to SEC enforcement actions. Indeed, this point was not lost on Justice Breyer, who recognized in dissent that the *Janus* holding applies to the SEC. *Id.* at 2310 (Breyer, J., dissenting). Nor has it been lost on Plaintiff, which has already recognized in another action that *Janus* applies to SEC enforcement claims. *See SEC v. Daifotis*, No. CV-11-0137 WHA, Plaintiff's Memorandum in Opposition to Defendant Daifotis's Motion for Reconsideration of Certain Portions of the Court's June 6, 2011 Order Denying His Motion to Dismiss, at 4 (N.D. Cal. July 6, 2011) (attached hereto as Exhibit B) (recognizing that "*Janus* narrowed the definition of 'to make' a statement for purposes of claims under Rule 10b-5," but arguing that the complaint adequate alleged the making of a statement by defendant).

mutual fund investment adviser," for allegedly fraudulent statements contained in the SEC filings of an affiliated but legally distinct entity, Janus Investment Fund ("JIF").  *See Janus*, 131 S. Ct. at 2299.  Specifically, the plaintiff alleged that JCM "participat[ed] in the writing and dissemination of [JIF's] prospectuses," such that JCM "made the misleading statements contained in the documents."  *Id.* at 2301 (quoting *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 121 (4th Cir. 2009), *rev'd by Janus*).  But the Court rejected that argument as a matter of law, holding that even JCM's alleged "significant[] involve[ment] in preparing the prospectuses" was insufficient to impose primary liability because "JCM did not 'make' those statements for purposes of Rule 10b-5."  *Id.* at 2305.

## III.    Judgment Should Be Granted on Counts 1 and 2 for Primary Liability Under Sections 10(b) and 17(a) Because *Janus* Directly Controls.

To impose primary liability under Section 10(b) and Rule 10b-5, the SEC must prove, *inter alia*, that Mr. Rindner either (1) made a material misrepresentation to the investing public, or (2) engaged in a scheme to defraud or used a fraudulent device.  *See KPMG*, 412 F. Supp. 2d at 371; *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996).  As both this Court and the SEC have recognized, the elements of a claim under Section 17(a)(1) are "essentially the same" as the elements of a claim under Section 10(b) and Rule 10b-5.  *SEC v. Monarch Funding*, 192 F.3d 295, 308 (2d Cir. 1999).

### A.    Mr. Rindner Cannot Be Primarily Liable Under Rule 10b-5(b) Because He Did Not Have "Ultimate Authority" Over the Statements at Issue.

As discussed *supra*, to be primarily liable under Rule 10b-5(b) for misrepresentation fraud, *Janus* requires that the individual actually "make" the alleged statements, which the Supreme Court interpreted to mean that the individual had "ultimate authority over the statements."  131 S. Ct. at 2302.  However, the allegations and uncontroverted facts in this case clearly establish that Mr. Rindner's role fell far short of having "ultimate authority" over the

contents and communication of the public statements in question. Despite the SEC's best efforts to amplify Mr. Rindner's involvement in an attempt to state a legally cognizable claim under old law, the SEC's allegations and ultimate proof are plainly insufficient under the new test announced in *Janus*.

As an initial matter, the SEC's Complaint alleges no facts even remotely suggesting that Mr. Rindner had ultimate authority over the SEC filings in question. *See* Compl. ¶ 36 (alleging only that Mr. Rindner "substantially contributed to various statements to investors that incorporated the Company's fraudulent financial results, including AOL's reported online advertising revenue and other financial results"); *see also* Plaintiff SEC's Omnibus Opposition to Defendants' Motion to Dismiss at 63-64 (arguing that Mr. Rindner "made" false statements by "substantially contribut[ing]" to them).

More critically, however, the SEC cannot point to any evidence from the massive record in this case that would dispute the fact that Mr. Rindner had no authority – much less "ultimate authority" – over the public statements alleged to be false and misleading in the Complaint. Indeed, in opposing Mr. Rindner's motion for summary judgment, the SEC, after summarizing its factual allegations regarding Mr. Rindner's conduct, characterized his involvement with the alleged misstatements as follows:

> Under these stark circumstances, Rindner and others, like Wovsaniker, **to whom no direct public attributions were made, are "sufficiently responsible" for the misstatements**: the very inflated advertising numbers **that others at the company … personally touted**. *SEC v. KPMG*, 412 F. Supp. 2d at 375.

