# EXHIBIT B

David J. Gottesman (Trial Counsel) (Illinois Bar No. 6182719)
(gottesmand@sec.gov)
Frederick L. Block (blockf@sec.gov)
Robert A. Cohen (cohenr@sec.gov)
Melissa R. Hodgman (hodgmanm@sec.gov)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-4030
Telephone:  (202) 551-4470 (Gottesman)
Facsimile:  (202) 772-9245 (Gottesman)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>   vs.<br><br>KIMON P. DAIFOTIS and RANDALL MERK,<br><br>     Defendants. | Case No. CV-11-0137 WHA<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DAIFOTIS'S MOTION FOR RECONSIDERATION OF CERTAIN PORTIONS OF THE COURT'S JUNE 6, 2011 ORDER DENYING HIS MOTION TO DISMISS**<br><br>Date:    July 28, 2011<br>Time:   2:00 p.m.<br>Judge:  Hon. William H. Alsup |

Dated:  July 6, 2011

David J. Gottesman
Frederick L. Block
Robert A. Cohen
Melissa R. Hodgman

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-5985
Telephone:  (202) 551-4470 (Gottesman)
Facsimile:  (202) 772-9245 (Gottesman)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ISSUES TO BE DECIDED ................................................................................................ iv

INTRODUCTION .............................................................................................................. 1

PROCEDURAL BACKGROUND ..................................................................................... 2

THE *JANUS* DECISION .................................................................................................. 3

ARGUMENT ..................................................................................................................... 4

I.      DAIFOTIS COMMITTED PRIMARY VIOLATIONS,
UNDER THE RULE ANNOUNCED IN *JANUS* ................................................. 4

      A.     Daifotis Concedes That He Was the "Maker" of
Some of the Misstatements Alleged In the Complaint ........................... 4

      B.     Daifotis Was the "Maker" of Other Misstatements Alleged
in the Complaint That Were Attributed to Him Implicitly ..................... 6

II.     BECAUSE PRIMARY LIABILITY UNDER RULE 10b-5 HAS BEEN
ESTABLISHED, DAIFOTIS'S MOTION FOR RECONSIDERATION
SHOULD BE DENIED AND NO FURTHER INQUIRY INTO THE
SUFFICIENCY OF THE COMPLAINT IS NEEDED ...................................... 7

III.    THE SECTION 17(a) CLAIM IS SUFFICIENT .............................................. 9

IV.    THE SECTION 34(b) CLAIM IS SUFFICIENT ........................................... 12

      A.     *Janus* Does Not Apply to ICA Section 34(b) Claims ......................... 12

      B.     Daifotis "Made" Misstatements Prohibited by Section 34(b) .............. 14

V.     THE AIDING-AND-ABETTING CLAIMS SHOULD NOT BE DISMISSED ............. 15

      A.     The Aiding-and-Abetting Claims Are Properly Stated ......................... 15

      B.     Daifotis Cannot Properly Challenge the Aiding-and-Abetting
Claims in the Present Motion for Reconsideration ............................... 17

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007)...........................................13

*Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035 (N.D. Cal. 2009) .......................9

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) ...............................................................................................4, 11

*Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335 (N.D. Cal. 1991) ......................9

*Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010) ...............................................................13

*General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581 (2004) .............................13

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011) .........................................................................1, 3, 4, 6, *passim*

*Lilley v. Charren*, 936 F. Supp. 708 (N.D. Cal. 1996).........................................................9

*McGinn, Smith & Co., Inc. v. FINRA,* No. 11-825 (CKK), 2011 WL 1833242
  (D.D.C. May 15, 2011) .................................................................................................15

*Molecular Technology Corp. v. Valentine*, 925 F.2d 910 (6th Cir. 1991)...........................8

*Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048 (N.D. Cal. 2004)....................9

*SEC v. Advance Growth Capital Growth Corp.*, 470 F.2d 40 (7th Cir. 1972) .................13

*SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996).........................................................................8

*SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996)....................................9

*SEC v. National Securities., Inc.,* 393 U.S. 453 (1969) .....................................................12

*SEC v. Pimco Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454 (S.D.N.Y.
  2004) .............................................................................................................................13

*SEC v. Tambone*, 550 F.3d 106 (1st Cir. 2008) ..........................................................10, 11

*SEC v. Tambone*, 597 F.3d 436 (1st Cir. 2010) ...............................................................10

