<u>**FILED ELECTRONICALLY**</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------- X
SECURITIES AND EXCHANGE COMMISSION          :
                                            :
            Plaintiff,                      :
                                            :   08 Civil Action No: 4612 (CM)
            - vs -                          :   ECF Case
                                            :
JOHN MICHAEL KELLY,                         :
STEVEN E. RINDNER, and                      :
MARK WOVSANIKER                             :
                                            :
            Defendants.                     :
------------------------------------------------------------------- X
```

**DEFENDANT MARK WOVSANIKER'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS
OR, ALTERNATIVELY, SUMMARY JUDGMENT BASED ON THE SUPREME
COURT'S JUNE 13, 2011 *JANUS* DECISION**

Stephen G. Topetzes, Esq. (ST-4145) (*pro hac vice*)
Glenn R. Reichardt, Esq. (GR-2394) (*pro hac vice*)
Erin Ardale Koeppel, Esq. (EK-3460) (*pro hac vice*)
Stephen J. Crimmins, Esq. (SC-2714)
Theodore L. Kornobis, Esq. (TK-7046) (*pro hac vice*)
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
P: (202) 778-9000
F: (202) 778-9100

*Attorneys for Defendant Mark Wovsaniker*

Dated: August 1, 2011

DC-9533009 v1

## TABLE OF CONTENTS

**Page**

I.  The SEC's Opposition Regarding "Scheme" Cannot Be Reconciled with Janus' "Clean Line" Distinction Between Primary and Aiding and Abetting Liability. ............... 2

II. The SEC has not Adequately Pled or Offered Evidence to Support Primary Scheme Liability with respect to Mr. Wovsaniker. .......................................................................... 5

III. Janus Should Apply Equally to Section 17(a), the Counterpart to Rule 10b-5 in the Securities Act. ................................................................................................................. 7

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page**

Federal Cases

Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952) ..................................................... 8

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) ........................................................................................................................................ 2

In re AOL Time Warner, Inc. Sec. & ERISA Litig., 381 F. Supp. 2d 192 (S.D.N.Y. 2004) ......... 4

In re Global Crossing Ltd. Sec. Litig., 322 F. Supp. 2d 319 (S.D.N.Y. 2004) .............................. 4

In re Parmalat Sec. Litig., 376 F. Supp. 2d 472 (S.D.N.Y. 2005) ............................................. 5, 6

In re Refco, Inc. Sec. Litig., 609 F. Supp. 2d 304 (S.D.N.Y. 2009) .............................................. 4

Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011) ..................... *passim*

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005) ....................................................... 5

Pacific Inv. Mgmt. Co. LLC v. Mayer Brown LLP, 603 F.3d 144 (2d Cir. 2010) ................. 3, 4, 7

SEC v. Espuelas, 699 F. Supp. 2d 655 (S.D.N.Y. 2010) ............................................................... 8

SEC v. First Jersey Sec., Inc., 101 F.3d 1450 (2d Cir. 1996) ........................................................ 7

SEC v. KPMG LLP, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) .......................................................... 5

SEC v. Lee, 720 F. Supp. 2d 305 (S.D.N.Y. 2010) ....................................................................... 6

SEC v. Lucent Techs., 610 F. Supp. 2d 342 (D.N.J. 2009) ........................................................... 5

SEC v. McGinn, Smith & Co., 752 F. Supp. 2d 194 (N.D.N.Y. 2010) ......................................... 8

SEC v. Monarch Funding Corp., 192 F.3d 295 (2d Cir. 1999) ..................................................... 7

SEC v. PIMCO Advisors Fund Mgmt. LLC, 341 F. Supp. 2d 454 (S.D.N.Y. 2004) .................... 6

SEC v. Tambone, 550 F.3d 106 (1st Cir. 2008) ............................................................................. 8

SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968) ...................................................... 7

Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc., 552 U.S. 148 (2008) ................ 2, 3, 6, 7

## Federal Statutes

15 U.S.C. § 77q(a) .................................................................................................................. 1

15 U.S.C. § 78j(b) ................................................................................................................... 1

15 U.S.C. § 78t(e) ............................................................................................................... 1, 4

## Federal Regulations

17 C.F.R. § 240.10b-5............................................................................................................ 1

Defendant Mark Wovsaniker respectfully submits this memorandum in further support of his Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, alternatively, for Summary Judgment under Rule 56.  As explained in Mr. Wovsaniker's opening memorandum, the Securities and Exchange Commission's ("SEC") allegations against Mr. Wovsaniker for primary liability under Securities Exchange Act Section 10(b), 15 U.S.C. § 78j(b), Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, and Securities Act Section 17(a), 15 U.S.C. § 77q(a), are fatally undermined by the recent U.S. Supreme Court decision in <u>Janus Capital Group, Inc. v. First Derivative Traders</u>, 131 S. Ct. 2296 (2011).

