UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

            Plaintiff,

            08 Civ. 4612 (CM)

-against-

JOHN MICHAEL KELLY, STEVEN E. RINDNER,
and MARK WOVSANIKER,

            Defendants.
------------------------------------------------------------x

### DECISION AND ORDER GRANTING DEFENDANTS RINDNER'S AND WOVSANIKER'S MOTIONS FOR JUDGMENT ON THE PLEADINGS

McMahon, J.

Following the Supreme Court's recent decision in Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011), Defendants Steven Rindner and Mark Wovsaniker move this Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on Counts One and Two of the Securities and Exchange Commission's ("SEC") complaint. The SEC's first cause of action alleges that Rindner and Wovsaniker violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a). In its second cause of action, the SEC alleges that Rindner and Wovsaniker violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5. For the reasons discussed, Rindner's and Wovsaniker's motions are granted. The first and second causes of action in the complaint are dismissed.

I.  **BACKGROUND**

The facts of this case are discussed at length in the Court's summary judgment decision issued on January 7, 2011.  See <u>SEC v. Kelly</u>, 765 F. Supp. 2d 301 (S.D.N.Y. 2011).  Familiarity with those facts is presumed for purposes of this decision.

On June 13, 2011, the Supreme Court issued its decision in <u>Janus Capital Group, Inc. v. First Derivative Traders</u>, 131 S. Ct. 2296 (2011).  Subsection (b) of Rule 10b-5, promulgated under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), makes it unlawful for "any person, directly or indirectly, . . . [t]o <u>make</u> any untrue statement of a material fact" in connection with the purchase or sale of securities.  17 C.F.R. § 240.10b-5(b) (emphasis added).  The Supreme Court in <u>Janus</u> announced a new test for interpreting the word "make" in Rule 10b-5.

The plaintiff in <u>Janus</u>, a shareholder of Janus Capital Group, Inc. ("JCG"), alleged that JCG and its subsidiary, Janus Capital Management LLC ("JCM"), made misleading statements in prospectuses of the Janus Investment Fund (the "Fund") in violation of Rule 10b-5.  JCG created the Fund and JCM served as the Fund's investment adviser and administrator.  JCM was involved in preparing the Fund's prospectuses and made those prospectuses available to investors on its own site.  131 S. Ct. at 2299-2301.  At issue in <u>Janus</u> was whether JCM could be held liable for material misstatements in the Fund's prospectuses.  The Court held that it could not.  <u>Id.</u> at 2301.

In upholding the dismissal of the plaintiff's Rule 10b-5 and Section 10(b) claim, the Court explained: "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. . . .  One who prepares or publishes a statement on behalf of another is not its

2

maker." Id. at 2302. Under the new rule, JCM "did not 'make' any of the statements in the Janus Investment Fund prospectuses; Janus Investment Fund did. Only Janus Investment Fund—not JCM—bears the statutory obligation to file the prospectuses with the SEC." Id. at 2304. The fact that JCM was significantly involved in preparing the Fund's prospectuses was insufficient for primarily liability under Rule 10b-5 and Section 10(b). Instead, the Court focused on who had the "ultimate control" over the allegedly misleading statements: "Although JCM, like a speechwriter, may have assisted Janus Investment Fund with crafting what Janus Investment Fund said in the prospectuses, JCM itself did not 'make' those statements for purposes of Rule 10b-5." Id. at 2305.

Based on Janus, Wovsaniker and Rindner move for judgment on the pleadings on the SEC's second cause of action—a claim for primary liability under Section 10(b) and Rule 10b-5. (See ECF Dkt. Nos. 287, 289.) In its opposition brief to the defendants' motions, the SEC concedes that Janus forecloses a misstatement claim against Rindner and Wovsaniker under subsection (b) of Rule 10b-5, because neither defendant "made" a misleading statement under the new Janus standard. However, the SEC argues that Janus did not affect its ability to assert a "scheme liability" claim under subsections (a) and (c) of Rule 10b-5. Thus, according to the SEC, Wovsaniker and Rindner may be held liable under subsections (a) and (c) of Rule 10b-5 for their participation in negotiating, structuring, documenting, and approving the allegedly fraudulent round-trip transactions involving AOL between 2000 and 2003. Conversely, Wovsaniker and Rindner argue that the SEC's allegations are insufficient to maintain a scheme liability claim under subsections (a) and (c) of Section 10(b).

Moreover, Wovsaniker and Rindner also move for judgment on the pleadings on the SEC's first cause of action—a claim under Section 17(a) of the Securities Act, 15 U.S.C. §

77q(a). Both defendants argue that, because claims for misstatement and scheme liability under Section 17(a) are treated identically to claims under Section 10(b), the SEC's Section 17(a) misstatement and scheme liability claim should also be dismissed.

## II. DISCUSSION

### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Motions under Rule 12(c) are subject to the same analysis as motions to dismiss under Rule 12(b)(6). Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005)). If, after accepting the complaint's factual allegations as true and drawing all inferences in favor of the plaintiff, "it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]'" the complaint must be dismissed. Id. (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)).