Plaintiff Securities and Exchange Commission's Opposition to Defendant Rindner's Motion for Summary Judgment ("SEC Opp.") (Dkt. 182), at 20 (emphasis added).[4]   Indeed, given this clear

---

[4] Mr. Rindner has at all times vigorously disputed the SEC's characterization of his conduct relevant to the Complaint, and will continue to do so at trial. The point here is that even taking

admission that Mr. Rindner did not "make" any of the misstatements under *Janus*, it comes as no surprise that the SEC could not point to any evidence to contradict the statements of undisputed facts supporting summary judgment for Mr. Rindner on these grounds.  *See* Plaintiff Securities and Exchange Commission's Response to Defendant Steven Rindner's Statement of Material Facts as to Which There Is No Dispute ¶¶ 103-106.

Accordingly, it is readily apparent from the SEC's original allegations and adduced evidence that Mr. Rindner did not possess *any* authority over the actual statements eventually made to the investing public, much less "ultimate authority."  Even assuming *arguendo* that Mr. Rindner was "sufficiently responsible" for, or "substantially participated" in the drafting of, the public statements—which would be a very generous characterization of the SEC's unsubstantiated allegations—those facts are simply insufficient to establish primary liability under *Janus*.

**B.      *Janus* Confirms that Mr. Rindner Cannot Be Liable Under Rule 10b-5(a) or (c).**

Although *Janus* did not explicitly address "scheme" liability under Rule 10b-5(a) or (c), the rationale underlying the Court's ruling validates Mr. Rindner's argument on summary judgment – and the case law relied upon therein – that he cannot be held primarily liable under a "scheme" premised entirely upon alleged public misrepresentations for which he lacked "ultimate authority."   *See* Defendant Steven E. Rindner's Memorandum in Support of His Motion for Summary Judgment at 15-17 (citing *KPMG*, 412 F. Supp. 2d at 377-78; *PIMCO*, 341 F. Supp. 2d at 466-67; *SEC v. Lucent Tech., Inc.*, 610 F. Supp. 2d 342, 361 (D.N.J. 2009)).

---

as true the SEC's account of Mr. Rindner's conduct, that account falls far short of demonstrating that Mr. Rindner had "ultimate authority" over the alleged misstatements.

Where the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, these cases and others have uniformly rejected attempts by the SEC to bypass the elements necessary to impose "misstatement" liability by merely labeling the alleged misconduct a "scheme" rather than a "misstatement." *See, e.g.*, *Lucent*, 610 F. Supp. 2d at 361 (rejecting scheme liability where "[t]he alleged deception . . . arose from the failure to disclose the real terms of the deal, which is nothing more than a reiteration of the misrepresentations and omissions that under lie plaintiffs [sic] disclosure claim") (quotations omitted); *KPMG*, 412 F. Supp. 2d at 378 (holding that it would be "improper to impose primary liability on [the defendant] by designating the alleged fraud a 'manipulative device' rather than a 'misstatement'" where "the core misconduct alleged is in fact a misstatement"). In similarly rejecting such an attempt by the SEC, the *PIMCO* court expounded upon the underlying reasoning: to permit scheme liability "to attach to individuals who did no more than facilitate preparation of material misrepresentations or omissions actually communicated by others . . . would swallow" the bright-line test between primary and secondary liability altogether. 341 F. Supp. 2d at 467. *See also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (rejecting scheme liability where "the sole basis for such claims is alleged misrepresentations or omissions").

*Janus's* clarification of the plain meaning of "mak[ing]" a misstatement under Rule 10b-5 similarly draws a clear distinction between primary misstatement liability and secondary liability. Such a distinction is not obviated in circumstances where, such as here, the SEC seeks to impose primary scheme liability premised upon an alleged false statement. To the contrary, that distinction retains the significance attached to it by *Janus,* as permitting primary scheme

11

liability in the context of an alleged misstatement would effectively render the bright-line rule in *Janus* meaningless.