*Stephenson v. Calpine Conifers II*, 652 F.2d 808 (9th Cir. 1981), *overruled on
  other grounds by In re Washington Public Power Supply System Sec.
  Litig.,* 823 F.2d 1349 (9th Cir. 1987)............................................................................9

*Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522 (7th Cir.
  1985) ...............................................................................................................................9

*In re Washington Public Power Supply System Sec. Litig.*, 823 F.2d 1349 (9th
  Cir. 1987) ......................................................................................................................11

*Zaluski v. United American Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008) ................... 5

**STATUTES**

Securities Act of 1933

    Section 17(a) [15 U.S.C. § 77(q)(a)].............................................. 1, 8, 9, 10, 11, 12, 13

    Section 17(a)(2) [15 U.S.C. § 77(q)(a)(2)] ...................................................... 10, 11, 13

Securities Exchange Act of 1934

    Section 15A [15 U.S.C. § 78o] ................................................................................ 15

    Rule 10b-5 [17 C.F.R. § 240.10b-5] ............................................ 1, 9, 10, 11, 13, 14, 15

Investment Company Act of 1940

    Section 24 [15 U.S.C. § 80a-24] ............................................................................. 14

    Section 34(b) [15 U.S.C. §80a-33(b)] ...................................... 1, 12, 13, 14, 15, 16, 17

    Rule 24b-3 [17 C.F.R. § 270.24b-3] ........................................................................ 14

## ISSUES TO BE DECIDED

1.      Whether, based upon *Janus Capital Group, Inc. v. First Derivative Traders,* No. 09-525, 2011 WL 2297762, at *5 (U.S. Jun. 13, 2011), defendant Kimon P. Daifotis has shown any grounds for the Court to change its prior decision that the Complaint sufficiently states primary liability claims under Exchange Act Rule 10b-5, where the Complaint alleges a number of misstatements that Daifotis spoke or that were attributed to him.

2.      Whether the standards set forth in *Janus* apply to claims under Section 17(a) of the Securities Act.

3.      Whether the standards set forth in *Janus* apply to claims under Section 34(b) of the Investment Company Act.

4.      Whether the Complaint sufficiently states a claim for aiding-and-abetting Rule 10b-5 violations, and whether that issue is a proper subject of the present motion for reconsideration.

Plaintiff, the United States Securities and Exchange Commission ("SEC"), states the following in opposition to Defendant Kimon P. Daifotis's ("Daifotis") Motion for Reconsideration of Certain Portions of the Court's June 6, 2011 Order Denying His Motion to Dismiss ("Motion").

## **INTRODUCTION**

Nothing in Daifotis's Motion supports changing the Court's decision that the First through Sixth Claims in the SEC's Complaint are legally sufficient.   First, his challenge to the Complaint's claim under Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") [17 CFR § 240.10b-5] fails because Daifotis admits that the Complaint alleges his "making" of statements, even under the standard set forth in *Janus Capital Group, Inc. v. First Derivative Traders,* 131 S. Ct. 2296, 2302 (2011).

Second, Daifotis errs in asking the Court to strike factual allegations that do not meet *Janus's* test for making statements within the context of Rule 10b-5.  Those additional factual allegations in the Complaint remain relevant to other primary and aiding-and-abetting claims in the Complaint.

Third, Daifotis erroneously argues that *Janus* applies to claims under Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 34(b) under the Investment Company Act ("ICA") [15 U.S.C. §80a-33(b)].  *Janus* applies only to Rule 10b-5, not any other statutes or rules relied upon in the Complaint, but even if *Janus* applied to those other statutes, the Complaint sufficiently alleges claims against Daifotis.  Finally, *Janus* has no impact on the Complaint's aiding-and-abetting claims, which are sufficiently stated and are not a proper subject of Daifotis's Motion.  For those reasons, Daifotis's Motion should be denied.

## PROCEDURAL BACKGROUND

Defendants filed separate motions to dismiss the Complaint on April 7, 2011.  In an order entered on June 6, 2011 (the "June 6 Order"), the Court granted in part and denied in part the motions.  The Court denied most aspects of the defendants' motions, upholding most of the claims in the Complaint.  The Court, however, dismissed with prejudice the Seventh and Eighth Claims in the Complaint, and dismissed or limited certain aspects of other claims.[1] The Court allowed the SEC to seek leave to amend certain of the allegations.[2]  The time for seeking such amendments has not yet run.[3]