Recognizing that <u>Janus</u> forecloses primary liability for Mr. Wovsaniker under a misstatement theory, the SEC has rightfully abandoned such a claim.  However, the SEC attempts to recast its case based on an alleged independent fraudulent "scheme." In doing so, among other things, the SEC seeks to preserve an alternative to the more demanding elements it must prove for aiding and abetting liability, which as this Court recognized, requires "actual knowledge" of the fraud, as opposed to only "recklessness."  Decision & Order Granting in Part & Denying in Part Defs.' Mots. for Summ. J. 31, Jan. 7, 2011, ECF No. 270.  The Court should reject this effort by the SEC because the investor deception alleged in the Complaint rests now, and has always rested, upon alleged misstatements.  <u>Janus</u> and other established precedents within this jurisdiction prohibit the SEC's attempt to use Rule 10b-5(a) and (c) to allege a fraudulent scheme as a "backdoor" to primary misstatement liability.  Even if true, the SEC's allegations at most permit plaintiff to proceed under its statutory authority to bring aiding and abetting claims, 15 U.S.C. § 78t(e), which it did in Count III of the Complaint.  The Court should therefore grant Mr. Wovsaniker's motion and enter judgment on Counts I and II.

- 1 -

I.  **The SEC's Opposition Regarding "Scheme" Cannot Be Reconciled with Janus'"Clean Line" Distinction Between Primary and Aiding and Abetting Liability.**

Faced with the reality of the Janus decision, the SEC attempts to make an end run around the holding and argues that, notwithstanding Janus, it may still assert primary liability under subsections (a) and (c) of Rule 10b-5 for Mr. Wovsaniker's alleged participation in a "scheme" related to AOL's misstatements. This interpretation would eviscerate Janus's "clean line" between primary and secondary liability. 131 S. Ct. at 2302 n.6.

In Janus, the Supreme Court drew a sharp distinction between primary and secondary liability, and in so doing reinforced its holding in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 180 (1994), that persons or entities that "contribute 'substantial assistance'" to a violation are not subject to primary liability. 131 S. Ct. at 2302 n.6 ("[F]or Central Bank to have any meaning, *there must be some distinction between those who are primarily liable . . . and those who are secondarily liable . . . .*" (emphasis supplied)).

Janus shows that the primary-secondary distinction is equally important under all subsections of Rule 10b-5. Deceptive conduct can support a primary liability claim, but not if the alleged conduct only becomes deceptive to investors through another's misstatement. In explaining the "clean line" between primary and secondary liability, Janus used the example of "the relationship between a speechwriter and a speaker," holding that only the speaker may be primarily liable under Rule 10b-5, while the speechwriter can only be subject to secondary liability. Id. at 2302. The SEC's argument would reach the antithetical conclusion that the speechwriter is *both* secondarily liable for assisting in the misstatement *and* primarily liable for the "fraudulent acts" and "scheme" leading to the speaker's misstatement. That would erase Janus's clean line. Indeed, relying on its decision in Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc., 552 U.S. 148, 161 (2008), the Court said in Janus that it saw "no reason

to treat *participating in the drafting of a false statement* differently from *engaging in deceptive transactions*, when each is merely an undisclosed act" leading to a public statement by another. 131 S. Ct. at 2304 (emphasis supplied).

As the SEC reminds us, see Pl.'s Opp'n Mem. 8, ECF No. 295, the decision in Stoneridge indicated that the SEC's enforcement power could have reached the alleged conduct in that case. But, contrary to the SEC's implication, it is clear that the Court was referring to the SEC's unique statutory authority to bring *secondary liability* (*i.e.*, aiding and abetting) claims. 552 U.S. at 161-63. The Court explained that private suits could not cover the alleged activity because that would countermand Congress's decision to grant only the SEC authority over aiding and abetting cases. Id. at 162-63 ("Petitioner's view of primary liability makes any aider or abettor liable under § 10(b) if he or she committed a deceptive act in the process of providing assistance. Were we to adopt this construction of § 10(b) . . . we would undermine Congress' determination that this class of defendants should be pursued by the SEC and not by private litigants.").