### B. The SEC's Section 10(b) and Rule 10b-5 claim in Count Two is dismissed.

The SEC concedes that Janus foreclosed its ability to assert a misstatement claim under subsection (b) of Rule 10b-5 against Wovsaniker and Rindner. Instead, the SEC argues that Janus does not affect its ability to assert a claim for "scheme liability" under subsections (a) and (c) of Rule 10b-5.

Subsections (a) and (c) of Rule 10b-5 address scheme liability. Those subsections make it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, [or] . . . (c) To engage in any act, practice, or

course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(a), (c).

The Supreme Court in Janus did not address "scheme liability" under subsections (a) and (c) of Rule 10b-5. Nonetheless, where the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected the SEC's attempt to bypass the elements necessary to impose "misstatement" liability under subsection (b) by labeling the alleged misconduct a "scheme" rather than a "misstatement." See, e.g., SEC v. Lucent Techs., 610 F. Supp. 2d 342, 359-61 (D.N.J. 2009); Lentell v. Merrill Lynch & Co., 396 F.3d 161, 177 (2d Cir. 2005); SEC v. KPMG LLP, 412 F. Supp. 2d 349, 377-78 (S.D.N.Y. 2006); SEC v. PIMCO Advisors Fund Mgmt. LLC, 341 F. Supp. 2d 454, 467 (S.D.N.Y. 2004). Courts have not allowed subsections (a) and (c) of Rule 10b-5 to be used as a "back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5." In re Parmalat Sec. Litig., 376 F. Supp. 2d 472, 503 (S.D.N.Y. 2005). As this Court explained in PIMCO, to permit scheme liability "to attach to individuals who did no more than facilitate preparation of material misrepresentations or omissions actually communicated by others . . . would swallow" the bright-line test between primary and secondary liability. 341 F. Supp. 2d at 467.

The SEC's complaint defines the nature of the purported scheme by explicit reference to the alleged public misrepresentations—the inflation of advertising revenue reported to the investing public in AOL's SEC filings from 2000 through 2003. The SEC alleges that Rindner and Wovsaniker "engineered, oversaw, and executed a scheme to artificially and materially inflate the Company's reported online advertising revenue . . . ." (See Compl. ¶ 1; see also Id. at ¶¶ 3, 4, 25, 28, 39, 48, 51, 110, 184.) In its opposition brief, the SEC concedes that the

5

"fraudulent scheme . . . [was] to generate artificial advertising revenue" in AOL's public filings. (SEC's Br. in Opp. at 2.) Although conduct can itself be deceptive, as the SEC argues, this case is not about conduct that is itself deceptive—it is about conduct that <u>became</u> deceptive only through AOL's misstatements in its public filings.

Scheme liability under subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement. In <u>SEC v. Lee</u>, 720 F. Supp. 2d 305 (S.D.N.Y. 2010), for instance, the SEC's claim for scheme liability under Rule 10b-5(a) and (c) was premised on alleged "u-turning" of commodity prices between brokerage houses: one broker would send his price to a second broker, which would then report that price back to the first as a purportedly "independent" quote. <u>Id.</u> at 334. The conduct engaged in by the defendants in <u>Lee</u> was inherently deceptive when performed. See also <u>SEC v. U.S. Entl., Inc.</u>, 155 F.3d 107, 112 (2d Cir. 1998) (holding trader could be held primarily liable for scheme involving the execution of manipulative stock trades); <u>SEC v. First Jersey Sec. Inc.</u>, 101 F.3d 1450, 1471-72 (2d Cir. 1996) (affirming scheme liability where defendant defrauded customers into paying prices that included excessive markups).

By contrast, the alleged round-trip transactions by AOL between 2000 and 2003 are deceptive only because of AOL's subsequent public misrepresentations. There is nothing inherently deceptive about structuring a transaction with a counterparty so that the counterparty purchases advertising, and AOL touted this practice in the media. (<u>See</u> SEC's Resp. to Rindner's SUF ¶ 88.) Indeed, the SEC concedes that the "policy of selling advertising to counterparties was considered within AOL to be typical in business and a matter of common sense." (SEC's Resp. to Rindner's Statement of Undisputed Facts ¶ 8.) It is the manner in which those transactions were accounted for by AOL and reported to the public—AOL's alleged improper

recognition of advertising revenue from such transactions—that is deceptive, and not the act of engaging in such transactions itself.

The Court in Janus emphasized that its new rule preserves the "distinction between those who are primarily liable . . . and those who are secondarily liable." 131 S. Ct. at 2302 n.6. A contrary rule, the Court reasoned, would improperly blur the lines between primary and secondary liability, because "[i]f persons or entities without control over the content of a statement could be considered primary violators who 'made' the statement, then aiders and abettors would be almost non-existent." Id. at 2302. Where the SEC is attempting to impose primary liability under subsections (a) and (c) of Rule 10b-5 for a scheme based upon an alleged false statement, permitting primary scheme liability when the defendant did not "make" the misstatement would render the rule announced in Janus meaningless. It would allow the SEC to allege that the conduct Janus held insufficient to establish primary liability under subsection (b) of Rule 10b-5 is scheme-related conduct that supports primary liability under subsections (a) and (c), notwithstanding that the alleged misstatements represent the basis of that claim.