Indeed, to avoid the clear distinction about which the Supreme Court was concerned in *Janus*, the SEC could simply allege that the conduct *Janus* has now held is insufficient to establish primary liability under 10b-5(b) is actually scheme-related conduct supporting primary liability under 10b-5(a) and (c), notwithstanding that alleged misstatements nonetheless represent the basis of that claim. It cannot be the case, however, that a defendant who allegedly participated in some manner in the preparation of public misrepresentations, yet lacked the "ultimate authority" over such misrepresentations now required under *Janus*, could nonetheless be held primarily liable under a scheme theory of liability, rather than be held secondarily liable as envisioned by *Janus*. The SEC's claims under Rule 10b-5(a) and (c) must therefore be dismissed.

**C.** ***Janus* Precludes Primary Liability as to Mr. Rindner Under Section 17(a).**

As both this Court and the SEC have recognized, the elements of a claim under Section 17(a) "are 'essentially the same' as the elements of a claim under Section 10(b) and Rule 10b-5." *Kelly II*, 765 F. Supp. 2d at 319 (quoting *Monarch Funding Corp.*, 192 F.3d at 308); SEC Opp. at 21 (citing same); *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (holding that, apart from scienter distinctions, "essentially the same elements must be established" under Section 17(a) and Rule 10b-5. Indeed, as numerous courts have confirmed, where a "Rule 10b-5 action is available, there is no reason to think that a § 17(a) action would have different elements," *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 531 (7th Cir. 1985), for "[i]n cases of alleged misstatements in public filings submitted to the [SEC], the scope of the two sections is essentially coextensive . . . ." *SEC v. Wolfson*, 539 F.3d 1249, 1257 (10th Cir. 2008) (citing *SEC v. Power*, 525 F. Supp. 2d 415 419-20 (S.D.N.Y.

2007)).  Moreover, it is well accepted that Section 17(a) was the model for Rule 10b-5, which was drafted to close a loophole in the 1933 Securities Act.  *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 855 (2d Cir. 1968) (citing *Birnbaum v. Newport Steel Corp*., 193 F.2d 461, 463 (2d Cir. 1952); *Hooper v. Mountain States Secs. Corp.*, 282 F.2d 195, 201 n.4 (5th Cir. 1960); and *SEC v. Van Horn*, 371 F.2d 181, 184-86 (7th Cir. 1966)).  It is, therefore, not surprising that courts have consistently found that the provisions contain nearly identical factors.

Accordingly, even though the Supreme Court did not explicitly address it in *Janus*, the "ultimate authority" test for primary liability under Rule 10b-5 applies with equal force to an analysis of primary liability under Section 17(a).  Therefore, because Mr. Rindner cannot be primarily liable under Rule 10b-5, he also cannot be primarily liable under Section 17(a).  *See Zerman v. Ball*, 735 F.2d 15, 23 (2d Cir. 1984) ("If . . . [a plaintiff] does not prevail on her claim under the requirements of Rule 10b-5, it is unlikely, given their similarity to the requirements of § 17(a), that she could prevail under § 17(a) either.").

Although the language of Section 17(a)(2) is not identical to that of Rule 10b-5(b), numerous pre-*Janus* decisions have recognized that it has the same functional meaning when it comes to creating primary liability.  That is, to prove a primary violation of either Rule 10b-5(b) or Section 17(a)(2), "the SEC must establish that the defendant *made* material false statements or omissions . . . ."  *SEC v. McGinn, Smith & Co.*, 752 F. Supp. 2d 194, 212-13 (N.D.N.Y. 2010) (emphasis added) (citing *SEC v. Global Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94, 111 (D. Conn. 2004) ("in order to prevail on a § 17(a) violation the SEC must show that 'defendant (1) *made* a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device . . .'") (emphasis added)); *see also SEC v. Espuelas*, 699 F. Supp. 2d 655, 659-63 (S.D.N.Y. 2010) (applying pre-*Janus* interpretation of "make" identically to SEC's

misstatement claims under both Section 17(a) and Rule 10b-5.[5]  After *Janus*, the requirement

under both Rule 10b-5 and, as this Court has repeatedly recognized, Section 17(a)(2), that a

defendant "make" the offending statement can only be fulfilled by proof that he had "ultimate

authority" over that statement.  Here, the SEC has neither made such allegations, nor can it can

muster any such proof.