On June 13, 2011, the Supreme Court issued its decision in *Janus*.  Defendants filed a joint motion on June 14, 2011, seeking leave to file a motion for reconsideration.  Defendants asked only for leave to seek reconsideration of "the primary liability portions of the Court's [June 6, 2011] Order . . . ."  *See* Defendants' June 14, 2011 Joint Motion (docket no. 59) at 5. The Court entered an order on June 15, 2011, permitting defendants "to move for reconsideration of the June 6 Order denying defendants' motions to dismiss the Commission's

---

[1] The Court found that the Complaint did not allege sufficient participation by Merk with regard to a particular email and a "Manager's Discussion" document alleged in paragraphs 153 and 159 of the Complaint (June 6 Order at 9), the Court dismissed the scheme liability theory (*id.* at 13) against Merk, dismissed the claim under Section 17(a)(2) of the Securities Act (*id.* at 14) against Merk, and limited the claim under Investment Advisers Act Rule 206(4)-8 to conduct after September 10, 2007 (*id.* at 16).

[2] The June 6 Order permitted the SEC to seek to amend the Complaint with regard to the allegations in paragraphs 153 and 159 against Merk and the claim under Section 17(a)(2) against Merk.

[3] The June 6 Order originally gave the SEC fourteen days to seek to amend the complaint, but under the Court's June 17, 2011 order on the parties' stipulation (docket no. 65), that time was extended to twenty-one days after the Court rules on the defendants' present motions for reconsideration.

**primary liability claims.**" *See* Order entered June 15, 2011 (docket no. 61) (emphasis added).

On June 17, 2011, the Court entered an order (docket no. 65) on the stipulation of the parties, which among other things, set a schedule for the defendants' motion for reconsideration, and amended the date for the SEC to move for leave to file an amended complaint and for defendants to answer (*i.e.*, providing that the SEC has 21 days after the Court rules on the motions for reconsideration to file its motion for leave to amend the complaint, and allowing defendants 14 days to answer).[4]

### **THE *JANUS* DECISION**

The Supreme Court in *Janus* held that, "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority **over the statement** including its content and whether and how to communicate it."[5]  131 S. Ct. at 2302.  (emphasis added).  The Court also provided a significant example of who has such authority:  "[I]n the ordinary case, **attribution within a statement or implicit from surrounding circumstances** is strong evidence that a statement was made by — and only by — the party to whom it is attributed." *Id.* (emphasis added).

---

[4] The SEC anticipates that it will file a motion for leave to file an amended complaint. At this time, the SEC anticipates that it will seek to add or amend certain allegations to address certain of the items that the Court's June 6 Order found to be deficient, to add other appropriate claims or allegations of additional misstatements by defendants, and to address other issues as needed based upon the Court's ruling on the defendants' motions for reconsideration.

[5] Daifotis (Motion at 3-4) erroneously focuses on whether he was the "ultimate authority" of the Schwab entities with whom he was associated.  That is not the standard under *Janus,* which merely addressed whether a defendant has ultimate authority over a particular "statement."

The Supreme Court based its decision on two grounds.  First, the Court considered the dictionary definition of the word "make" in the context of the Rule 10b-5(b) phrase "to make any . . . statement."  The Court concluded that the phrase is "the approximate equivalent of 'to state.'"  131 S. Ct. at 2302.

Second, the Court reasoned that applying a broader definition of "make" would expand the scope of liability in private plaintiffs' actions under Rule 10b-5.  The Court noted that its prior decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 180 (1994), precluded private rights of action against aiders and abettors. The Court stated, "[s]uch suits – against entities that contribute 'substantial assistance' to the making of a statement but do not actually make it may be brought by the SEC, *see* 15 U.S.C.A § 78t(e), but not by private parties."  131 S. Ct. at 2302.   A broader definition of "make," the Court stated, would "undermine" that principle.  *Id.*

While *Janus* narrowed the definition of "to make" a statement for purposes of claims under Rule 10b-5, that decision does not lessen the viability of the Complaint in this case because, even under *Janus*, the Complaint states actionable Rule 10b-5 claims against both defendants.