The Second Circuit has similarly rejected attempts to recast aiding and abetting misstatements into primary scheme liability. In Pacific Investment Management Co. LLC v. Mayer Brown LLP, 603 F.3d 144 (2d Cir. 2010), plaintiffs sued a law firm and its partner for allegedly participating in a scheme by a client to execute 17 round-trip transactions and trick its accountants through sham loans. The law firm and its partner allegedly "negotiate[ed] the terms of the loans" and "draft[ed] and revis[ed] the documents relating to the loans." Id. at 149. The Second Circuit's approach to the Rule 10b-5(a) and (c) claims went beyond the issue of reliance. In particular, the Second Circuit adopted the district court's analysis of the Rule 10b-5(a) and (c) claims, id. at 158, which held that "[t]he critical holding of Central Bank . . . is not limited to violations of Rule 10b-5(b). To establish [primary] liability under the other subsections of the

- 3 -

Rule as well, a plaintiff must show that it was the defendant itself that 'employ[ed]' the scheme to defraud or 'engage[d] in the deceitful practice, and not merely that the defendants assisted another party in its fraudulent practices." In re Refco, Inc. Sec. Litig., 609 F. Supp. 2d 304, 316 (S.D.N.Y. 2009), aff'd and adopted by Mayer Brown, 603 F.3d at 158.  The cases the SEC cites in support of its scheme allegations predate Janus and Stoneridge and cannot be reconciled with their holdings.  See In re AOL Time Warner, Inc. Sec. & ERISA Litig., 381 F. Supp. 2d 192 (S.D.N.Y. 2004) (alleged acts leading up to a fraudulent misstatement); In re Global Crossing Ltd. Sec. Litig., 322 F. Supp. 2d 319 (S.D.N.Y. 2004) (same).

The Supreme Court's interpretation of Rule 10b-5 for over 17 years, from Central Bank through Stoneridge and Janus, reflects clearly that conduct amounting to substantial assistance of a violation cannot form the basis of a primary liability claim.[1]   Indeed, if the Supreme Court in Janus intended for primary Rule 10b-5 to apply to a case like the instant one, it is reasonable to believe that it would have acknowledged the plaintiffs in that case could have pursued liability under Rule 10b-5(a) and (c) on the grounds that the investment adviser's "deceptive conduct" resulted in the mutual fund's public filings being misleading.  Janus did not do so, however, because such an acknowledgement would have undermined its holding and erased its "clean line" between primary and secondary liability.

---

[1] The SEC offers no explanation of how its "substantial participation" standard under Rule 10b-5(a) and (c), Pl.'s Opp'n Mem. 9, differs in any meaningful way from the "substantial assistance" standard for secondary liability contained in Exchange Act Section 20(e), 15 U.S.C. § 78t(e) (allowing aiding and abetting claims by the SEC whenever a defendant "provides substantial assistance to another person in violation of this chapter" or rules issued thereunder). Interestingly, in a case in the Northern District of California, the SEC itself recently admitted that "substantial participation" is no longer the test for primarily liability after Janus. See SEC's Opp'n to Def.'s Mot. Partial Summ. J. at 16 n.6, SEC v. Berry (No. C-07-4431-RMW) (N.D. Cal. July 15, 2011), ECF No. 262 ("The Supreme Court rejected the Ninth Circuit's 'substantial participation' test for establishing primary liability under Rule 10b-5.") (citing Janus).

## II. The SEC has not Adequately Pled or Offered Evidence to Support Primary Scheme Liability with respect to Mr. Wovsaniker.

Scheme liability can be alleged appropriately in instances in which conduct is "inherently deceptive," in that it does not require a misstatement for the fraud to exist. As has long been recognized, however, subsections (a) and (c) of Rule 10b-5 are "not a backdoor into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5." In re Parmalat Sec. Litig., 376 F. Supp. 2d 472, 503 (S.D.N.Y. 2005). If the basis for the scheme's deception arises from a misstatement, then courts have held that subsections (a) and (c) do not apply. See Lentell v. Merrill Lynch & Co., 396 F.3d 161, 177 (2d Cir. 2005) (rejecting scheme liability where "the sole basis for such claims is alleged misrepresentations or omissions"); SEC v. KPMG LLP, 412 F. Supp. 2d 349, 377-78 (S.D.N.Y. 2006) ("Because the core misconduct alleged is in fact a misstatement, it would be improper to impose primary liability . . . by designating the alleged fraud a 'manipulative device' rather than a 'misstatement.'"). See also SEC v. Lucent Techs., 610 F. Supp. 2d 342, 359 (D.N.J. 2009) (holding that, in a case alleging improper revenue recognition based on fraudulent reporting of transactions, that "allegations of a scheme based on the same misstatements that would form the basis of a misrepresentation claim under Rule 10b-5(b) and nothing more do not go beyond misrepresentations").