Therefore, because the SEC's scheme liability claim is premised on a misrepresentation and neither defendant "made" a misstatement as Janus requires, the SEC's claim under subsections (a) and (c) of Rule 10b-5 must be dismissed. Accordingly, Wovsaniker's and Rindner's motions for judgment on the pleadings on Count Two are granted. Count Two is dismissed.

C. The SEC's claim under Section 17(a) in Count One is also dismissed.

The SEC also asserts a claim in Count One under Section 17(a) of the Securities Act. Section 17(a) provides,

7

> It shall be unlawful for any person in the offer or sale of any securities or any security-based swap agreement . . .
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. §77q(a). As with Rule 10b-5, subsections (1) and (3) of Section 17(a) apply to scheme liability and subsection (2) applies to misstatement liability.

The SEC argues that Janus does not apply to misstatement liability claims under subsection (2) of Section 17(a) for two reasons: First, the language in subsection (2) of Section 17(a) is not identical to the language in subsection (b) of Rule 10b-5, and, second, Janus dealt with misstatement liability only under Rule 10b-5. Wovsaniker and Rindner, however, argue that Janus should apply to claims under Section 17(a), because courts have routinely held that the elements of misstatement and scheme liability claims under Section 17(a) and Rule 10b-5 are the same.

The Supreme Court in Janus did not address liability under Section 17(a). Nonetheless, numerous courts have held that the elements of a claim under Section 17(a) are "essentially the same" as those for claims under Rule 10b-5. See, e.g., SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999); SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996); SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 855 n.22 (2d Cir. 1968); SEC v. Power, 525 F. Supp. 2d 415, 419 (S.D.N.Y. 2007). Further, the Second Circuit has recognized that the SEC's "only purpose" in adopting Rule 10b-5 was to make the same prohibitions contained in Section 17(a)—

which applies in connection with the "offer and sale" of a security—applicable to "purchasers" of securities as well. See Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463 (2d Cir. 1952) (explaining how the SEC "simply copied" the language in Section 17(a) in creating Rule 10b-5); see also SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 855 (2d Cir. 1968).

Although the language of subsection (2) of Section 17(a) is not identical to that of subsection (b) of Rule 10b-5, both provisions have the same functional meaning with it comes to creating primary liability. To succeed on a misstatement claim under either Rule 10b-5(b) or Section 17(a)(2), the SEC must prove that the defendant made materially false statements or omissions. See, e.g., SEC v. McGinn, Smith & Co., 752 F. Supp. 2d 194, 212-213 (N.D.N.Y. 2010); SEC v. Global Telecom Servs., LLC., 325 F. Supp. 2d 94, 111 (D. Conn. 2044); SEC v. Espuelas, 699 F. Supp. 2d 655, 659-63 (S.D.N.Y. 2010). Because subsection (2) of Section 17(a) and subsection (b) of Rule 10b-5 are treated similarly, it would be inconsistent for Janus to require that a defendant have made the misleading statement to be liable under subsection (b) of Rule 10b-5, but not under subsection (2) of Section 17(a). Thus, because there are no allegations in the complaint from which to infer that Wovsaniker and Rindner "made" any allegedly misleading statements, the SEC has not pleaded a claim under subsection (2) of Section 17(a).

Further, as discussed, the SEC's allegations do not suffice to plead a claim under subsections (a) and (c) of Rule10b-5. Because claims under subsections (1) and (3) of Section 17(a) are treated the same as claims under subsections (a) and (c) of Rule10b-5, the SEC's claim under sections (1) and (3) must also be dismissed. See, e.g., SEC v. Patel, 2008 WL 782483, at *13 (D.N.H. Mar. 24, 2008).

### III. CONCLUSION

For the reasons discussed, Wovsaniker's motion for judgment on the pleadings on Counts One and Two of the complaint is granted. The Docket Clerk is instructed to remove docket entry 287 from the Court's list of pending motions.

Further, Rindner's motion for judgment on the pleadings on Counts One and Two of the complaint is also granted. The Docket Clerk is instructed to remove docket entry 289 from the Court's list of pending motions.

A final judgment was entered against defendant John Michael Kelly on September 6, 2011. After today's decision only the following claims remain in this case: (a) the SEC's third, fourth, and seventh causes of action against Rindner and (b) the SEC's third, fourth, fifth, sixth, and seventh causes of action against Wovsaniker. The parties should be prepared to proceed to trial on those claims.

Dated: September 22, 2011

_____
U.S.D.J.

BY ECF TO ALL COUNSEL