Furthermore, the language of Sections 17(a)(1) and (3) is virtually identical to that of

Rule 10b-5(a) and (c).  *See SEC v. Coffey*, 493 F.2d 1304, 1313 (6th Cir. 1974) ("A Section

17(a)(1) and (3) or Rule 10b-5(1) and (3) violation depends on . . . [a] fraudulent scheme."); *SEC*

*v. Fraser*, No. 09-cv-443, 2010 WL 5776401, at *7 (D. Ariz. Jan. 28, 2010) (holding "[s]cheme

liability is derived from the first and third prongs in Section 17(a) and Rule 10b-5" and analyzing

both claims identically) (citing *SEC v. Fitzgerald*, 135 F. Supp. 2d 992, 1028-29 (N.D. Cal.

2001)); *see also SEC v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 206 n.3 (S.D.N.Y.

2008) (finding that "Section 17(a)(1)" is the "parallel provision to Rule 10b-5(a)").  This means

that when, as here, the SEC cannot sustain a case for primary "scheme liability" under Rule 10b-

5(a) or (c), it also cannot do so under Section 17(a)(1) or (3).  *See Coffey*, 493 F.2d at 1313

(finding that "liability under section 17(a)(1) and (3) and section 10(b), specifically Rule 10b-

---

[5] Although the First Circuit has reached a different conclusion, finding that Section 17(a)(2)'s literal terms do not require that a defendant "make" a statement, *see SEC v. Tambone*, 597 F.3d 436, 444 (1st Cir. 2010), *Tambone's* reading of Section 17(a)(2) cannot be reconciled with this Court's repeated holdings that Section 17(a)(2) requires the defendant to "make" a statement, and almost sixty years of Second Circuit jurisprudence holding that the elements of Section 17(a) and Rule 10b-5 are "essentially the same."  In any event, the SEC does not allege in the Complaint, and has not adduced any evidence, that Mr. Rindner "obtain[ed] money or property by means of any untrue statement of material fact" under the literal terms of Section 17(a)(2), and it certainly has made no such argument in its briefings to the Court.  Indeed, this Court has already recognized that the SEC "has proffered no evidence this Court could use to reasonably approximate the percentage of Rindner's . . . compensation that was causally connected to the alleged violations."  *See Kelly II*, 765 F. Supp. 2d at 325.  Thus, the SEC's Section 17(a)(2) claim against Mr. Rindner must fail even under *Tambone's* literal reading of the statute.

5(1) and (3) . . . is erroneous as a matter of law and must be reversed"); *see also Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").

Accordingly, because Mr. Rindner had no authority over the dissemination of the alleged misstatements, and because he did not participate in a separate legally cognizable scheme, he cannot be primarily liable under Section 17(a) just as he cannot be primarily liable under Rule 10b-5.

## <u>CONCLUSION</u>

For the reasons set forth above and pursuant to Rule 12(c), the Court should grant Mr. Rindner judgment on the pleadings, and dismiss Counts 1 and 2.  Alternatively, pursuant to Rule 54(b), the Court should amend its January 7 Order and grant summary judgment in favor of Mr. Rindner on Counts 1 and 2 in light of the Supreme Court's decision in *Janus*.

Respectfully Submitted,

 /s/ Roger E. Warin
_____
Roger E. Warin (admitted *pro hac vice*)
Reid Weingarten (admitted *pro hac vice*)
Patrick F. Linehan (admitted *pro hac vice*)
Robert Moore (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

*Attorneys for Defendant Steven E. Rindner*

Dated:  July 11, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2011, I caused a true and correct copy of the foregoing

Defendant Steven E. Rindner's Memorandum of Law in Support of His Motion for Judgment on

the Pleadings, or Alternatively for Partial Reconsideration of the Court's January 7, 2011 Order

Denying Summary Judgment to be served via the Court's ECF filing system, upon the following

counsel:


Richard Hong
John J. Bowers
John D. Worland, Jr.
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC 20549
*Attorneys for Plaintiff*

Bruce E. Yannett
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

Jonathan Tuttle
Ada Fernandez Johnson
DEBEVOISE & PLIMPTON LLP
555 13th Street, NW
Suite 1100E
Washington, DC 20004
*Attorneys for John Michael Kelly*

Stephen G. Topetzes
Glenn R. Reichardt
Erin Ardale Koeppel
Bethany M. Nikfar
K & L GATES LLP
1601 K Street, NW
Washington, DC 20006
*Attorneys for Mark Wovsaniker*


/s/ Patrick F. Linehan
Patrick F. Linehan