## ARGUMENT

### I.    DAIFOTIS COMMITTED PRIMARY VIOLATIONS, UNDER THE RULE ANNOUNCED IN *JANUS*

#### A.    Daifotis Concedes That He Was the "Maker" of Some of the Misstatements Alleged In the Complaint

Daifotis's Motion (at 4) concedes that, of the misstatements[6] set forth in the Complaint, Daifotis "purportedly made only five of them."  Daifotis's Motion (Appendix C)

---

[6] For the sake of brevity, we generally use the term "misstatement" to refer collectively to all misrepresentations or misleading omissions of material fact within a single

concedes that the Complaint sufficiently alleges that Daifotis made these "[a]lleged

[m]isstatements":

- September 2005 advertisement quoting Daifotis and containing his picture (Compl., para. 74(f));

- Spring 2006 brochure, attributing a statement to Daifotis (Compl., para. 74(b));

- August 2007 statement spoken by Daifotis in a conference call (Compl., para. 68);

- August 14, 2007 statement spoken by Daifotis in a conference call (Compl., para. 141);

- August 16, 2007 statement spoken by Daifotis in a conference call (Compl., para. 142).

As discussed below, Daifotis's count is short. However, the fact that the Complaint

indisputably alleges that Daifotis "made" misstatements under the standard announced in

*Janus* is a sufficient basis upon which to uphold the Rule 10b-5 claim against him. *See, e.g.,*

*Zaluski v. United American Healthcare Corp.,* 527 F.3d 564, 573 (6th Cir. 2008) (noting case

law holding that "a single statement" that was false was actionable). Daifotis seems to attach

some significance to the argument that he was not the maker of many other misstatements

alleged in the Complaint. That makes no difference for purposes of the present motion,

because once he made even a single misstatement, he triggered his liability. *Id.* at 573.

---

document. Each of those documents could include multiple such misrepresentations or omissions, but specifying each of them is not necessary for resolution of the pending motions for reconsideration.

### B. Daifotis Was the "Maker" of Other Misstatements Alleged in the Complaint That Were Attributed to Him Implicitly

As noted above, Daifotis's Motion erroneously asserts that the Complaint alleges he was the "maker" of only five misstatements. Actually, under *Janus,* the Complaint sufficiently alleges that Daifotis made at least two other misstatements (in addition to those that, as discussed above, Daifotis acknowledged), for a total of at least seven.

*Janus,* held that "attribution within a statement or implicit from surrounding circumstances is strong evidence" that a defendant was the maker of the statement. 131 S. Ct. at 2302. The Complaint alleges at least two additional statements that are attributed to Daifotis implicitly by surrounding circumstances, and thus were made by him:

- A November 2007 "Manager's Discussion" issued to the public under Daifotis's title, "Manager." (Compl., para. 159). A copy is submitted herewith as Exhibit 1. Daifotis was the lead portfolio manager of YieldPlus, and publicly held himself out in that role. Daifotis was actively involved in the day-to-day operations of YieldPlus (Compl., para. 62). The title "Manager's Discussion" and reference to "Manager" are sufficient facts and circumstances to implicitly attribute the statement to Daifotis.

- An advertisement described in paragraph 74(g) of the Complaint.[7] A copy is submitted herewith as Exhibit 2. The advertisement included Daifotis's name and picture – with no other person's name or picture – and thus implicitly attributed its contents to Daifotis. The advertisement states that YieldPlus is "an ultrashort bond fund, not a money market fund. It seeks to provide higher

---

[7] While the Complaint refers to the advertisement as being a September 2005 document, the advertisement actually was published in May 2005.

yield with slightly higher risk than a money market fund, but maintains minimal fluctuation in share price and lower risk than a longer-term bond fund." This was misleading for the reasons described in paragraph 75 of the Complaint.

The implication with regard to the above statements was that they were made by Daifotis. Accordingly, he can be held primarily liable for such statements under *Janus.*

## II. BECAUSE PRIMARY LIABILITY UNDER RULE 10b-5 HAS BEEN ESTABLISHED, DAIFOTIS'S MOTION FOR RECONSIDERATION SHOULD BE DENIED AND NO FURTHER INQUIRY INTO THE SUFFICIENCY OF THE COMPLAINT IS NEEDED

The decision in *Janus* was the only ground relied upon by Daifotis in seeking leave to file his present Motion. As shown above, the Complaint's Rule 10b-5 claim against Daifotis easily survives the *Janus* rule because Daifotis indisputably "made" multiple misstatements alleged in the Complaint.