The SEC simply has not adequately pled or established scheme liability. The claims against Mr. Wovsaniker have always been based on allegations that AOL improperly recorded and reported advertising revenue to investors. See, e.g., Compl. ¶ 1 ("[Defendants] knowingly or recklessly engineered, oversaw, and executed a scheme *to artificially and materially inflate the Company's reported online advertising revenue . . . .*") (emphasis supplied); see also Compl. ¶¶ 3, 4, 39, 51, 184. Moreover, in its opposition to the defendants' original summary judgment

- 5 -

motions, the SEC could not separate the "scheme" from the misstatements and acknowledged that "[t]he scheme was *designed to misrepresent* the true economic substance of *otherwise legitimate business transactions* . . . ." Pl.'s Opp'n to Def. Wovsaniker's Mot. for Summ. J. at 2, ECF No. 176 (emphasis supplied). Under the SEC's theory, everything depends upon the company reporting allegedly misleading financial information. Therefore, although the allegations may support *aiding and abetting liability* in Count III, the SEC cannot get around Janus with scheme-based primary claims.

The key scheme case the SEC cited in its brief, SEC v. Lee, 720 F. Supp. 2d 305 (S.D.N.Y. 2010), is consistent with this distinction. Lee involved inherently deceptive conduct – in other words, conduct that did not become deceptive merely because of the way it was reported to investors. Conversely, the SEC alleges in Mr. Wovsaniker's case that he participated in a "scheme to artificially and materially inflate the Company's reported online advertising revenue" through the misreporting of otherwise "legitimate business transactions." Compl. ¶¶ 1, 28. See also Parmalat, 376 F. Supp. 2d at 504; SEC v. PIMCO Advisors Fund Mgmt. LLC, 341 F. Supp. 2d 454, 467 (S.D.N.Y. 2004).

Stoneridge is also consistent with this approach. The SEC quotes the opinion for the unremarkable proposition that "[c]onduct itself can be deceptive." 552 U.S. at 158. However, as the SEC admits, this case is not about conduct that is itself deceptive – it is about alleged conduct that *became* deceptive through AOL's false reporting. The SEC points out that the facts in Stoneridge and the present case similarly involve allegations of "round-trip" transactions. As Janus indicated, however, the Stoneridge facts likely would not have led to primary liability under the newly-announced rule, even if plaintiffs overcame the reliance element. 131 S. Ct. at 2303 and n.7 (noting that Stoneridge's analysis "suggests the rule we adopt today" and that the

- 6 -

defendants in that case were not "makers"). Nor did Stoneridge hold that the alleged acts were deceptive, instead it based its decision on the reliance element. 552 U.S. at 158. In fact, the Stoneridge Court's description of its facts makes clear that the fraud only arose from the manner the round-trip transactions were reported, and acknowledged that it was possible to properly enter into and account for such transactions. Id. at 154-55 ("[The counterparties'] own financial statements booked the transactions as a wash, under generally accepted accounting principles.") See also Mayer Brown, 603 F.3d at 160 (following Stoneridge and rejecting liability under Rule 10b-5(a) and (c), noting that nothing the defendants did made it "necessary or inevitable" for the issuer to record transactions as it did).

Therefore, although conduct can itself be deceptive, the SEC allegations against Mr. Wovsaniker – which, as Mr. Wovsaniker has and will at trial show are untrue – only describe actions that became deceptive, if at all, through AOL's improper recording and reporting of them in its financial statements.

### III. Janus Should Apply Equally to Section 17(a), the Counterpart to Rule 10b-5 in the Securities Act.

Janus should apply to causes of action under Rule 10b-5 and Section 17(a) because courts in this jurisdiction have routinely held that the elements of the claims are the same. The key difference is that Rule 10b-5 applies in connection with the "purchase or sale" of a security whereas Section 17(a) applies in connection with the "offer and sale" of a security.

However, the *elements* of a Section 17(a) violation, as interpreted by decades of Second Circuit jurisprudence, are "essentially the same" as the elements for claims under Section 10(b) and Rule 10b-5. See SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999); SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996); SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 855 n.22 (2d Cir. 1968); Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463 (2d Cir.