We respectfully suggest that, for several reasons, it would be an inefficient use of resources at this juncture to parse every other statement alleged in the Complaint to determine whether it *also* meets the standards set forth in *Janus*. First, such an inquiry is better left to a later stage of the case, after full factual development in discovery. In light of the new rule announced in *Janus*, discovery in this case will explore the issue of who had authority over particular statements, including those not attributed to any natural person. Once those facts are uncovered, the issue of whether Daifotis had the requisite authority over other statements can be better assessed. Daifotis frequently points to the fact that the SEC conducted an investigation prior to filing this case. But that was before *Janus* was decided. As Daifotis readily concedes, *Janus* changes the prevailing law in this circuit, so it is reasonable that further inquiries are needed.

Second, there would be little practical benefit to evaluating every allegation in the Complaint under the *Janus* rule. Statements that might be insufficient to allege primary liability for Rule 10b-5 claims under *Janus* remain relevant to other claims in the Complaint. As discussed below, *Janus* does not apply to claims under Section 17(a) of the Securities Act and Section 34(b) of the ICA. Thus, the factual allegations that do not meet the *Janus* test for purposes of Rule 10b-5 remain a proper basis for primary liability claims under those other statutes. Such allegations also remain proper factual predicates for the aiding and abetting claims that the Court upheld and that *Janus* did not affect. For example, allegations that the defendants substantially participated or assisted in misstatements are relevant to establishing liability for aiding and abetting. *See, e.g., SEC v. Fehn,* 97 F.3d 1276, 1293 (9th Cir. 1996) ("The term 'substantial assistance' has been interpreted to include 'participation in the editing' of information for the purpose of marketing securities.") (*quoting Molecular Technol. Corp. v. Valentine,* 925 F.2d 910, 918 (6th Cir. 1991)).

The Complaint includes claims for aiding and abetting violations of Rule 10b-5 (the Complaint's Second Claim), Section 206(4) of the Advisers Act and Rule 206(4)-8 (Fifth Claim), and Sections 206(1) and (2) of the Adviser's Act (Fourth Claim) (asserted against Merk only). *Janus* does not change the nature of involvement necessary for aiding-and-abetting liability.

Third, the Court already ruled that even statements that do not by themselves furnish a basis for primary liability still are a proper subject for discovery. *See* Court's June 6 Order at 22. For all of the above reasons, little would be accomplished in pigeon-holing each of the Complaint's allegations at this still early juncture of the case.

For the above reasons, Daifotis has no proper basis for his request that all allegations that do not establish Rule 10b-5 liability under *Janus* should be stricken. Motion at 8 n.4. As we noted in the last round of briefing, "motions to strike are disfavored and generally should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Castaneda v. Burger King Corp.,* 597 F. Supp. 2d 1035, 1046 (N.D. Cal. 2009), citing *Platte Anchor Bolt, Inc. v. IHI, Inc.,* 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004); *Lilley v. Charren,* 936 F.Supp. 708, 713 (N.D. Cal. 1996) (same), citing *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). Because all of the factual allegations in the Complaint remain relevant to the Complaint's claims, they should not be stricken.

## III.   THE SECTION 17(a) CLAIM IS SUFFICIENT

Daifotis (Mo. at 7 n.3) also argues that the rule in *Janus* applies to claims under Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] (the Complaint's Third Claim). He cites several cases stating that the elements of Section 17(a) claims are similar to those of Rule 10b-5 claims.[8] But the elements are not identical, especially after *Janus*. In particular, the word "make" – which is present in Rule 10b-5(b) and which the Supreme Court relied upon in reaching its decision in *Janus* – is noticeably absent from the operative language of Section 17(a).

*Janus* is silent about Section 17(a), saying nothing that expressly or implicitly indicates that the case's holding should be extended to that provision. Moreover, the

---

[8]   Daifotis cites *SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450 (2d Cir. 1996); *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522 (7th Cir. 1985), and *Stephenson v. Calpine Conifers II,* 652 F.2d 808 (9th Cir. 1981), *overruled on other grounds by In re Washington Public Power Supply Sys. Sec. Litig.,* 823 F.2d 1349 (9th Cir. 1987).

Supreme Court's stated reasons for its ruling in *Janus* are inapplicable to Section 17(a). First, the Court relied on the dictionary definition of Rule 10b-5's phrase "to make." Rule 10b-5 makes it unlawful "to make any untrue statement." The Court held that one "makes a statement by stating it." 131 S. Ct. at 2302.

But the operative language in Section 17(a) is entirely different from that in Rule 10b-5.[9] Section 17(a) does not base liability on a defendant's "making" a false statement. Rather, Section 17(a) makes it unlawful (1) "to employ any device, scheme, or artifice to defraud," (2) "to obtain money or property by means of any untrue statement" or omission of material facts, or (3) "to engage in" certain types of transactions. Because the operative language in Section 17(a) does not contain the crucial "to make" phrase upon which *Janus* was based, the rule announced in *Janus* does not apply to Section 17(a) claims.