1952). Indeed, this Court has recognized in this case that "[t]he *elements* of a claim under Section 17(a)(1) are 'essentially the same' as the elements of a claim under Section 10(b) and Rule 10b-5." Decision & Order Granting in Part & Denying in Part Defs.' Mots. for Summ. J. 26, Jan. 7, 2011, ECF No. 270 (emphasis supplied). See also Decision & Order Denying Defs.' Mots. to Dismiss 11, Sept. 30, 2009, ECF No. 101.[2] Courts have therefore stated that the question of whether a defendant "made" a statement is an element of Section 17(a). See, e.g., SEC v. Espuelas, 699 F. Supp. 2d 655, 659-63 (S.D.N.Y. 2010); SEC v. McGinn, Smith & Co., 752 F. Supp. 2d 194, 212-13 (N.D.N.Y. 2010) (citing SEC v. Global Telecom Servs., LLC, 325 F. Supp. 2d 94, 111 (D. Conn. 2004)).[3]

The SEC's attempts otherwise to parse the language of Section 17(a) are unavailing. To the extent plaintiff contends Mr. Wovsaniker "obtain[ed] money or property" as a result of the alleged fraud, its claims are undermined by the SEC's own admission that Mr. Wovsaniker's salary "was not dependent upon the Company's performance" and the absence of any evidence regarding the degree, if any, the round-trip transactions referenced in the Complaint influenced Mr. Wovsaniker's compensation. See Pl. SEC's Rule 56.1(a) Resp. to Statement of Facts by Mark Wovsaniker ¶ 31, ECF No. 177. Now that it is abundantly clear that the SEC cannot seek

---

[2] The SEC, likewise, has long asked federal judges to charge juries that the Rule 10b-5 and Section 17(a) elements "are substantially the same," and that, other than the different scienter standards, "if you find that the defendant [violated Rule 10b-5,] . . . you should also find that the defendant violated Section 17(a)(1), (2) and (3)." Pl.'s Req. to Charge at 51, SEC v. Lines (No. 07-cv-11387-DLC) (S.D.N.Y. Sept. 17, 2010), ECF No. 202.

[3] The SEC's characterizes SEC v. Tambone, 550 F.3d 106 (1st Cir. 2008) as the only decision to have addressed whether Section 17(a) contains a "make" requirement. This is incorrect, as all of the cases cited above support that Section 17(a) and Rule 10b-5 are virtually identical (aside from scienter distinctions), and proceeded to analyze the claims together. That Tambone reached the SEC's conclusion in a pre-Janus panel decision outside of this jurisdiction does not alter the consistent precedent in the Second Circuit that the elements of both provisions are the same.

to impose primary liability on Mr. Wovsaniker because of the company's alleged misstatements, the SEC's claims under Section 17(a) must fail.

## CONCLUSION

Janus establishes a "clean line" between primary and secondary liability under Rule 10b-5. The SEC's argument that the same type of conduct rejected by the Supreme Court can form the basis of "scheme" liability would eviscerate that line, and is contrary to established Supreme Court, Second Circuit, and Southern District of New York precedent. The SEC has not pled or established any "inherently deceptive" conduct by Mr. Wovsaniker that could support a primary liability claim under subsections (a) or (c) of Rule 10b-5. Mr. Wovsaniker is therefore entitled to judgment on Count II of the Complaint, and because the elements of Section 17(a) are the same in this Circuit, he is also entitled to judgment on Count I.

Respectfully submitted,

K&L GATES LLP

/s/ Stephen G. Topetzes
Stephen G. Topetzes, Esq. (ST-4145) (admitted *pro hac vice*)
Glenn R. Reichardt, Esq. (GR-2394) (admitted *pro hac vice*)
Erin Ardale Koeppel, Esq. (EK-3460) (admitted *pro hac vice*)
Stephen J. Crimmins, Esq. (SC-2714)
Theodore L. Kornobis, Esq. (TK-7046) (admitted *pro hac vice*)

K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
P: (202) 778-9000
F: (202) 778-9100
stephen.topetzes@klgates.com
glenn.reichardt@klgates.com
erin.koeppel@klgates.com
stephen.crimmins@klgates.com
ted.kornobis@klgates.com

*Attorneys for Defendant Mark Wovsaniker*

Dated: August 1, 2011

# **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing DEFENDANT MARK WOVSANIKER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT was served this 1st day of August, 2011, via the Court's ECF system upon the following:

*Attorneys for Plaintiff:*

John D. Worland, Jr.
John J. Bowers
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549

*Attorneys for Steven E. Rindner:*

Roger E. Warin
Patrick F. Linehan
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Attorneys for John Michael Kelly:*

Jonathan Tuttle
Ada Fernandez Johnson
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Suite 1100E
Washington, D.C. 20004

　

/s/ Stephen G. Topetzes
Stephen G. Topetzes, Esq. (ST-4145)
\*  *Admitted pro hac vice*
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
Phone:  202-778-9000
Fax:  202-778-9100