This difference between Rule 10b-5 and Section 17(a) was noted in *SEC v. Tambone*, 550 F.3d 106, 128 (1st Cir. 2008),[10] which held that:

> based on our reading of the text of section 17(a)(2), we conclude that this provision covers conduct that may not be prohibited by section 10(b) and Rule 10b-5. Specifically, primary liability may attach under section 17(a)(2) **even when the defendant has not himself made a false statement** in connection with the offer or sale of a security.

---

[9] Section 17(a) [15 U.S.C. § 77(q)(a)] makes it unlawful to:

(1) to employ any device, scheme, or artifice to defraud,
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

[10] The First Circuit initially vacated, but later reinstated the portions of *Tambone* regarding Section 17(a)(2), among other points. *See SEC v. Tambone*, 597 F.3d 436, 450 (1st Cir. 2010).

(Emphasis added.)

The *Tambone* court focused on the language of Section 17(a)(2). The court stated:

> [Section 17(a)(2)] prohibits an individual from "obtain[ing] money or property by means of any untrue statement." It does not state, however, that the seller must himself make that untrue statement. Indeed, the text suggests that the opposite is true-that it is irrelevant for purposes of liability whether the seller uses his own false statement or one made by another individual. Liability attaches so long as the statement is *used* "to obtain money or property," regardless of its source.

*Id.* at 127. Because primary liability under Section 17(a)(2) does not depend on a defendant's "making" a misstatement, *Janus's* interpretation of "make" is not relevant to Section 17(a)(2) claims.

Second, the Court in *Janus* relied upon the principle that a broader definition of "make" under Rule 10b-5 would expand the scope of private suits under that rule, contrary to *Central Bank,* which limited the scope of liability in private actions under Rule 10b-5. *Janus,* 131 S. Ct. at 2302. But no such concerns exist with regard to Section 17(a) because there is no private right of action under that statute; only the SEC may bring actions under Section 17(a). *See In re Washington Public Power Supply System Sec. Litig.,* 823 F.2d 1349, 1358 (9th Cir. 1987) (holding that there is no private right of action under Section 17(a)).

Therefore, the *Janus* rule does not apply to claims under Section 17(a). Rather, Section 17(a) remains subject to the broad interpretations applied in pre-*Janus* securities fraud case law. Accordingly, for example, claims under Section 17(a)(2) (making it unlawful "to obtain money or property by means of" misstatements) remain properly based upon all of the misstatements alleged in the Complaint in which Daifotis substantially participated.[11]

---

[11] But even if *Janus* applied to Section 17(a) claims, the Complaint sufficiently alleges primary liability based upon Daifotis having made the statements discussed in section I, above.

## IV.     THE SECTION 34(b) CLAIM IS SUFFICIENT

Daifotis (Motion at 8) erroneously argues that *Janus* requires dismissal of the claim under Section 34(b) of the ICA [15 U.S.C. §80a-33(b)] (the Complaint's Sixth Claim). Daifotis notes that Section 34(b) makes it unlawful for any person "to make" misstatements in certain documents required to be filed, transmitted or held under the ICA.  He asserts that because only entities such as Schwab are required to file, transmit or hold such documents, only those entities can "make" the misstatements under the *Janus* rule.

Daifotis is mistaken for two reasons:  *Janus* does not apply to Section 34(b) claims and, even if it did, Section 34(b) prohibits misstatements of precisely the types that Daifotis "made" under the *Janus* rule.

### A.     *Janus* Does Not Apply to ICA Section 34(b) Claims

Daifotis relies upon the incorrect assumption that *Janus* applies to Section 34(b) merely because that section and Rule 10b-5 both use the word "make."  In fact, words do not always have the same meaning, even when they appear in the same statute, let alone different statutes, so they must be interpreted in context.  As the Supreme Court stated in *SEC v. National Secs., Inc.*, 393 U.S. 453, 466 (1969):

> Although the interdependence of the various sections of the securities laws is certainly a relevant factor in any interpretation of the language Congress has chosen, ordinary rules of statutory construction still apply. The meaning of particular phrases must be determined in context, *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350-51 (1943). Congress itself has cautioned that the same words may take on a different coloration in different sections of the securities laws; both the 1933 and the 1934 Acts preface their lists of general definitions with the phrase 'unless the context otherwise requires.' 15 U.S.C. § 77b; 15 U.S.C. § 78c. We must therefore address ourselves to the meaning of the words 'purchase or sale' in the context of [section] 10(b). Whatever these or similar words may mean in the numerous other contexts in which they appear in the securities laws, only this one narrow question is presented here.

See also General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 595 (2004) (even words used in the same statute can have different meanings, depending on "the connection in which the words are used").

Rule 10b-5 and Section 34(b) have different contexts and need not be interpreted in lockstep. [12]  As discussed above, Janus applied a narrow construction of the word "make" in Rule 10b-5 largely because expanding the scope of the term under that rule would impermissibly expand the scope of liability in private plaintiff securities actions.  The Supreme Court stated that allowing a broader interpretation of Rule 10b-5 would "undermine" Central Bank (Janus, 131 S. Ct. at 2302) and that the narrow construction that the Court employed "accords with the narrow scope that we must give the implied right of action [under Rule 10b-5]." Id.  That principle, however, does not apply to Section 34(b), under which there is no private right of action.  See Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 117 (2d Cir. 2007) (no private right of action under Section 34(b)).

Thus, Daifoits does not prove his point by citing a case for the unremarkable proposition that "Section 34(b) of the [ICA] . . . prohibits material misrepresentations or omissions in terms similar to [Rule] 10b-5."  Motion at 8, citing SEC v. Pimco Advisors Fund Mgmt. LLC, 341 F. Supp. 2d 454, 471 (S.D.N.Y. 2004).  Janus changed the meaning that must now be given to the word "make" in Rule 10b-5 largely because of considerations unique to that rule (e.g., the impact on private litigation if a different meaning were used).  It does not follow that the same narrow meaning must be given to the word "make" when used

---

[12] Thus, for example, courts have interpreted Rule 10b-5 as requiring at least recklessness, see Gebhart v. SEC, 595 F.3d 1034, 1041 (9th Cir. 2010), but have held that violations under Section 34(b) need not be willful, see SEC v. Advance Growth Capital Growth Corp., 470 F.2d 40, 52 (7th Cir. 1972) (violation of 34(b) need not be willful).

in statutes that do not permit private suits, such as Section 34(b). Therefore, the word "make" in Section 34(b) continues to have the meaning ascribed to it in pre-*Janus* securities fraud cases.

### B. Daifotis "Made" Misstatements Prohibited by Section 34(b)

Even if *Janus* applied to Section 34(b) claims, Daifotis was the maker of misstatements prohibited by Section 34(b). Daifotis mistakenly suggests that Section 34(b) prohibits misstatements only in documents that Schwab Investments filed with the SEC, over which he claims he did not have "ultimate authority" and which he did not sign. Motion at 8-9.

But Daifotis overlooks the fact that Section 34(b) also applies to a number of other types of documents containing statements that Daifotis *did* make, as discussed in section I, above. Section 34(b) makes it unlawful for "any person" to make misstatements in any "document filed . . . . pursuant to" the ICA. Under Section 24 of the ICA [15 U.S.C. § 80a-24] and Rule 24b-3 thereunder [17 C.F.R. § 270.24b-3], this includes any "advertisement, pamphlet, circular, form letter or other sales literature" for distribution to prospective investors that are filed with organizations such as the Financial Industry Regulatory Authority (FINRA),which are "deemed filed" with the SEC. [13]

---

[13] Rule 24b-3 [17 C.F.R. § 270.24b-3] provides:

> Any advertisement, pamphlet, circular, form letter or other sales literature addressed to or intended for distribution to prospective investors shall be deemed filed with the Commission for purposes of section 24(b) of the Act [15 U.S.C. 80a-24(b)] upon filing with a national securities association registered under Section 15A of the Securities Exchange Act of 1934 [15 U.S.C. 78o] that has adopted rules providing standards for the investment company advertising practices of its members and has established and implemented procedures to review that advertising.

Therefore, Section 34(b) prohibits misstatements in sales literature for distribution to prospective investors that are filed with FINRA. Section I, above, details such sales literature in which Daifotis made misstatements. Therefore, even under the *Janus* rule, Daifotis "made" misstatements prohibited by Section 34(b), and the Complaint properly alleges a claim under that provision.

## V.     THE AIDING-AND-ABETTING CLAIMS SHOULD NOT BE DISMISSED

Daifotis argues that the aiding-and-abetting claims should be dismissed. Motion at 9-10. That request should be denied because it lacks merit and cannot properly be raised in this motion for reconsideration.

### A.     The Aiding-and-Abetting Claims Are Properly Stated

Daifotis claims that the SEC's aiding-and-abetting claims must be repled because they are based on primary violations that are "based on Mr. Merk's 'substantial participation'." That is not so. To the extent that aiding-and-abetting claims against Daifotis are based upon *Merk's* primary violations, those were primary violations that meet the standards of *Janus*. Daifotis (Motion at 9, n.5) points to this Court's June 6 Order, but Daifotis omits crucial language. The Court's June 6 Order (at 11) states:

> it is undisputed that the **complaint contains direct statements by Daifotis and Merk** that serve as a basis for the direct liability claims against them, as set forth above. The same alleged misrepresentations by Merk can serve as a primary violation underlying aiding and abetting by Daifotis, and vice versa.

(Emphasis added).

---

FINRA is "registered with the [SEC] as a national securities association pursuant to § 15A of the Securities Exchange Act of 1934 . . . ."). *McGinn, Smith & Co., Inc. v. FINRA,* No. 11-825 (CKK), 2011 WL 1833242, at *1 (D.D.C. May 15, 2011).

Thus, the quoted language merely pointed out that direct statements by one defendant (which would suffice to trigger Rule 10b-5 liability even under *Janus*) can serve as the primary violation for aiding-and-abetting claims against the other defendant. Nothing about that analysis renders the aiding-and-abetting claims improper, even under *Janus*.

Moreover, the Complaint makes clear that most of the Rule 10b-5 primary violations that Daifotis aided and abetted were committed by the Schwab entities. The Complaint's Second Claim for Relief is based upon aiding-and-abetting Rule 10b-5 violations. Paragraph 178 in that claim alleges that Daifotis "knowingly provided substantial assistance to CSIM [Charles Schwab Investment Management, Inc.] and CS&Co. [Charles Schwab & Co., Inc.] . . . and thus aided and abetted such violations." Nothing in *Janus* undermines the notion that the Schwab entities can "make" misstatements constituting violations that Daifotis could aid and abet.

Daifotis further argues that the Complaint attributes some misstatements to CS&Co. and CSIM. Motion at 10. He claims that those were separate legal entities that observed corporate formalities. *Id.* But those are factual arguments that cannot be considered on a motion to dismiss. Nothing in *Janus* precludes the possibility that two persons or entities both made a misstatement resulting in a violation that Daifotis aided and abetted.

For purposes of determining the sufficiency of the Complaint, it makes no difference which particular Schwab entity committed the primary violation. The precise parameters of CS&Co.'s and CSIM's roles in misstatements are properly left to be hashed out as the case progresses, not in the context of a motion to dismiss. To the extent that Daifotis asserts that the Complaint lacks adequate detail about each entity's specific role, he is raising issues

already decided against him in the Court's June 6 Order. Therefore, no basis exists for Daifotis's attack on the aiding-and-abetting claims.

**B.     Daifotis Cannot Properly Challenge the Aiding-and-Abetting
        <u>Claims in the Present Motion for Reconsideration</u>**

Daifotis cannot properly raise arguments about the aiding and abetting claims at this time. The present motion for reconsideration should be limited to reconsideration of the Court's ruling on *primary* liability claims. The defendants only sought permission to file a motion for reconsideration on primary liability claims, and the Court's order only permitted defendants "to move for reconsideration of the June 6 order denying defendants' motions to dismiss the Commission's **primary liability claims**." *See* Order entered 6/15/2011, docket no. 61 (emphasis added). Therefore, there is no reason for the Court to revisit its denial of defendants' motions to dismiss any aiding and abetting claims.

## <u>CONCLUSION</u>

For the foregoing reasons, Daifotis's Motion should be denied.

DATED: July 6, 2011                    Respectfully submitted,

                                       _____/s/ David J. Gottesman_____
                                       David J. Gottesman
                                       Frederick L. Block
                                       Robert A. Cohen
                                       Melissa R. Hodgman

                                       Attorneys for Plaintiff
                                       SECURITIES AND EXCHANGE
                                       COMMISSION
                                       100 F Street, N.E.
                                       Washington, DC 20549-4030
                                       Telephone: (202) 551-4470 (Gottesman)
                                       Facsimile: (202) 772-9245 (Gottesman)